| | |
|---|---|
| 1<br>2<br>3<br>4 | MICHAEL J. CONLON<br>1015 N. Sierra Street<br>Reno, Nevada 89503<br><br>Plaintiff In Pro Per | **FILED**<br>01 DEC 14 PM 3: 38<br>LANCE S. WILSON<br>CLERK<br>BY_____<br>DEPUTY  |

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL J. CONLON,<br>            Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA;<br>UNITED STATES DEPARTMENT OF JUSTICE; JOHN ASHCROFT, the United States Attorney;<br>UNITED STATES DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF PRISONS; NANCY BAILEY, Warden of FGI, Stafford, Arizona Prison and individually;<br>UNITED STATES DEPARTMENT OF JUSTICE, PAROLE COMMISSION; COMMISSIONER SIMPSON [first name unknown], U.S. Parole Commissioner and individually;<br>UNITED STATES FEDERAL JUDICIARY, PROBATION OFFICE;<br>KEVIN LOWERY, U.S. Probation Officer and individually; PATRICK FOY, U.S. Probation Officer and individually; THOMAS COLLINS, U.S. Probation Officer and individually; JOHN LAWHEAD, U.S. Assistant Chief Probation Officer and individually;<br>UNITED STATES SENTENCING COMMISSION; and DOES 1-50, in official capacities and individually, inclusive.<br><br>            Defendants. | CV-N-01-0700-DWH-VPC |

**COMPLAINT PURSUANT TO 42 U.S.C. §1983, §1985(3) and the FIRST, FOURTH, FIFTH, SIXTH, EIGHTH and FOURTEEN AMENDMENTS TO THE UNITED STATES CONSTITUTION**



1



1   Plaintiff, MICHAEL J. CONLON, alleges against all Defendants above-named as
2   follows:

## I.

## PARTIES

1. Plaintiff, MICHAEL J. CONLON (Mr. Conlon) is a citizen of the United States and resident of Reno, Washoe County, State of Nevada.

2. Defendant UNITED STATES OF AMERICA, Defendant, UNITED STATES DEPARTMENT OF JUSTICE, and each of the other Defendants or offices within the UNITED STATES DEPARTMENT OF JUSTICE: PAROLE COMMISSION and BUREAU OF PRISONS, and Defendant, UNITED STATES FEDERAL JUDICIARY and each of the other Defendant offices within the UNITED STATES FEDERAL JUDICIARY: PROBATION OFFICE, and SENTENCING COMMISSION, are public agencies acting under color of the laws of the UNITED STATES OF AMERICA.

3. Defendant, JOHN ASHCROFT, is the United States Attorney.

4. Defendant, KEVIN LOWERY (Mr. Lowery) is a Probation Officer with Defendant, United States Probation Office.

5. Defendant, PATRICK FOY (Mr. Foy) is a Probation Officer with Defendant, United States Probation Office.

6. Defendant, THOMAS COLLINS (Mr. Collins) is a Probation Officer with Defendant, United States Probation Office.

7. Defendant, JOHN LAWHEAD (Mr. Lawhead) is a Probation Officer with Defendant, United States Probation Office.

8. Defendant, NANCY BAILEY (Ms. Bailey) is the Warden of FCI Stafford prison of Defendant, United States Bureau of Prisons.

9. Defendant, COMMISSIONER SIMPSON (Mr. Simpson's first name is unknown) is a Parole Commissioner with Defendant, United States Parole Commission.

10. Plaintiff does not know the true names or capacities of the defendants sued herein as DOES 1 through 50; therefore, Plaintiff sues said defendants by such fictitious

names, and prays leave that when the true names of said defendants are ascertained, they may be inserted with appropriate allegations. Upon learning the true names and identities of DOES 1 through 50, Plaintiff will seek leave of court to amend this Complaint.

11. Plaintiff is informed and believes, and upon such information and belief, alleges that each of the Defendants designated herein by such fictitious names are officers, commissioners or employees of the UNITED STATES OF AMERICA, was acting under color of law and within the course and scope of her or his employment, is liable for, is responsible in some manner, or assumed liability for the damages suffered by Plaintiff. Plaintiff is informed and believes, and upon such information and belief, alleges that each of the Defendants designated herein by such fictitious names are the officers, commissioners or employees of each other; and for the occurrences herein alleged, that Plaintiff's damages herein alleged were proximately caused by the acts or omissions of each such Defendant. Each Defendant was acting as the agent of each and every other Defendant. The acts or omissions of each Defendant were authorized by each and every other Defendant, or was approved by each and every other Defendant, or ratified by each and every other Defendant.

## II.

## JURISDICTION

9. This Court has jurisdiction pursuant to 28 USC 28 §1331, §1343 and §1346.

## III.

## FACTS COMMON TO ALL CLAIMS

10. In August of 1986 the Plaintiff received a 12-year term for the alleged distribution of one ounce of a controlled substance. Further, the Plaintiff received an 8-year special parole term to follow.

11. The Plaintiff received a first parole on May 2, 1990 and this parole was revoked in September 1991 for alleged administrative violations.

12. The Plaintiff was re-paroled for a second time after 12 months on March 20, 1992 and this parole was revoked on December 28, 1992 for alleged administrative violations.

13. Plaintiff's third parole was granted on September 15, 1993 and a warrant was issued approximately 60 days later and executed on November 30, 1993 for alleged administrative violations.

14. After a parole hearing a Notice of Action dated April 13, 1994, ordered that the parole be revoked, but that all time spent on parole be credited and the Plaintiff's new release date be set for March 30, 1995.

15. The release date was intentionally delayed by the U.S. Probation Office (in order to incarcerate Plaintiff for a longer period of time).

16. Plaintiff was finally given a release date of November 30, 1995 (Plaintiff's full-term release date from the twelve years ordered August 1986, was June 19, 1998) at which time Plaintiff was to begin the 8-year special parole term.

17. However, a warrant was issued on June 27, 1996, and was executed July 17, 1996, and Plaintiff was arrested once again.

18. A Notice of Action dated December 7, 1996, was issued after a parole hearing, and it was ordered that Plaintiff's parole be revoked, that partial credit for street time be given, and that Plaintiff continue to be imprisoned to expiration of the twelve-year term.

19. Plaintiff was mandatorily released November 7, 1997; the twelve-year term imposed in August 1986, was to expire January 28, 1998.

20. On February 2, 1998, United States Probation officer Kevin Lower filed a warrant application with the U.S. Parole Commission.

21. The warrant application was received by the U.S. Parole Commission by case analyst (Helen A. Herman) and based upon information provided by Lowery the recommendation by the case analyst was forwarded to the Commissioner.

22. The arrest by a Clark County, Nevada, Officer (name unknown) was based upon an outstanding warrant. Clark County Officer (name unknown) took Plaintiff into custody on Highway 95, north of Laughlin on or about February 17, 1998, and transported Plaintiff to the County Jail in Laughlin, Nevada.

///

4

23. Plaintiff was then transported to the Clark County Detention Center in Las Vegas and awaited transport to the Federal Transit Center in Oklahoma for a violation hearing.

24. Upon arriving at the Federal Detention Center, Plaintiff was provided with appointed counsel from the Federal Public Defender's Office ("FPD"), Oklahoma City.

25. After meeting with FPD counsel for the violation hearing, Plaintiff decided to appear pro-se before the U.S. Parole Commission. The hearing examiner was Jeff Kostbar.

26. On or about March 26, 1998 Plaintiff appeared before the Commission Hearing Board and plead to the fact the Commission lacked jurisdiction to violate the special parole term. The examiner stated that it was a slight argument and proceeded to assess the Plaintiff 24 months for the violation.

27. Plaintiff received a Notice of Action on June 17, 1998, assessing the 24-months of imprisonment.

28. On July 10, 1998, Plaintiff filed an administrative appeal with a memorandum outlining that the Commission violated its own rules, and Plaintiff requested to be released.

29. On October 15, 1998, the Commission's Appeal Board affirmed the holding of the examiner, at which juncture the administrative remedies were exhausted and Plaintiff filed a writ of habeas corpus in the United States District court of Arizona, July 27, 1998.

30. Subsequently, Plaintiff hired outside counsel (Natman Schaye of Arizona) and an amended petition for writ of habeas corpus (the content of which was identical to the original) was filed February 19, 1999.

31. On March 5, 1999, Plaintiff, through counsel filed a motion for release on bond pending the outcome.

32. On April 2, 1999, the government responded to the motion for bond.

33. On April 6, 1999, Plaintiff replied to the government's response to the motion for bond.

34. On May 20, 1999, the government responded to the petitioners amended petition.

1  35. On June 2, 1999, Plaintiff filed a reply to government's response to amended petition.

2  36. On October 22, 1999, Plaintiff filed a Notice of Supplemental authority.

3  37. On November 30, 1999, Judge William D. Browning issued an order granting Plaintiff's Petition For Writ Of Habeas Corpus. The Judge's Decision was based on the fact that the Parole Commission lacked jurisdiction to issue the warrant for the Plaintiff's arrest.

4  38. On December 28, 1999, U.S. Probation Officer Pat Foy filed a "violation report-warrant request" for failing to report for supervision.

5  39. On April 18, 2000, Plaintiff was arrested based on the warrant application of U.S.P.O. Patrick Foy, and held in Anoka County jail in Minnesota.

6  40. On April 21, 2000, Plaintiff filed a motion for immediate release and motion to re-open the proceedings of the petition for habeas corpus.

7  41. On May 1, 2000, Judge Browning granted the motion to re-open, however he denied the release request.

8  42. On May 3, 2000, the court ordered an evidentiary hearing on June 14, 2000. On May 25, 2000, the court issued a writ of habeas corpus for the U.S. Marshal's to pick up the Plaintiff at Anoka County jail for the evidentiary hearing.

9  43. June 9, 2000, the court issued a minute order changing the evidentiary hearing to August 7, 2000.

10  44. June 14, 2000, Judge William Browning ordered the Plaintiff's immediate release from the Anoka County Jail as the Marshal's service once again failed to pick up the Plaintiff.

11  45. June 15, 2000, the government responded to Plaintiff's request to re-open the proceedings and motion to reconsider order for Plaintiff's release.

12  46. June 19, 2000, the court issued an order denying all the government's motion's, and further ordered that the government file a brief as whether the Court's order of November 30, 1999, granting the writ obviated the resumption of the Plaintiff's parole status.

///

47. July 31, 2000, the government responded to the Court's order of June 19, 2000, with a response.

48. The evidentiary hearing was again postponed from August 7, 2000, to November 6, 2000, because of Plaintiff had dental surgery, and was then postponed again until December 11, 2000. On December 12, 2000, the Court issued a warrant for the Plaintiff's arrest for failure to appear.

49. On the Spring of 2001, Plaintiff was arrested in Detroit, Michigan and brought before U.S. Magistrate Thomas A. Carlson for failure to appear in December 2000. The Plaintiff waived any extradition and consideration for bond. Plaintiff was ordered transported back to Tucson, Arizona.

50. Plaintiff appeared on July 17, 2001, before Judge William Browning for failing to appear and whether or not Plaintiff had further supervision. The matter was set for status on July 25, 2001, but was postponed once again to August 23, 2001.

51. Plaintiff's counsel filed a response to the government's brief of July 31, 2000, as to whether the order obviated the supervision.

52. On August 23, the evidentiary hearing was held and the court stated it would take argument under advisement.

53. On August 27, 2001, Judge William Browning issued an Order Vacating the special parole term and found that Plaintiff had been subjected to "22 months of illegal imprisonment" (Order is attached as Exhibit 1). No appeal was taken from the order.

54. Plaintiff filed a claim in July, 2001, by mailing from FCI Tucson, Arizona, to the U.S. District Court of Nevada, Las Vegas, Court Clerk. Plaintiff believes the action was never assigned a civil number, nor entered onto the Court Docket.

///
///
///
///
///

7

## IV.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Violation of 42 U.S.C. §1983, 42 U.S.C. §1985 (3), *et seq.* - Deprivation of Rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States)

55. Plaintiff repeats and re-alleges paragraphs 1 through 54 as if set forth in full.

56. Defendant John Lawhead, U.S.P.O., by and through the U.S. Probation Office made fraudulent and false allegations of special parole violations that were originally filed by the U.S. Parole Commission's case analyst.

57. Having reviewed the warrant application the case analyst elected to forward his/her stamp of approval to the Commissioner to issue a warrant for the Plaintiff's arrest even though the allegations were without jurisdiction.

58. Plaintiff was arrested and subsequently was subjected to what was to be a preliminary hearing with an "independent probation officer" to determine probable cause. The probation officer was predisposed to find the Plaintiff's guilt and ruled accordingly.

59. After the above-stated hearing, Plaintiff was transferred to FTC Oklahoma for a revocation hearing.

60. At the revocation hearing, Plaintiff argued that the Commission lacked jurisdiction to violate the special parole term as it had not started.

61. The record reflects that the regular parole period was tolled as the U.S. District Court confirmed in its granting of the Plaintiff's writ of habeas corpus, thus no violation occurred in the special parole period.

62. The U. S. Parole Commission's own manual prohibits the violation of the special parole period.

63. The Examiner disallowed the argument as "weak," and assessed the Plaintiff 24 months in prison.

64. The Plaintiff exhausted his administrative remedy to filing an appeal to the National Appeals Board. Counsel (name unknown) elected to affirm the examiner's order

8

without explanation. The evidence presented to the Appeals Board was overwhelming by virtue of its own regulation and case law which clearly and unequivocally showed the order of the examiner to be overturned. Counsel, with the Commissioner's approval, chose to continue this constitutional violation by ignoring the Plaintiff's claim.

65. At all times relevant Defendants, and each of them, acted arbitrarily and capriciously so as to deny Plaintiff's liberty and property interests and rights without due process in violation of the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

66. As a direct and proximate result of the acts of the Defendants, and each of them, Plaintiff has suffered personal injury, wrongful and false imprisonment, embarrassment, humiliation, and severe and extreme mental anguish, all to his general damage in excess of $10,000, and special damages for lost wages and other pecuniary loss.

67. The acts of the Defendants, and each of them, were oppressive, malicious, and intentional, thus, entitling Plaintiff to receive punitive damages pursuant to law.

68. Plaintiff has been compelled to retain the services of counsel to prosecute this action.

## SECOND CLAIM FOR RELIEF
(Intentional Infliction of Emotional Harm)

69. Plaintiff repeats and re-alleges paragraphs 1 through 68 as if set forth in full.

70. The acts of the Defendants, and each of them, were outrageous, and were intended by them to subject Plaintiff to severe and extreme emotional distress.

71. As a direct and proximate result of Defendants' acts, Plaintiff has lost wages and other compensation and has suffered a diminished reputation, embarrassment, humiliation, mental anguish, physical injury, and extreme emotional distress.

72. Defendants, and each of them, sought to maximize the emotional distress suffered by Plaintiff and to wrench from him the joy and happiness which was a vital part of his life.

73. The acts of the Defendants, and each of them, were oppressive, malicious, and

9

1  intentional, thus, entitled Plaintiff to receive punitive damages pursuant to law.

2   74.  Defendants acted with intent, malice and oppression, thus entitling Plaintiff to
3  recover punitive damages pursuant to law.

### THIRD CLAIM FOR RELIEF
(Negligence)

75.  Plaintiff repeats and re-alleges paragraphs 1 through 74 as if fully set forth herein.

76.  Defendants, and each of them, owed to Plaintiff to duty of care to refrain from interfering with his vested property rights, and to refrain from causing him emotional distress or other harm to his person, reputation, and well being.

77.  Defendants, and each of them, breached this duty as described above.

78.  As a direct and proximate result of Defendants' acts, Plaintiff suffered general, special, economic, and non-economic damages in excess of $10,000.

### FOURTH CLAIM FOR RELIEF
(Intentional Misrepresentation)

79.  Plaintiff repeats and re-alleges paragraphs 1 through 78 as if set forth in full.

80.  Defendant U.S. Probation officer Kevin Lowery filed a warrant request letter to the United States Parole Commission for violations of a special parole term on or about February 1998. The request for the warrant was based on technical violations.

81.  Defendant U.S. Probation officer Kevin Lowery waited until January 29, 1998, in which to make an inquiry at the Plaintiff's resident, one day after the regular term of parole was to run out. Defendant knew that his representation was false so Plaintiff would violate the "special parole term.

82.  The false misrepresentation of the Plaintiff's violation to the Commission resulted in false arrest, malicious prosecution, and false imprisonment in violation of the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments under Title 42 § 1983.

83.  As a direct and proximate result of Defendants' acts, Plaintiff suffered general, special, economic, and non-economic damages in excess of $10,000.

10

## FIFTH CLAIM FOR RELIEF
(False Arrest)

84. Plaintiff repeats and re-alleges paragraphs 1 through 83 as if set forth in full.

85. Defendant U.S. Probation officer Patrick Foy along with Defendants Collins and Lawhead, acted individually and conspired to violate the Plaintiff's First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights under Title 42 §§ 1983 and 1985(3).

86. The Parole Commission did not request the District of Nevada to supervise the Plaintiff as the certificate of special parole designated the Western District of Texas as the jurisdictional district.

87. Defendant Foy submitted a letter to the Commission with the complete approval of Defendants Collins and Lawhead for the arrest of the Plaintiff for failure to report for supervision even though there was no requirement for supervision of Plaintiff in Nevada.

88. The false arrest of Plaintiff resulted in an additional two months of illegal incarceration until the Honorable Judge Browning released Plaintiff from custody of the Parole Commission.

89. The Plaintiff's detention was based upon the acts of false information, misrepresentation, negligence, as well as deliberate indifference to the Plaintiff.

90. As a direct and proximate result of Defendants' acts, Plaintiff suffered general, special, economic, and non-economic damages in excess of $10,000.

## SIXTH CLAIM FOR RELIEF
(False Imprisonment)

91. Plaintiff repeats and re-alleges paragraphs 1 through 90 as if set forth in full.

92. Defendant Warden Nancy Bailey acted individually and conspired with Defendant's Inmate Systems Manager (name unknown) and Inmate Systems Manager (name unknown) to violate the Plaintiff's First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights under Title 42 §§ 1983 and 1985(3) of false imprisonment.

93. Plaintiff filed his administrative remedy with Defendant Bailey.

94. Defendant Bailey passed the action to Inmate Systems Manager (name

1  unknown who stated the Commission could violate the special parole term.

2  95. Defendant Bailey approved the decision of the institution to not act upon the
3  request.

4  96. Plaintiff approached the "new" Inmate Systems Manager with the same
5  information and received the same negative response given by Defendant Bailey.

6  97. Plaintiff appealed to the Regional office which affirmed the Warden's actions.

7  98. Plaintiff appealed to the Central office and they affirmed the Warden's actions
8  without investigation.

9  99. As a direct and proximate result of Defendants' acts, Plaintiff suffered general,
10 special, economic, and non-economic damages in excess of $10,000.

## SEVENTH CLAIM FOR RELIEF
(Cruel and Unusual Punishment)

13 100. Plaintiff repeats and re-alleges paragraphs 1 through 99 as if set forth in full.

14 101. Defendant Warden Nancy Bailey acted individually and conspired with
15 Defendant's Inmate Systems Manager (name unknown) and Inmate Systems Manager (name
16 unknown) to violate Plaintiff's First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment
17 rights under Title 42 §§ 1983 and 1985(3) of cruel and unusual punishment.

18 102. The false arrest of Plaintiff resulted in an additional two months of illegal
19 incarceration until the Honorable Judge Browning released Plaintiff from custody of the
20 Parole Commission.

21 103. Plaintiff's detention was based upon the acts of false information, misrepre-
22 sentation, negligence, as well as deliberate indifference to the Plaintiff.

23 104. As a direct and proximate result of Defendants' acts, Plaintiff suffered general,
24 special, economic, and non-economic damages in excess of $10,000.

25 / / /
26 / / /
27 / / /
28 / / /

## V.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for judgment as follows:

1. For compensatory damages in excess of $10,000;
2. For punitive damages in excess of $10,000;
3. For the award of Plaintiff's attorneys' fees and costs;
4. For such other and further relief as is appropriate.

DATED this 14 day of December, 2001.

*[signature]*
Michael J. Conlon
1015 N. Sierra Street
Reno, Nevada 89503
Plaintiff in Pro Per

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable of right by a jury.

DATED this 14 day of December, 2001.

*[signature]*
Michael J. Conlon
1015 N. Sierra Street
Reno, Nevada 89503
Plaintiff in Pro Per

13

Legal Tabs Co. 800-322-3022

EXHIBIT 1

RECEIVED
AUG 27 2001
FEDERAL PUBLIC DEFENDER
DISTRICT OF ARIZONA

FILED ___ LODGED
___ RECEIVED ___ COPY
AUG 27 2001
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL CONLON,<br><br>Petitioner,<br><br>vs.<br><br>NANCY BAILEY, et al.,<br><br>Respondents. | No. CIV 98-346-TUC-WDB<br><br>**ORDER** |

Through a long and circuitous process, the Court is now considering the effects of its grant of a writ of habeas corpus to Petitioner in November 1999. Based on the following, the Court holds that Petitioner was not on notice of any requirement to contact the Parole Commission after his release on the writ, and, in an exercise of its equitable powers, the Court releases Petitioner from serving any remaining parole term.

**BACKGROUND**

In 1986 Petitioner was sentenced to a mandatory release supervision term of 12 years and a special parole term of 8 years. In his Petition for Writ of Habeas Corpus, Petitioner argued that his constitutional rights were violated when his special parole term was revoked after he had absconded during his regular parole term, but before he had begun to serve the special parole term. The Court held that the special term was tolled, and as a result the

1 | Parole Commission had no jurisdiction to revoke the special parole term. The Court ordered
2 | that the Petitioner be released.

3 | The Order contained no instructions concerning Petitioner's duty to contact the Parole
4 | Commission. Petitioner claims that he attempted to contact his parole officer in Las Vegas
5 | but was told that they would not handle his case. Petitioner then moved to Minnesota.

6 | Petitioner was arrested by local police in Minnesota in the Spring of 2000. Although
7 | it appears the state did not charge him with any violation of the law, he was transferred to the
8 | U.S. Marshals for violating parole. A warrant for a parole violation has not yet been issued
9 | and no probable cause hearing has been held.

10 | Petitioner requested that the Court reopen his habeas petition, which the Court did.
11 | An evidentiary hearing was set for June 12, 2000. However, Petitioner was not transferred
12 | to Tucson, the hearing was continued and Petitioner was released. Petitioner failed to appear
13 | for the rescheduled evidentiary hearing and a bench warrant was issued. Petitioner appears
14 | to have been arrested on different charges. He was brought before this Court, pursuant to the
15 | warrant.

16 | **ISSUES**

17 | Previously, the Government offered the following argument as to why Petitioner
18 | should still be considered to be serving his special parole and to have absconded from
19 | supervision. By the time Petitioner was released because of the grant of habeas corpus, he
20 | had served the 12 year term of his sentence and mandatory release term. He therefore should
21 | have begun serving the special parole term. Allegedly he was presented with a special parole
22 | certificate before leaving prison, but refused to sign it because he wanted to discuss it with
23 | his attorney. He allegedly stated he would contact parole in either Nevadea or Texas after
24 | his December 15, 1999, release, but did not do so.

25 | The Government argues that it is an inappropriate remedy for the wrong of improperly
26 | imprisoning Petitioner to vacate his entire special parole term. The Government gives two
27 | reasons for this: (1) it is possible for equitable considerations to be made by terminating the
28 |

- 2 -

FPD-AZ-0743

supervised release term early; and (2) vacating the term would, in essence, vacate the sentence imposed by the Texas district court without a showing that the sentence was improper.

Petitioner argues, in response, that the Court should consider equitable issues in this case. Petitioner has served nearly 11 years of prison time and close to 3 years on regular parole. He was then incarcerated illegally for 22 months, as a result of the Parole Commission's decision to revoke his special parole.

Additionally, Petitioner notes that the Parole Commission asserted that Petitioner violated special parole and then converted his eight-year special parole term into a two year term of imprisonment. Had the revocation been legitimate (and not the subject of Petitioner's application for writ of habeas) Petitioner would have been released in March 2000 and the Parole Commission could have either imposed a term of ordinary parole, or released Petitioner unconditionally. The Parole Commission does not have the authority to re-impose a term of special parole, after the original term is revoked. *Robles v. U.S.*, 146 F.3d 1098 (9th Cir. 1998); *Fultz v. Stratman*, 963 F.Supp 926 (S.D.Cal. 1997). Had Respondents actions been proper, they could not reimpose the special term, thus, they should not be able to reimpose the term once their actions have been deemed illegal. Petitioner argues that he should be released without conditions, or in the alternative, with a reasonable period of regular parole.

DISCUSSION

The original grant of writ of habeas corpus was pursuant to 28 U.S.C. § 2241. However, Petitioner was in custody under sentence by a federal court. Accordingly, the Court has jurisdiction to vacate and set the judgment aside. . . [and] correct the sentence as may appear appropriate." 28 U.S.C. § 2255. There is "broad and flexible power" conferred upon a district court due to the equitable nature of habeas corpus relief. *See United States v. Handa*, 122 F.3d, 690, 691 (9th Cir. 1997). Thus, where the actions of the Government are

FPD-AZ-0744

1  set aside as illegal, the court is free to restructure the sentence to reflect the circumstances.
2  *Id.* at 692.
3      Here, the Court's original Order granting the writ of habeas corpus did not require the
4  Petitioner to establish contact with the Parole Commission, nor did it make clear that he still
5  had a term of probation to complete. Thus, the Court cannot find that Petitioner's failure to
6  contact the Parole Commission was improper. Considering the amount of time that
7  Petitioner has spent in custody since his release on the writ, equity suggests that to impose
8  additional probation, on top of the 22 months of illegal imprisonment, would be unwarranted.
9      Accordingly,
10     IT IS HEREBY ORDERED that Petitioner's special parole term be VACATED and
11 Petitioner be RELEASED no later than August 31, 2001.
12     DATED this 24th day of August, 2001.

William D. Browning
Senior United States District Judge

-4-

FPD-AZ-0745