1 | DANIEL G. BOGDEN
United States Attorney

2

3 | GREG ADDINGTON
Assistant United States Attorney
Nevada Bar # 6875

4 | 100 West Liberty Street, Suite 600
Reno, NV  89501

5 | (775) 784-5438
(775) 784-5181-facsimile

6

7 | UNITED STATES DISTRICT COURT

8 | DISTRICT OF NEVADA

*ORIGINAL*

9 | MICHAEL J. CONLON,                       )
                                         )
10 |      Plaintiff,                        )   CV-N-01-700-DWH-VPC
                                         )
11 |      v.                               )   MOTION TO DISMISS COMPLAINT
                                         )   OR, IN THE ALTERNATIVE, FOR
12 | UNITED STATES OF AMERICA;             )   SUMMARY JUDGMENT
UNITED STATES DEPARTMENT OF              )
13 | JUSTICE;                             )
JOHN ASHCROFT, Attorney General;)
14 | FEDERAL BUREAU OF PRISONS;            )
NANCY BAILEY, Warden of FGI,             )
15 | Safford, Arizona;                    )
UNITED STATES PAROLE COMMISSION;)
16 | JOHN R. SIMPSON; U.S. Parole          )
Commissioner;                            )
17 | UNITED STATES PROBATION OFFICE;       )
KEVIN LOWRY, U.S. Probation              )
18 | Officer;                             )
PATRICK FOY, U.S. Probation              )
19 | Officer;                             )
THOMAS COLLINS, U.S. Probation           )
20 | Officer;                             )
JOHN LAWHEAD, U.S. Probation             )
21 | Officer;                             )
UNITED STATES SENTENCING                 )
22 | COMMISSION;                          )
                                         )
23 |      Defendants.                      )
     _____)

24

25 |      Come now each of the named defendants in this action,

26 | individually and collectively, through their undersigned counsel,

27 | and move this Court pursuant to Rule 7(b), Fed.R.Civ.P., for

28

U.S. DISTRICT COURT
DISTRICT OF NEVADA
FILED

JUN 2 5 2002

CLERK, U.S. DISTRICT COURT
BY _____ DEPUTY

1  dismissal of this action or, in the alternative, for summary
2  judgment.

3      The motion to dismiss is made on the grounds that this Court
4  lacks subject matter jurisdiction as to the claims against
5  certain defendants, this Court lacks personal jurisdiction over
6  certain defendants, service of process has been insufficient as
7  to all defendants, and the complaint fails to state a viable
8  claim for relief against any of the named defendants.  The
9  alternative motion for summary judgment is made on the grounds
10 that plaintiff can prove no facts which would entitle him to the
11 relief requested against any of the named defendants.

12     This motion is based on the attached memorandum of law and
13 the attached declarations and exhibits.  This motion is brought
14 pursuant to Rules 12(b)(1),(2),(5), and (6) and Rule 56,
15 Fed.R.Civ.P.

16     For the reasons described in the attached memorandum of law,
17 this action should be dismissed or, in the alternative, summary
18 judgment entered against plaintiff and in favor of each of the
19 defendants.

20                     Respectfully submitted,

21                     DANIEL G. BOGDEN
                       United States Attorney
22

23

24                     GREG ADDINGTON
                       Assistant United States Attorney
25

26

27

28                              2

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Plaintiff Conlon has brought this action against multiple institutional defendants and multiple individual defendants seeking unspecified damages attributable to his "illegal" incarceration by federal authorities.  The focus of the complaint is the effect of Conlon's various parole violations on his sentence computation.

Conlon was sentenced to a term of imprisonment in 1986 for narcotics offenses.  He was paroled at various times and his parole was revoked by the U.S. Parole Commission for parole violations.  During one of those paroles in late 1997 and early 1998, he was briefly supervised by U.S. Probation Officer Kevin Lowry.  That parole was revoked by the U.S. Parole Commission on account of parole violations.  He was again released on parole in late 1999.  The parole certificate in late 1999 directed Conlon to report to the probation office in the Western District of Texas within 72 hours.  Conlon told his BOP case manager that he (Conlon) wanted to report to the District of Nevada.  Conlon did not, however, report to either probation office (Texas or Nevada) and, accordingly, a recommendation was made to the U.S. Parole Commission to again revoke parole.  A warrant of arrest was issued and Conlon was eventually apprehended and returned to custody.  As matters progressed, Conlon initiated habeas corpus proceedings in the District of Arizona (where he was

1 incarcerated), claiming that he had been incarcerated too long on
2 account of irregularities in the computation of his sentence
3 following parole revocation. Those proceedings resulted in the
4 August 27, 2001 Order which is attached to the complaint as
5 exhibit 1.  The order directed that Conlon be released without
6 further parole no later than August 31, 2001.

7 Conlon now brings his action against various defendants,
8 asserting claims under 42 USC, sections 1983 and 1985 as well as
9 under the Constitution.

10 The named defendants include six "institutional" defendants.
11 They are (1) the United States, (2) the U.S. Department of
12 Justice, (3) The Bureau of Prisons, (4) the U.S. Parole
13 Commission, (5) the U.S. Probation Office, and (6) the U.S.
14 Sentencing Commission.  As discussed below, all of these
15 institutional defendants must be dismissed because none of them
16 is a proper party to the claims asserted by Conlon, the Court
17 lacks subject matter jurisdiction over such non-existent claims,
18 and there has not been sufficient service of process on these
19 defendants.

20 Conlon also names seven "individual" defendants.  They are
21 (1) Attorney General John Ashcroft, (2) Nancy Bailey (former
22 warden at the BOP Safford, Arizona facility), (3) John Simpson
23 (U.S. Parole Commissioner), and four U.S. Probation Officers
24 (Kevin Lowry, Pat Foy, Thomas Collins, and John Lawhead).  As
25 discussed below, all of these defendants must be dismissed
26 because they enjoy absolute or qualified immunity from suit, this
27
28                                    4

1  Court lacks personal jurisdiction as to some of them, there has

2  been insufficient service of process as to all of them, and the

3  complaint fails to state a viable claim for relief as to any of

4  them.

5  To the extent any claims survive the motions for dismissal,

6  summary judgment is sought as to any remaining defendants on the

7  grounds that no viable claim can be maintained by Conlon based on

8  the facts established through the attached declarations and

9  evidentiary materials.

10

11  II. THE DEFENDANTS

12  The allegations of the complaint betray a fundamental

13  misunderstanding of the roles which are played by the various

14  agencies in the computation of criminal sentences, the decisions

15  which are made concerning parole for "old law" offenders, and the

16  fixing of release dates for federal prisoners.  Because an

17  understanding of these roles is important to an understanding of

18  each defendant's conduct, the following brief discussion is

19  provided regarding these agencies and their functions.

20  The United States Parole Commission is a federal agency that

21  has jurisdiction, _inter alia_, over federal prisoners who

22  committed their offenses prior to November 1, 1987.  Such

23  prisoners are referred to as "old law" federal prisoners in

24  contrast to "new law" federal prisoners who committed their

25  offenses after November 1, 1987, are sentenced under the

26  Sentencing Reform Act, are not eligible for parole, and are not

27

28                                  5

1   under the Commission's jurisdiction. See 18 USC, sections 4201-
2   4218; 28 CFR, sections 2.1-2.66.[1] The parole Commission is made
3   up of Parole Commissioners who are appointed by the President and
4   approved by the Senate. The Commissioners make parole decisions
5   for the individuals under the Commission's jurisdiction. Those
6   decisions include decisions to grant or deny parole to prisoners,
7   to revoke the parole for parolees, and to revoke the mandatory
8   release of mandatory releasees. When the Parole Commission
9   denies a prisoner release on parole, the prisoner is released by
10  the Bureau of Prisons via mandatory release based on good time
11  credits. Mandatory releasees are under the Parole Commission's
12  jurisdiction upon their release as if they had been released on
13  parole; the only difference between a parolee and a mandatory
14  releasee is that the mandatory releasee's sentence terminates 180
15  days before his full term date (his "180-day date") unless his
16  mandatory release is revoked prior to that date. See 18 USC,
17  sections 4163-64. Only a Parole Commissioner (not a staff person
18  or a probation officer) has the authority to order a prisoner
19  released on parole, issue a warrant, or revoke parole or
20  mandatory release.

21      U.S. Probation Officers are employees of the federal
22  district court. However, they also work for the Parole
23  Commission when they supervise parolees, special parolees, and
24  mandatory releasees who are under the Commission's jurisdiction.

25

26      [1] Sections 4201-4218 of Title 18, USC, have been repealed
27  but remain in effect for old law prisoners.

28                                    6

1   U.S. Probation Officers are responsible for reporting to the
2   Commission and making recommendations to the Commission.

3        The Bureau of Prisons is the federal agency that is charged
4   with housing federal inmates and computing their release dates.
5   The computation of an old law prisoner's release date is first
6   based on the judgment and commitment order but may also be
7   affected by subsequent orders of the Parole Commission revoking
8   the person's parole and/or ordering forfeited certain period of
9   time spent on parole.

10       If the Parole Commission revokes the parole of a parolee or
11  the mandatory release of a mandatory releasee and orders the
12  individual to serve a term of incarceration, he is returned to
13  the Bureau of Prisons to serve the term.   The Bureau of Prisons
14  does not make the revocation decision; rather, it houses the
15  revoked parolee or mandatory releasee for the period of time
16  ordered by the Commission and it recalculates the person's
17  release date based on the Parole Commission's order (which is
18  called a "Notice of Action").

19       The U.S. Sentencing Commission was created by the Sentencing
20  Reform Act in 1984.   The Sentencing Commission is an independent
21  federal agency in the judicial branch of government.   It is
22  comprised of seven voting members who are appointed by the
23  President and confirmed by the Senate.   The Sentencing
24  Commission's duties include developing guidelines for sentencing
25  in federal courts, collecting data about crime and sentencing,
26  and serving as a resource to Congress, the Executive Branch, and

27

28                                  7

the Judiciary on crime and sentencing policy.  The Sentencing
Commission does not compute the sentences of individual federal
offenders.

Defendant John Ashcroft is the Attorney General of the
United States.  Other than being named in the caption of the
complaint and identified in paragraph 3 of the complaint, he is
nowhere mentioned in the complaint and no allegations are made
against him.

Defendant John Simpson is a U.S. Parole Commissioner.  Other
than being named in the caption of the complaint and identified
in paragraph 9 of the complaint, he is nowhere mentioned in the
complaint and there are no allegations made against him.

Defendant Nancy Bailey is the former warden of the Safford,
Arizona corrections facility which housed Conlon during his
federal custody.

Defendants Lowry, Foy, Collins, and Lawhead are U.S.
Probation Officers (Lawhead is now retired) in Nevada.  Their
respective roles in the supervision of Conlon's parole are
described in the declarations attached hereto.  It should be
noted that, as to defendant Collins, he is named in the caption
of the complaint and identified in paragraph 6 of the complaint.
He is nowhere else mentioned in the complaint and there are no
allegations made against him.

III.   STATEMENT OF FACTS

The following statement of facts is based on the referenced declarations and the exhibits attached thereto.

1.   On August 8, 1986, Conlon was sentenced to a 12-year prison term and an 8-year special parole term by the U.S. District Court for the Western District of Texas for distribution of cocaine. (Exhibit 1).[2]

2.   After four paroles and parole revocations on his 12-year sentence, Conlon was mandatorily released on good time from his 12-year prison term on November 7, 1997, to be supervised on mandatory release until January 28, 1998, when his 8-year special parole term would commence. (Exhibit 2); See Declaration of Thomas Lowry, paras. 7-8.

3.   Probation Officer Lowry was assigned supervision responsibility for Conlon.   In late January 1998, Probation Officer Lowry learned that Conlon had left the Las Vegas area weeks earlier, taking his girlfriend's car.   By a letter dated February 2, 1998, Probation Officer Kevin Lowry informed the Parole Commission that Conlon had failed to report a change in residence to his probation officer, had failed to submit monthly written reports since December 1997, and had failed to appear for random urinalysis since December 20, 1997. (Exhibit 3).   See Lowry decl., paras. 10-11.

---

[2]   Each of the exhibits identified in the statement of facts is attached to the Declaration of Greg Addington, filed herewith. Additionally, declarations of Pat Foy, Kevin Lowry, Thomas Collins, and Nancy Bailey are filed and served herewith.

1    4. Probation Officer Lowry also alleged that Conlon had

2  taken his girlfriend's automobile on or about January 6, 1998,

3  without returning. The girlfriend reported that Conlon had left

4  their residence on that same date and that she had not seen him

5  since then. Probation Officer Lowry reported that Conlon's

6  current whereabouts were unknown and he requested a warrant for

7  Conlon's arrest.  See Lowry decl., paras. 10-11.

8    5.  On February 12, 1998, the Parole Commission issued a

9  violator warrant for Conlon on his special parole term. (Exhibit

10  4). Conlon was charged with a single violation of failing to

11  report a change in residence. Conlon was arrested on the

12  violation warrant on February 20, 1998. (Exhibit 5).  Following

13  Conlon's arrest on the warrant, Probation Officer Lowry had no

14  further involvement in Conlon's parole, supervision, or

15  incarceration. See Lowry decl., paras. 12-15.

16    6.  Conlon was given a preliminary interview on February 25,

17  1998, at which he admitted to the violation. (Exhibit 6, page 1).

18  The Parole Commission gave Conlon a revocation hearing on March

19  26, 1998.  (Exhibits 6 & 7). See Lowry decl., paras. 15-18.

20    7.  By a Notice of Action dated June 15, 1998, the Parole

21  Commission informed Conlon of the following decisions:  (1)

22  revoke special parole; (2) none of the time spent on special

23  parole should be credited; and (3) continue to a presumptive

24  parole after the service of 24 months (February 18, 2000) with

25  the special condition of alcohol aftercare.  (Exhibit 8).

26

27

28                                    10

1      8.   Conlon appealed these decisions to the Parole

2 Commission's National Appeals Board on July 10, 1998, alleging

3 that the Commission lacked jurisdiction to issue a special parole

4 violator warrant for a violation that occurred while he was on

5 mandatory release supervision (Exhibit 9).

6      9.   By a Notice of Action on Appeal dated October 15, 1998,

7 the Parole Commission's National Appeals Board informed Conlon

8 that the previous decisions were affirmed and that his special

9 parole violator term was converted to a regular term of

10 imprisonment.   (Exhibit 10).

11      10. On July 27, 1998, Conlon filed a petition for a writ of

12 habeas corpus in the District of Arizona (Tucson).   On February

13 19, 1999, Conlon filed an amended petition for writ of habeas

14 corpus. (Exhibit 11).   He claimed that he was being illegally

15 held in violation of his right to due process on the ground that

16 his act of absconding tolled the running of his supervision term

17 and prevented the commencement of his special parole term. He

18 argued that he only could have been charged as a mandatory

19 release violator and, since his 12-year term of incarceration had

20 expired, the Commission no longer had jurisdiction to revoke his

21 mandatory release and sanction him for violations.

22      11. On November 29, 1999, District of Arizona Senior United

23 States District Judge William B. Browning granted Conlon's

24 petition for a writ of habeas corpus and ordered the Bureau of

25 Prisons to release him from custody on or before December 15,

26 1999. (Exhibit 12). The Court found "that the violation tolls the

27

28                          11

1  running of a parole term.  Thus, Petitioner's regular parole,

2  that should have expired on January 28, 1998, was tolled by his

3  previous act of absconding.  Therefore, his special parole term

4  never began and the Parole Commission never had jurisdiction to

5  issue the warrant to revoke Petitioner's special parole.

6  Petitioner has been incarcerated since his arrest on February 19,

7  1998.  Thus, the Court finds that petitioner should be released."

8  (Exhibit 12).

9      11.  Prior to Conlon's release on December 15, 1999, U.S.

10  Probation Officer Pat Foy had been requested to conduct a pre-

11  release investigation into the suitability of a release plan

12  proposed by Conlon.  U.S. Probation Officer Foy recommended the

13  rejection of the release plans which proposed Conlon's release to

14  Las Vegas, Nevada.  See Declaration of Pat Foy, paras. 8-11.

15      12.  Probation Officer Foy then learned of the Court order

16  directing Conlon's release on December 15, 1999.  Probation

17  Officer Foy also learned that Conlon had been directed to report

18  to a probation officer within 72 hours of his release. See Foy

19  Declaration, para. 12.

20      13. Because the District of Nevada had recommended against

21  Conlon's proposed release to Nevada, the Parole Commission issued

22  a special parole certificate in which it ordered Conlon to report

23  to the Western District of Texas, his district of conviction, for

24  supervision. (Exhibit 13). See Foy decl., paras. 12-15.

25

26

27

28                                    12

1       14. Upon his court-ordered release by the Bureau of Prisons

2  on December 15, 1999, Conlon refused to sign the special parole

3  certificate, although he did look at it. (Exhibits 13 & 14). He

4  told the Bureau of Prisons that he intended to return to Nevada

5  rather than Texas. (Exhibit 14).

6       15. On December 28, 1999, U.S. Probation Officer Pat Foy

7  sent a letter to the Parole Commission in which he notified the

8  Commission that Conlon had failed to report for supervision in

9  either the Western District of Texas or the District of Nevada

10  and requested a warrant for his arrest. (Exhibit 15). That

11  request was approved by Supervising U.S. Probation Officer Thomas

12  M. Collins. See Foy decl., paras. 12-17,23-24; Declaration of

13  Thomas Collins, para. 7.

14       16. On January 12, 2000, the Parole Commission issued a

15  warrant for Conlon's arrest, charging him with failure to report

16  for supervision. (Exhibit 16). Conlon was arrested under the

17  warrant in Minnesota on April 17, 2000, after his arrest on new

18  criminal charges of fraud and false information to a police

19  officer. (Exhibit 17). See Foy decl., paras. 17-19.

20       17. Conlon was given a preliminary interview on May 3, 2000.

21  (Exhibit 18). On June 2, 2002, the Parole Commission

22  supplemented its warrant application to include the new criminal

23  charges of fraud and false information to a police officer.

24  (Exhibit 19).

25       18. Following Conlon's arrest in Minnesota and his initial

26  interview there, U.S. Probation Officer Foy had no further

27

28                           13

 1   involvement in Conlon's parole, supervision, or incarceration.

 2   See Foy decl., para. 22.

 3        19.   Other than their general supervisory duties within the

 4   U.S. Probation Office, (current) Deputy Chief U.S. Probation

 5   Officer Thomas Collins and (former) Deputy Chief U.S. Probation

 6   Officer John Lawhead (now retired) had no involvement in Conlon's

 7   parole or supervision or incarceration. See Foy decl., paras. 23-

 8   24; Lowry decl., paras. 19-20; Collins decl., paras. 3-7.

 9        20.   After his arrest, Conlon filed a motion in the District

10   of Arizona to reopen his habeas corpus case. On May 1, Judge

11   Browning granted the motion and scheduled a hearing for June 12,

12   2000. (Exhibit 20). The hearing was apparently continued to

13   August 7, 2000.  On June 16, 2000, the court issued a clarifying

14   order in which it stated: "The issue for consideration at the

15   August 7, 2000 hearing shall be whether this Court's Order of

16   November 30, 1999, granting a Writ of Habeas Corpus, which did

17   not order the Petitioner to resume contact with the Parole

18   Commission, obviated the resumption of Petitioner's parole

19   status.   Respondents are ordered to address this issue in a brief

20   filed with this Court by at least July 31, 2000." (Exhibit 21).

21        21. Apparently because Conlon was having dental surgery, the

22   August hearing was postponed and rescheduled first for November

23   and then for December 11, 2000.  Plaintiff failed to appear at

24   the December 11 hearing and Judge Browning issued a bench warrant

25   on December 12, 2000 for his arrest.  (Exhibit 22).   20. On

26   August 24, 2001, after Conlon was brought before him on the bench

27

28                                  14

1 warrant, Judge Browning vacated Conlon's special parole term as a
2 matter of equity and ordered him released no later than August
3 31, 2001.  (Exhibit 23).

4     20.  Pursuant to the court's order, on September 7, 2001,
5 the Parole Commission issued a Notice of Action in Conlon's case
6 in which it ordered: "Withdraw the warrant dated 7/13/01 and
7 close case." (Exhibit 24).

8     21.  None of the individual defendants (Ashcroft, Bailey,
9 Foy, Simpson, Lowry, Collins, Lawhead) has been served with a
10 summons and complaint in this action. See Foy decl., para. 7;
11 Collins decl., para. 6; Lowry decl., para. 6.

12     22.  Defendant Nancy Bailey does not live in and does not
13 have any permanent association with the District of Nevada. See
14 Declaration of Nancy Bailey.

15     23.  The conduct of all individually named defendants was
16 conduct taken in the course of their federal employment duties.
17 See Foy decl., paras. 4-6; Collins decl., paras. 3-5; Lowry
18 decl., para. 4-5.

19

20 IV.  ARGUMENT

21     A.  This Action Should Be Dismissed on Multiple Grounds.

22 i.  The Institutional Defendants Are Improper Parties To An
    Action Under the Constitution or Under 42 USC, Sections 1983 and
23 1985.

24     Conlon brings his action against these defendants under 42
25 USC, sections 1983 and 1985 as well as various provisions of the
26 U.S. Constitution.  It is well settled, however, that section

27

28                             15

1   1983, by its own terms, imposes liability only upon "persons" as
2   that term is defined.  Federal agencies are not "persons" as that
3   term is used in section 1983.  See Monell v. Dept. of Social
4   Services, 436 U.S. 658 (1978)(holding that only local
5   governmental agencies are "persons" within the meaning of the
6   statute).

7        Additionally, the federal agencies named in this action are
8   all created by and act pursuant to federal law, not state law.
9   Meritt v. Mackey, 932 F.2d 1317, 1323 (9th Cir. 1991); Daly-
10  Murphy v. Winston, 820 F.2d m1470, 1477 (9th Cir. 1987); Broadway
11  v. Block, 694 F.2d 979, 981 (5th Cir. 1982).  Since none of the
12  federal agencies act "under color of state law" as required by
13  the statute, there is no conceivable basis for liability under
14  section 1983.

15       Likewise, these federal institutional defendants may not be
16  sued under section 1985 or under the Constitutional theories of
17  tort liability because a federal agency may not be sued in its
18  own name unless Congress has specifically authorized such suit in
19  legislation containing explicit authorizing language.  See
20  Blackmar v. Guerre, 342 U.S. 512 (1952)(government agency may not
21  be sued eo nomine without explicit authorizing statute).[3]

22

23  _____

24       [3]  The Federal Tort Claims Act (FTCA) provides a waiver of
    sovereign immunity for suits against the United States but Conlon
25  plainly has not brought his action under the FTCA, choosing
    instead to assert Constitution-based claims and statutory claims
26  under inapplicable statutes. In any event, Conlon has not alleged
    the filing of an administrative claim with the applicable agency,
27  a jurisdictional prerequisite to the filing of an FTCA action.

28                              16

1        A suit for damages against a federal agency (and against a
2  federal official in his or her official capacity) is essentially
3  a suit against the United States.  See Brandon v. Holt, 469 U.S.
4  464, 471-73 (1985); Lehner v. United States, 685 F.2d 1187, 1189
5  (9th Cir. 1982), cert. denied, 460 U.S. 1039 (1983); Gilbert v.
6  DaGorssa, 756 F.2d 1455, 1458 (9th Cir. 1985); Daly-Murphy, 837
7  F.2d at 355.  The United States, as sovereign, is immune from
8  suit except as it consents to be sued.  See Lehman v. Nakshian,
9  453 U.S. 156, 160 (1981).  Thus, a damages claim against a
10 federal agency (or a federal official in his or her official
11 capacity) must be dismissed on the ground of sovereign immunity
12 if the United States has not consented to be sued for damages
13 regarding the claim.  See Ross v. United States, 574 F. Supp.
14 536, 540-41 (S.D.N.Y. 1983); Safeway Portland Employees' Federal
15 Credit Union v. FDIC, 506 F.2d 1213 (9th Cir. 1974).  In this
16 instance, Conlon has explicitly based his damages claims on the
17 Constitution and on statutes which do not impose liability on
18 federal entities.

19       Constitutional tort actions are not maintainable against the
20 United States and thus are not maintainable against federal
21 agencies.  See Jaffee v. United States, 592 F.2d 712, 717 (3d
22 Cir. 1979) (FTCA does not authorize suits against the United
23 States based on a constitutional tort theory); Boda v. United
24 States, 698 F.2d 1174, 1176 (11th Cir. 1983)(constitutional torts
25 are barred by sovereign immunity, and the court lacks
26 jurisdiction to consider such a claim).  Thus, neither the United
27

28                                17

1  States nor its agencies is subject to suits based on

2  constitutional tort.  <u>See</u> <u>Daly-Murphy</u>, 820 F.2d at 1478;

3  <u>Arnsberg v. United States</u>, 757 F.2d 971, 980 (9th Cir. 1985),

4  <u>cert. denied</u>, 475 U.S. 1010 (1986) (<u>Bivens</u> does not provide a

5  means of cutting through the sovereign immunity of the United

6  States).  Therefore, insofar as Conlon's claims against the

7  institutional defendants are construed (as they must be) to be a

8  constitutional cause of action, the suit is barred by sovereign

9  immunity and must be dismissed as to them.

10

11  <u>ii</u>.  Defendants Simpson, Lawhead, Lowry, Foy, and Collins Should
   Be Dismissed Based on Absolute Immunity.

12

      Conlon sues defendants Simpson, Lawhead, Lowry, Foy, and

13  Collins in both their individual and official capacities. They

14  may properly claim immunity from suit in their individual

15  capacities for their actions.

16

      First, the Court lacks subject-matter jurisdiction over

17  defendants Simpson, Lawhead, Lowry, Foy, and Collins because they

18  may properly claim absolute immunity from suit for their actions.

19  In order to protect them from harassment and to allow them to

20  perform their duties, government officials are entitled to claim

21  an appropriate form of immunity from suits for damages.  <u>See</u>

22  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 806 (1982). Parole officials,

23  including Regional Commissioners, are absolutely immune from suit

24  for their decision-making.  <u>See</u> <u>Fendler v. U.S. Parole Com'n</u>, 774

25  F.2d 975, 979-80 (9th Cir. 1985); <u>Walrath v. United States</u>, 35

26  F.3d 277 (7th Cir. 1994); <u>Anderson v. Boyd</u>, 714 F.2d 906 (9th

27

28                                    18

1  Cir. 1983);  Sellars v. Procunier, 641 F.2d 1295, 1298 (9th Cir.
2  1981), cert. denied, 454 U.S. 1102 (1981);  Walker v. Prisoner
3  Review Board, 769 F.2d 396, 398 (7th Cir. 1985), cert. denied,
4  474 U.S. 1065 (1986).  This firmly established immunity is based
5  upon the quasi-judicial nature of parole decisions and the threat
6  that retaliatory suits will undermine independent decision-
7  making.  Like judges, parole officials must,

8              render impartial decisions in cases and
             controversies that excite strong feelings
9           because the litigant's liberty is at stake.
             *** Just as the decision-making process of
10          judges must be kept free from fear, so must
             that of parole board officials.  Without this
11          protection, there is the same danger that the
             decision-maker might not impartially
12          adjudicate the often difficult cases that
             come before them.
13

14  Sellars, 641 F.2d at 1303.  Thus, U.S. Parole Commissioner John
15  R. Simpson is absolutely immune from suit for his actions of
16  issuing warrants and revoking parole and mandatory release terms.
17       Other parole officials who participate in quasi-judicial
18  functions are also entitled to absolute immunity from suit.  See
19  Cleavinger v. Saxner, 474 U.S. 193, 204 (1985);  Fry v.
20  Malaragno, 939 F.2d 832, 837 (9th Cir. 1991); Sellars, 641 F.2d
21  at 1295;  Anderson, 714 F.2d at 908-09 (parole officials are
22  entitled to absolute quasi-judicial immunity for the execution of
23  parole revocation proceedings).  Thus, absolute immunity is not
24  limited to the parole decision-makers, but extends to the staff
25  employees who assist the Commissioners in their responsibilities.
26  See Cleavinger, 474 U.S. at 200 ("With this judicial immunity
27
28                              19

1  firmly established, the Court has extended absolute immunity to
2  certain others who perform functions closely associated with the
3  judicial process. The federal hearing examiner and administrative
4  law judge have been afforded absolute immunity."); <u>Allison v.</u>
5  <u>California Adult Authority</u>, 419 F.2d 822, 823 (9th Cir. 1969).
6  It is immaterial whether the act complained of occurred before,
7  during, or after a parole hearing.  What matters for immunity
8  purposes is that the act is "entwined with the exercise ... of
9  quasi-judicial power."  <u>Anderson</u>, 714 F.2d at 909.

10      Defendants Lawhead, Lowry, Foy, and Collins are (or were)
11  U.S. Probation Officers. Their recommendations to the U.S. Parole
12  Commission are an intricate part of the parole adjudicatory
13  process.  On that basis, they are entitled to absolute immunity
14  for their alleged actions of submitting a violation report and
15  request for a warrant to the Parole Commission in 1998 and
16  notifying the Commission in 2000 of petitioner's failure to
17  report for supervision.  Federal probation officers are entitled
18  to absolute immunity for quasi-prosecutorial functions of
19  initiating parole revocation proceedings, which are an intricate
20  part of the parole adjudicatory process.  <u>See</u> <u>Briscoe v. LaHue</u>,
21  460 U.S. 325, 335 (1983)(police officer testifying in a criminal
22  trial granted absolute immunity); <u>Imbler v. Pachtman</u>, 424 U.S.
23  409 (1976);  <u>Fry</u>, 939 F.2d at 836-37 (actions of IRS attorneys in
24  initiating a prosecution and prosecuting plaintiffs was
25  intimately connected to the judicial process, and therefore suit
26  on those actions was barred by absolute immunity);  <u>Thompson v.</u>

27

28                              20

1  <u>Duke</u>, 882 F.2d 1180, 1184-85 (7th Cir. 1989); <u>Meyers v. Contra</u>
2  <u>Costa Dep't of Social Services</u>, 812 F.2d 1154 (9th Cir. 1987);
3  <u>Johnson v. Kelsh</u>, 664 F.Supp. 162 (S.D.N.Y. 1987)(parole officer
4  who initiates revocation process entitled to absolute immunity
5  because role is comparable to that of a prosecutor in a criminal
6  trial).

7      Thus, because their alleged actions of submitting a
8  violation report and request for a warrant to the Parole
9  Commission in 1998 and for notifying the Commission in 2000 of
10  petitioner's failure to report for supervision were "entwined
11  with the exercise ... of quasi-judicial power," defendants
12  Lawhead, Lowry, Foy, and Collins are also entitled to absolute
13  immunity from suit. <u>Anderson</u>, 714 F.2d at 909.

14      Accordingly, defendants Simpson, Lawhead, Foy, Collins, and
15  Lowry must be dismissed from this action for lack of subject
16  matter jurisdiction and failure to state a claim against for
17  which relief may be granted.

18
     <u>iii</u>.  Defendants Lawhead, Foy, Simpson, Collins, Lowry, and
19  Bailey Should Be Dismissed on the Grounds of Qualified Immunity.

20      In any event, if they are not entitled to absolute immunity,
21  defendants Simpson, Lawhead, Lowry, Foy, and Collins are entitled
22  to qualified immunity, pursuant to <u>Anderson v. Creighton</u>, 483
23  U.S. 635 (1987); <u>Davis v. Scherer</u>, 468 U.S. 183, 191 (1984), and
24  <u>Harlow</u>, 457 U.S. at 806; <u>Siegert v. Gilley</u>, 111 S.Ct. 1789
25  (1991); <u>Gomez v. Toledo</u>, 446 U.S. 635 (1960)).  Likewise, Nancy
26
27
28                                    21

1 | Bailey (former warden of the BOP facility in Safford, Arizona) is
2 | entitled to qualified immunity.

3 | Qualified immunity, pursuant to the Supreme Court's decision
4 | in Harlow, 457 U.S. 800, permits federal employees to be subject
5 | to suit for actions taken in the course of their employment only
6 | if their conduct violates "clearly established statutory or
7 | constitutional rights of which a reasonable person would have
8 | known." 457 U.S. at 818. See Anderson, 483 U.S. at 639-40;
9 | Capoeman v. Reed, 754 F.2d 1512 (9th Cir. 1985)(discussing
10 | "clearly established" requirement). Whether an official
11 | protected by qualified immunity may be held personally liable for
12 | an alleged unlawful official action generally turns on the
13 | "objective legal reasonableness" of the official's action.
14 | Anderson, 483 U.S. at 639. An official is entitled to prompt
15 | dismissal based on this defense if the complaint fails to plead a
16 | violation of established law. See Harlow, 457 U.S. at 818;
17 | Mitchell v. Forsyth, 472 U.S. 511 (1985); Fendler, 774 F.2d at
18 | 980; Arnsberg, 757 F.2d at 981.

19 | If the Court concludes that defendants Simpson, Lawhead,
20 | Lowry, Foy, and Collins are not entitled to absolute immunity for
21 | their alleged actions, they certainly are entitled to qualified
22 | immunity (as is defendant Bailey). All of their alleged actions
23 | were taken in the course of their federal employment and the
24 | actions did not violate any clearly established constitutional or
25 | statutory right of which a reasonable person would have known.
26 | See Fendler, 774 F.2d at 980. It is plain from the face of

27 |
28 |                                    22

1 | plaintiff's first amended complaint that the actions of these
2 | individual defendants were taken in their official capacities as
3 | a U.S. Parole Commissioner, U.S. Probation Officers, or as a
4 | federal prison warden.  Therefore, they can be deprived of the
5 | defense of qualified immunity only if the complaint alleges facts
6 | that, if true, would constitute a clear invasion of a
7 | constitutional or statutory right secured to federal parolees.
8 | See Mitchell, 472 U.S. at 528.

9 | In this case, the conduct of defendants Simpson, Lawhead,
10 | Lowry, Foy, and Collins did not violate clearly established
11 | statutory or constitutional rights of which a reasonable person
12 | would have known.  Even assuming that the reports given to the
13 | Parole Commission by the U.S. Probation Office were erroneous,
14 | Conlon has no constitutional protection against having an
15 | erroneous report filed with the Parole Commission by his U.S.
16 | Probation Officer. Even if his 2000 special parole certificate
17 | listed the Western District of Texas as his district of
18 | supervision, petitioner has no constitutional protection against
19 | having the District of Nevada (where he had told the Bureau of
20 | Prisons he intended to go) notify the Parole Commission that he
21 | had failed to report for supervision in either the Western
22 | District of Texas or the District of Nevada.  A U.S. Probation
23 | Officer is obliged to report to the Commission.  See 28 C.F.R. §
24 | 2.42.  The Constitution only provides protection at the stage of
25 | a hearing if such a report results in the parolee's arrest as a
26 | parole violator.  See Morrissey v. Brewer, 408 U.S. 471 (1971).

27 |

28 |                              23

1  A constitutional violation occurs if an arrested parolee receives
2  no hearing to contest the truth of the report that caused his
3  arrest.   Conlon does not claim that he was not given a revocation
4  hearing after he was taken into custody in 1998 under the Parole
5  Commission's warrant.   The record shows that Conlon was provided
6  with a preliminary interview and a parole revocation hearing in
7  1998 (Exhibits 6 & 7), and that he was provided with due process
8  before, at, and after the hearing. See 18 U.S.C. § 4214 (setting
9  out due process rights for parole revocation) and § 4215
10 (administrative appeal right).   He was also given a preliminary
11 interview in 2000 (Exhibit 18), prior to his release by Judge
12 Browning's court order (Exhibit 20).

13    It is apparent, as well, that the Bureau of Prisons
14 correctly computed Conlon's sentence and release date based on
15 the orders and rulings of the U.S. Parole Commission, as BOP is
16 required to do.[4]

17    Accordingly, there is no "established law" which these
18 defendants may be said to have violated. See Fendler, 774 F.2d
19 at 980 (plaintiff "has not alleged a violation of a clearly
20 established constitutional right.").   Since these defendants can
21 be deprived of the defense of qualified immunity only if the
22 complaint alleges facts that, if true, would constitute a clear
23 invasion of a constitutional or statutory right secured to

24

25    [4]   It should also be noted that defendant Bailey does not
    personally compute inmate sentences and release dates(and did not
26  compute Conlon's).   As discussed below, she can not be held
    personally liable for damages on account of the errors of her
27  subordinates (if there were any such errors).

28                                   24

1  federal parolees in existing case law, they are entitled to the
2  prompt dismissal or entry of summary judgment in this case.  See
3  Harlow, 457 U.S. 800;  Schultz v. Sundberg, 759 F.2d 714, 717-18
4  (9th Cir. 1985) (the decision in Harlow "was motivated by a
5  desire to allow for more expeditious disposition of suits against
6  government officials on summary judgment.").

8  iv.  The Claims Against Defendants Lawhead, Collins, and Bailey
     Must Be Dismissed For failure to State a Claim.
9
       Conlon's claim against defendants Lawhead, Collins, and
10
   Bailey should be dismissed for failure to state a claim under
11
   Rule 12(b)(6).
12
       Neither Collins, Lawhead, nor Bailey had any direct role or
13
   participation in Conlon's parole, incarceration, or sentencing
14
   computation.  Each of them functioned as supervisors in their
15
   respective organizations and are being sued for the alleged mis-
16
   conduct of their subordinates.  Conlon must allege and prove that
17
   these defendants personally participated in or directed the
18
   alleged unconstitutional actions of which he complains.  See
19
   Watts v. Morgan, 572 F. Supp. 1385, 1392 (N.D. Ill. 1983)(claim
20
   of constitutional injury based on a theory of vicarious liability
21
   not actionable under § 1983).  These supervisory defendants may
22
   not be held vicariously liable for the action of their
23
   subordinates.  See Terrell v. Brewer, 935 F.2d 1015, 1018 (9th
24
   Cir. 1991);  Boettger v. Moore, 483 F.2d 86, 87 (9th Cir.
25
   1973)(higher government officials are not liable under the
26
   doctrine of respondeat superior for lower officials because both
27

28                                25

1  are employees of the government, and higher officials are not the

2  employers of the lower officials); Adams v. Pate, 445 F.2d 105,

3  107 (7th Cir. 1971)(respondeat superior inapplicable where money

4  damages are sought). See Rizzo v. Goode, 423 U.S. 362 (1976);

5  Sportique Fashions, Inc. v. Sullivan, 597 F.2d 664, 666 (9th Cir.

6  1979); Kulow v. Nix, 28 F.3d 855 (8th Cir. 1994).

7      Therefore, to the extent that Conlon's claims against these

8  defendants is based on the doctrine of respondeat superior, they

9  should be dismissed for failure to state a claim.

10

11  v.  Conlon Has Failed to State a Claim Against Defendants
    Simpson, Ashcroft, and Collins.

12

13      Conlon has also failed to state a claim against defendants

    Simpson, Ashcroft, and Collins because he does not make any
14
    specific allegations regarding what unlawful actions were taken
15
    by any of these defendants.  Damage actions against government
16
    officials are subject to a heightened pleading standard, and,
17
    under that standard, Conlon has therefore failed to state a claim
18
    against these defendants.  Even without a heightened pleading
19
    standard, the complaint is utterly silent regarding any conduct
20
    personally undertaken by these defendants against Conlon.  See
21
    Siegert, 111 S.Ct at 1793 (plaintiff failed "to establish the
22
    violation of any constitutional right at all.");  Smith,  807
23
    F.2d at 200 ("Bare allegations of improper purpose . . . do not
24
    suffice to drag officials into the mire of discovery.").
25
        As to defendant Simpson, he is identified in the caption of
26
    the complaint and (correctly) identified as a U.S. Parole
27

28                                26

1  Commissioner in paragraph 9 of the complaint.  His name appears
2  nowhere else in the complaint.

3  As to defendant Ashcroft, he is identified in the caption of
4  the complaint and (incorrectly) identified as the United States
5  Attorney in paragraph 3 of the complaint.  His name appears
6  nowhere else in the complaint.[5]

7  As to defendant Collins, he is identified in the caption of
8  the complaint and (correctly) identified as a U.S. Probation
9  Officer in paragraph 6 of the complaint.  His name appears
10  nowhere else in the complaint.

11  Since there are no claims stated against these defendants,
12  they must be dismissed.

13

14  vi.  Conlon's claims against all individual defendants should be
15  dismissed for his failure to serve them with the summons and
    complaint.

16  A federal court must obtain personal jurisdiction over the
17  defendant before it can issue a binding judgment in a suit where
18  plaintiff seeks money damages from the defendant. In the absence
19  of technically correct service of process, the court has no
20  jurisdiction to render a personal judgment. Moskovits v. DEA,
21  774 F.Supp. 649 (D.D.C. 1991). Actual notice by the defendant is
22  not sufficient and does not substitute for compliance with the
23  personal service requirement in accordance with the applicable

24

25  _____

26      [5]   It is rather unlikely that John Ashcroft would have had
    any direct involvement in Conlon's parole status from 1997
27  through 2000.  At that time, Ashcroft was a U.S. Senator.

28                                27

1 rule. <u>Moskovits</u>, <u>id</u>.; <u>DeFazio v. Delta Air Lines</u>, 849 F.Supp. 98
2 (D.Mass. 1994).

3    The requirement of personal service is no less firm in so-
4 called <u>Bivens</u> actions brought against federal employees for
5 Constitutional torts.[6]   In order to maintain such an action,
6 which seeks recovery of money damages from the individual
7 employee's personal assets, proper service must be effected on
8 the defendant employee. <u>Daly-Murphy v. Winston</u>, 837 F.2d 348, 355
9 (9th Cir. 1987)("failure to effect individual service is fatal to
10 a Bivens action"); <u>Despain v. Salt Lake Area Gang Unit</u>, 13 F.3d
11 1436 (10th Cir. 1994); <u>Tajeddini v.Gluch</u>, 942 F.Supp. 772
12 (D.Conn. 1996); <u>Huskey v. Quinlan</u>, 785 F.Supp. 4 (D.D.C.
13 1992)(dismissing Bivens case for failing to serve defendant).

14    A federal court may only use those methods of service
15 authorized by rule or statute. <u>Omni Capital International Ltd. v.</u>
16 <u>Rudolff Wolff & Co.</u>, 484 U.S. 97, 104-08 91987). In the present
17 context, the provisions of Rule 4, Fed.R.Civ.P., describe the
18 required service of process which must be effected.

19    Prior to the 2000 amendments to Rule 4, there was
20 substantial disagreement among the Circuit Courts concerning the
21 issue of whether institutional service on the United States (in
22 addition to individual service on the individual defendant)   was

23

24        [6]       To state a <u>Bivens</u> claim, a plaintiff must allege
25        facts showing that a person acting under color of
         federal law deprived the plaintiff of a right,
26        privilege, or immunity secured by the U.S.
         Constitution. <u>Bivens v. Six Unknown Named Agents</u>, 403
27        U.S. 388, 397 (1981).

28                                 28

1 | required in Bivens actions against individual federal employees.
2 | See Vaccaro v. Dobre, 81 F.3d 854 (9th Cir. 1996)(not required);
3 | Armstrong v. Sears, 33 F.3d 182 (2d Cir. 1994)(not required);
4 | Light v. Wolf, 816 F.2d 746 (D.C.Cir. 1987)(required);
5 | Ecclesiastical Order of Ism of Am v. Chasin, 845 F.2d 113 (6th
6 | Cir. 1988)(required). The 2000 amendments to Rule 4 put this
7 | issue to rest by adding Rule 4(i)(2)(B), specifically addressing
8 | the service requirement in suits against federal employees sued
9 | in their individual capacities for acts or omissions occurring in
10 | connection with their official duties. The rule makes plain that
11 | service upon the individual is required (by means specified) and
12 | service upon the United States is required. See Advisory
13 | Committee Notes, Rule 4 (2000 amendments).

14 | Service upon the United States is effected by (1) delivery
15 | of the summons and complaint to the U.S. Attorney or designated
16 | official in the U.S. Attorney's Office or by mailing a copy of
17 | the summons and complaint by certified/registered mail to the
18 | U.S. Attorney's Office addressed to the "civil process clerk" and
19 | (2) mailing a copy of the summons and complaint by
20 | certified/registered mail to the Attorney General in Washington,
21 | D.C. See Rule 4(i)(1).

22 | In the present case, Conlon has failed to effect service on
23 | any of the individual defendants (Simpson, Lawhead, Lowry, Foy,
24 | Bailey, Ashcroft, and Collins) and the complaint as to them
25 | should therefore be dismissed. Plaintiff has not served these
26 | seven individual federal defendants with the summons and

27 |
28 |                                    29

1  complaint in any manner.   Plaintiff has the burden of showing
2  that service was proper.   Light v. Wolf, 816 F.2d 746, 751 (D.C.
3  Cir. 1987).

5  vii.   This Court lacks personal jurisdiction over Simpson and
   Bailey.

      Defendant U.S. Parole Commissioner John R. Simpson resides
7  in the State of Maryland. The Court lacks personal jurisdiction
8  over him, insofar as he is sued in his individual capacity.   He
9  is not a resident of the State of Nevada, he performs no work in
10 the State of Nevada, and the Court does not have jurisdiction
11 over him just because he is a U.S. government employee. See
12 Stafford v. Briggs, 444 U.S. 527, 544-45 (1980). Therefore,
13 defendant Simpson should be dismissed from this action in his
14 individual capacity.

      Likewise, the Court lacks personal jurisdiction over
16 defendant Nancy Bailey. She resides in the State of New Jersey,
17 performs no work in Nevada, and did not commit any act which
18 would create jurisdiction in the state of Nevada.

      As to defendants Simpson and Bailey, the complaint should be
20 dismissed for lack of personal jurisdiction.

22 viii.   Conlon Has failed to State a Claim Under section 1983.

      Conlon has failed to state a claim under 42 U.S.C. § 1983.
24 To establish a claim under 42 U.S.C. § 1983, Conlon must allege
25 that the named defendants acted "under color of state law" at the
26 time of the acts complained of and that the actions of these

28                              30

1   defendants deprived Conlon of rights, privileges, or immunities
2   secured by the Constitution or laws of the United States. See
3   West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 2255 (1988); Collins
4   v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989), cert. denied,
5   110 S.Ct. 865 (1990); Canlis v. San Joaquin Sheriff's Posse
6   Comitatus, 641 F.2d 711, 716 and cases cited therein (9th Cir.),
7   cert. denied, 454 U.S. 967 (1981); Briley v. State of California,
8   564 F.2d 849, 853 (9th Cir. 1977). Conlon must also show that
9   these defendants acted with discriminatory intent, in order to
10  bring the suit within the scope of § 1983. See Cruz v. Skelton,
11  543 F.2d 86, 92 (5th Cir. 1976), cert. denied, 433 U.S. 911
12  (1977).

13      Conlon has not alleged in his complaint that these
14  defendants acted "under color of state law" in their conduct
15  toward him, and he has also failed to allege any facts which
16  would form the basis for the "under color of state law"
17  requirement of 42 U.S.C. § 1983. Rather, Conlon's claims against
18  all of the defendants are with regard to their actions under
19  federal law. Section 1983 does not apply to federal agencies or
20  "federal officials acting under color of federal law." See Daly-
21  Murphy, 820 F.2d at 1477; Meritt v. Mackey, 932 F.2d 1317, 1323
22  (9th Cir. 1991). All of the individual defendants are federal
23  officials. All of the alleged actions of these defendants of
24  which Conlon complains were taken in the course of Conlon's
25  federal mandatory release and special parole supervision and the
26  revocation of his federal special parole. Accordingly, even if
27
28                                  31

1 | Conlon's allegations regarding the actions of these defendants
2 | were taken as true, Conlon has failed to establish that those
3 | actions were taken "under color of state law."

4 |     Further, even if these defendants had acted "under color of
5 | state law," Conlon has failed to show or allege facts that would
6 | form the basis for a finding that he was deprived by these
7 | defendants of rights, privileges, and immunities secured by the
8 | Constitution or laws of the United States. He has also failed to
9 | show that these defendants acted with discriminatory intent.

10 |     Therefore, Conlon's claim under 42 U.S.C. § 1983 must be
11 | dismissed, pursuant to Rule 12(b)(6), for failure to state a
12 | claim.

13 |

14 | ix. Conlon has failed to state a claim under 42 U.S.C. § 1985.

15 |     Conlon has also failed to state a claim under 42 U.S.C. §
16 | 1985(3) (as he alleges), because he has not shown invidious
17 | class-based discrimination by any of the named defendants.  In
18 | enacting section 1985, which prohibits conspiracies to deprive
19 | individuals of their civil rights, Congress did not intend to
20 | create a general federal tort law, i.e., an all-purpose cause of
21 | action to sue for any conspiracy to violate Conlon's legal
22 | rights.  To state a claim under this section, Conlon must show
23 | some racial, or otherwise class-based invidiously discriminatory
24 | animus.  See Burns v. County of King, 883 F.2d 819 (9th Cir.
25 | 1989); Bretz v. Kelman, 773 F.2d 1026, 1028-30 (9th Cir. 1985);
26 | Harrison v. Springdale Water and Sewer Com'n, 780 F.2d 1422,

27 |

28 | 32

1   1429-30 (8th Cir. 1986).  Consequently, Conlon's claim under 42
2   U.S.C. § 1985 must be dismissed, pursuant to Rule 12(b)(6), for
3   failure to state a claim.

4

5   B. Summary Judgment Should Be Entered in Favor of the
    Defendants.
6
7       Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper
    where the "pleadings, depositions, answers to interrogatories,
8
    and admissions on file, together with the affidavits, if any,
9
    show that there is no genuine issue as to any material fact and
10
    that the moving party is entitled to a judgment as a matter of
11
    law."  The moving party has the burden of demonstrating the
12
    absence of a genuine issue of fact for trial. Anderson v. Liberty
13
    Lobby, Inc., 477 U.S. 242, 256 (1986).  If the moving party
14
    satisfies the burden, the party opposing the motion must set
15
    forth specific facts showing that there remains a genuine issue
16
    for trial. Rule 56(e), Fed.R.Civ.P.
17
        A non-moving party who bears the burden of proof at trial to
18
    an element essential to his case (such as plaintiff herein) must
19
    make a showing sufficient to establish a genuine dispute of fact
20
    with respect to the existence of that element of the case or be
21
    subject to summary judgment. Celotex Corp. v. Catrett, 477 U.S.
22
    317, 322 (1986).  Such an issue of fact is a genuine issue if it
23
    reasonably can be resolved in favor of either party. Anderson,
24
    477 U.S. at 250-51.  Mere disagreement or the bald assertion that
25
    a genuine issue of material fact exists does not preclude the
26
    entry of summary judgment. Harper v. Wallingford, 877 F.2d 728
27

28                                  33

1 | (9th Cir. 1989); <u>Famous Brands v. David Sherman Corp.</u>, 814 F.2d
2 | 517, 522 (8th Cir. 1987).

3 |     The undisputed material facts of this case are that Conlon's
4 | incarceration was the result of decisions by the U.S. Parole
5 | Commission and a legitimate good-faith legal dispute concerning
6 | the computation of his release date.  There is no basis for
7 | imposition of damages against any these named defendants because
8 | the allegations of discriminatory intent, intentional denial of
9 | civil rights, and conspiracy to deny Conlon's civil rights can
10 | not be sustained.

11 |     Accordingly, to the extent any claims survive the motion to
12 | dismiss analyses above, summary judgment should be entered in
13 | favor of the defendants and against plaintiff.

14 |
15 |

16 | V.  CONCLUSION

17 |     Based on the foregoing, this action should be dismissed with
18 | prejudice or, in the alternative, summary judgment should be
19 | entered in favor of the defendants and against plaintiff.

20 |
21 |                     Respectfully submitted,

22 |                     DANIEL G. BOGDEN
                    United States Attorney
23 |
24 |
25 |                     GREG ADDINGTON
                    Assistant United States Attorney
26 |
27 |
28 |                       34

1 | DANIEL G. BOGDEN
United States Attorney

2

GREG ADDINGTON
3 | Assistant United States Attorney
Nevada Bar # 6875
4 | 100 West Liberty Street, Suite 600
Reno, NV  89501
5 | (775) 784-5438
(775) 784-5181-facsimile

6

7 |                UNITED STATES DISTRICT COURT

8 |                    DISTRICT OF NEVADA

9 | MICHAEL J. CONLON,                )
                                    )
10 |      Plaintiff,                  )   CV-N-01-700-DWH-VPC
                                    )
11 |      v.                         )   DECLARATION OF KEVIN LOWRY
                                    )
12 | UNITED STATES OF AMERICA;       )
UNITED STATES DEPARTMENT OF       )
13 | JUSTICE;                        )
JOHN ASHCROFT, Attorney General;)
14 | FEDERAL BUREAU OF PRISONS;      )
NANCY BAILEY, Warden of FGI,      )
15 | Safford, Arizona;               )
UNITED STATES PAROLE COMMISSION;)
16 | JOHN R. SIMPSON; U.S. Parole    )
Commissioner;                     )
17 | UNITED STATES PROBATION OFFICE; )
KEVIN LOWRY, U.S. Probation       )
18 | Officer;                        )
PATRICK FOY, U.S. Probation       )
19 | Officer;                        )
THOMAS COLLINS, U.S. Probation    )
20 | Officer;                        )
JOHN LAWHEAD, U.S. Probation      )
21 | Officer;                        )
UNITED STATES SENTENCING          )
22 | COMMISSION;                     )
                                    )
23 |            Defendants.          )
     _____)

24

25

26

27

28

1

2                              DECLARATION OF KEVIN LOWRY

3         I, Kevin Lowry, hereby declare as follows pursuant to 28 U.S.C.,
      section 1746:

4         1.   I am employed by the U.S. Probation Office for the District

5     of Nevada as a Supervising U.S. Probation Officer.  I have been so

6     employed for approximately two years.  I am one of the named

7     defendants in the civil action captioned <u>Michael J. Conlon v. U.S.</u>

8     <u>America, et al.</u>, CV-01-700-DWH (District of Nevada).  My office is

9     located in Las Vegas, Nevada.

10        2.   I have been a U.S. Probation Officer for the District of

11    Nevada since January 1991.

12        3.   As a probation officer, I supervise offenders on federal

13    probation, on supervised release, or on parole granted by the U.S.

14    Parole Commission.

15        4. I have had no affiliation or association with the plaintiff

16    Michael Conlon other than in the performance of my official duties and

17    responsibilities as a U.S. Probation Officer.

18        5.   The allegations of the complaint arise entirely out of my

19    official conduct as a U.S. Probation Officer.

20        6.   I have seen a copy of the complaint in this civil action by

21    reviewing the supervision file regarding Michael Conlon.  A copy of

22    the complaint is in the file. To date, I have not received the

23    complaint by any means other than the copy which is in the supervision

24    file and I have never seen or received a summons directed to me.

25        7.   My first involvement with Michael Conlon was in November

26    1997, when Conlon was issued a parole certificate by the U.S. Parole

27    Commission (USPC) directing his him to contact a probation officer

28

                                        1

1 within 72 hours of his release from custody. I was assigned to
2 supervise Conlon's term of parole.

3    8.   Conlon's term of parole was to commence on his release date
4 (November 7, 1997) and terminate on January 28, 1998, at which time a
5 special term of parole was to commence which would terminate on
6 January 27, 2006.

7    9.   On November 10, 1997, I interviewed Conlon for purposes of
8 parole supervision. I enrolled Conlon in a substance abuse treatment
9 program.

10   10.   On January 29, 1998, I spoke to Conlon's girlfriend, who
11 informed me that Conlon had stolen her car and had been gone since
12 January 6, 1998.

13   11.   On February 2, 1998, I prepared a violation report and a
14 request for warrant based on Conlon's failure to advise the probation
15 office within 2 days of a change of residence, failure to submit a
16 written monthly report between the first and third day of each month,
17 and failure to comply with all laws (based on the auto theft).

18   12.   Based on my request, the USPC issued a warrant of arrest for
19 Conlon on February 12, 1998 for failure to report the change of
20 residence.

21   13.   Conlon was arrested on February 19, 1998.

22   14.   Following Conlon's arrest in February 1998, I had no further
23 role in connection with Conlon's parole, supervision, or
24 incarceration.

25   15.   Following Conlon's arrest in February 1998, another
26 probation officer interviewed Conlon regarding the reported parole
27 violation. Conlon admitted to the charge and offered no excuse other

28

                                     2

1 | than alcohol intake.

2 |     16.  A recommendation was made to the U.S. Parole Commission that
3 | further parole violation proceedings be initiated in connection with
4 | the charged violation.

5 |     17.  On June 5, 1998, Conlon was returned to custody with a
6 | release date of February 18, 2000.

7 |     18.  Other than the events described above, I have had no
8 | involvement in Conlon's supervision, incarceration, or parole.

9 |     19.  During the time of the events described above, Tom Collins
10 | was my supervisor within the U.S. Probation Office.  Mr. Collins had
11 | no involvement with Conlon other than as my supervisor, which required
12 | him to approve the recommendations and requests to the USPC.

13 |     20.  During the time of the events described, John Lawhead was
14 | the Deputy Chief U.S. Probation Officer the District of Nevada.  Mr.
15 | Lawhead is now retired.  Mr. Lawhead had no involvement with Conlon
16 | other than as a supervisor of the probation office.

17 |

18 |     I declare under penalty of perjury that the foregoing is true and
19 | correct.

20 |     Executed 6/20/____, 2002 in Las Vegas, Nevada.

21 |

22 |

23 | KEVIN LOWRY
   | Supervising U.S. Probation Officer
   | District of Nevada

24 |

25 |

26 |

27 |

28 |

1 | DANIEL G. BOGDEN
United States Attorney

2

GREG ADDINGTON
3 | Assistant United States Attorney
Nevada Bar # 6875
4 | 100 West Liberty Street, Suite 600
Reno, NV  89501
5 | (775) 784-5438
(775) 784-5181-facsimile

6

7 |                 UNITED STATES DISTRICT COURT

8 |                     DISTRICT OF NEVADA

9 | MICHAEL J. CONLON,                   )
                                       )
10 |       Plaintiff,                    )   CV-N-01-700-DWH-VPC
                                       )
11 |       v.                           )   DECLARATION OF PAT FOY
                                       )
12 | UNITED STATES OF AMERICA;          )
UNITED STATES DEPARTMENT OF          )
13 | JUSTICE;                           )
JOHN ASHCROFT, Attorney General;)
14 | FEDERAL BUREAU OF PRISONS;         )
NANCY BAILEY, Warden of FGI,         )
15 | Safford, Arizona;                  )
UNITED STATES PAROLE COMMISSION;)
16 | JOHN R. SIMPSON; U.S. Parole       )
Commissioner;                        )
17 | UNITED STATES PROBATION OFFICE;    )
KEVIN LOWRY, U.S. Probation          )
18 | Officer;                           )
PATRICK FOY, U.S. Probation          )
19 | Officer;                           )
THOMAS COLLINS, U.S. Probation       )
20 | Officer;                           )
JOHN LAWHEAD, U.S. Probation         )
21 | Officer;                           )
UNITED STATES SENTENCING             )
22 | COMMISSION;                        )
                                       )
23 |             Defendants.            )
                                       )

24

25

26

27

28

1

2                          DECLARATION OF PAT FOY

3       I, Pat Foy, hereby declare as follows pursuant to 28 U.S.C.,
    section 1746:
4
5       1.   I am employed by the U.S. Probation Office for the District

6   of Nevada as a Supervising U.S. Probation Officer. I have been so

7   employed since April 2001. I am one of the named defendants in the

8   civil action captioned Michael J. Conlon v. U.S. America, et al., CV-

9   01-700-DWH (District of Nevada). My office is located in Las Vegas,

10  Nevada.

11      2.   I have been a U.S. Probation Officer for the District of

12  Nevada since March 1978.

13      3.   As a probation officer, I performed investigations and

14  supervision duties (regarding ex-offenders) as directed by the U.S.

15  Courts and the U.S. Department of Justice (U.S. Bureau of Prisons and

16  U.S. Parole Commission).

17      4. I have had no affiliation or association with the plaintiff

18  Michael Conlon other than in the performance of my official duties and

19  responsibilities as a U.S. Probation Officer.

20      5.   I have never met nor spoken to Michael Conlon.

21      6.   The allegations of the complaint arise entirely out of my

22  official conduct as a U.S. Probation Officer.

23      7.   I received a copy of the complaint in this civil action by

24  transmittal of the complaint from the probation office in Arizona.

25  The summons which accompanied the complaint is directed to "U.S.

26  Federal Judiciary, Probation Office" in Tucson. To date, I have not

27  received the complaint by any means other than the transmittal

28  described above and I have never received a summons directed to me.

                                    1

1

2    8.   My first involvement with Michael Conlon was in August 1999,
3    when I was requested to conduct a pre-release investigation into a
4    proposed release to the Clark Center, a community corrections center
5    in Las Vegas.   I recommended against the proposed release due to a
6    previous failure of Conlon at the same center and due to the center's
7    unwillingness to accept Conlon.   At the time, Conlon was incarcerated
8    at a BOP facility in Safford, Arizona.

9    9.   My next involvement with Michael Conlon was in October 1999,
10   when I was requested to conduct a pre-release investigation regarding
11   another release plan.   The plan proposed residence, but no employment
12   for Conlon upon release for parole supervision to the District of
13   Nevada in February 2000.

14   10.   In October 1999, I recommended to the Safford facility that
15   the release plan was unacceptable to the District of Nevada.   My
16   recommendation was based, in part, on the absence of a designated
17   viable residence in Nevada and the lack of proposed employment in Las
18   Vegas.

19   11.   A copy of my October 1999 recommendation was sent to the
20   U.S. Parole Commission (USPC).   The USPC makes a determination as to
21   whether to issue a parole certificate to the inmate and the terms of
22   the certificate.

23   12.   On December 15, 1999, I was informed by a case manager at
24   the Safford BOP facility that Conlon had been released by court order
25   earlier the same day and that Conlon had been directed to contact the
26   probation office in Las Vegas within 72 hours.

27   13.   Having not heard from Conlon, I began making enquiries on
28   December 28, 1999 regarding Conlon's whereabouts.   I visited the

2

apartment complex which Conlon had designated as his proposed
residence and was advised that he was not there.  I contacted Conlon's
local attorney and was advised that he had had no contact with Conlon
subsequent to his release on December 15, 1999.

14.  On December 28, 1999, I contacted the Safford BOP facility
and learned that the parole certificate issued by the USPC directed
Conlon to contact the probation office in the Western District of
Texas (the district where Conlon was convicted).

15.  I then contacted the probation office in the Western
District of Texas and was informed that Conlon had not reported to any
of the probation offices for that district.

16.  On December 28, 1999, I prepared a violation report and a
request for warrant based on Conlon's failure to report for parole
supervision within 72 hours of release, either in Nevada or in the
Western District of Texas.

17.  Based on my request, the USPC issued a warrant of arrest for
Conlon on January 12, 2000.

18.  I learned that Conlon had been apprehended in Minnesota in
April, 2000.

19.  I provided information from the supervision file to the
probation officer in Minnesota for use in the interview and evaluation
process.

20.  In late June 2000, I was informed that Conlon had been
released into the community and placed on inactive supervision status
pending a district court hearing in Tucson, Arizona in August 2000.

21.  In June 2001, I was advised that Conlon had been arrested in
Michigan and was to be returned to Arizona.  I was requested to
provide information concerning Conlon's parole status.  I contacted

3

1  the USPC and was advised that the USPC was awaiting a district court
2  ruling from the District of Arizona.

3      22.  Other than the events described above, I have had no
4  involvement in Conlon's supervision, incarceration, or parole.

5      23.  During the time of the events described above, Tom Collins
6  was my supervisor within the U.S. Probation Office.  Mr. Collins had
7  no involvement with Conlon other than as my supervisor, which required
8  him to approve the recommendations and requests to the USPC.

9      24.  During the time of the events described, John Lawhead was
10 the Deputy Chief U.S. Probation Officer the District of Nevada.  Mr.
11 Lawhead is now retired.  Mr. Lawhead had no involvement with Conlon
12 other than as a supervisor of the probation office.

13

14     I declare under penalty of perjury that the foregoing is true and
15 correct.

16     Executed June 18 , 2002 in Las Vegas, Nevada.

17
18                                 _____
19                                 PAT FOY
                                   Supervising U.S. Probation Officer
20                                 District of Nevada

21
22
23
24
25
26
27
28

4

```
 1  DANIEL G. BOGDEN
    United States Attorney
 2
    GREG ADDINGTON
 3  Assistant United States Attorney
    Nevada Bar # 6875
 4  100 West Liberty Street, Suite 600
    Reno, NV  89501
 5  (775) 784-5438
    (775) 784-5181-facsimile
 6

 7                UNITED STATES DISTRICT COURT

 8                    DISTRICT OF NEVADA

 9  MICHAEL J. CONLON,              )
                                    )
10        Plaintiff,                )   CV-N-01-700-DWH-VPC
                                    )
11        v.                        )   DECLARATION OF THOMAS COLLINS
                                    )
12  UNITED STATES OF AMERICA;       )
    UNITED STATES DEPARTMENT OF     )
13  JUSTICE;                        )
    JOHN ASHCROFT, Attorney General;)
14  FEDERAL BUREAU OF PRISONS;      )
    NANCY BAILEY, Warden of FGI,    )
15  Safford, Arizona;              )
    UNITED STATES PAROLE COMMISSION;)
16  JOHN R. SIMPSON; U.S. Parole    )
    Commissioner;                   )
17  UNITED STATES PROBATION OFFICE; )
    KEVIN LOWRY, U.S. Probation     )
18  Officer;                        )
    PATRICK FOY, U.S. Probation     )
19  Officer;                        )
    THOMAS COLLINS, U.S. Probation  )
20  Officer;                        )
    JOHN LAWHEAD, U.S. Probation    )
21  Officer;                        )
    UNITED STATES SENTENCING        )
22  COMMISSION;                     )
                                    )
23           Defendants.            )
    _____)
24

25

26

27

28
```

## DECLARATION OF THOMAS COLLINS

I, Thomas Collins, hereby declare as follows pursuant to 28 U.S.C., section 1746:

1.  I am employed by the U.S. Probation Office for the District of Nevada as a Deputy Chief U.S. Probation Officer.  I have been so employed for approximately two years.  I am one of the named defendants in the civil action captioned <u>Michael J. Conlon v. U.S. America, et al.</u>, CV-01-700-DWH (District of Nevada).  My office is located in Las Vegas, Nevada.

2.  I have been a U.S. Probation Officer for approximately twenty-six years.

3. I have had no affiliation or association with the plaintiff Michael Conlon other than in the performance of my official duties and responsibilities as a supervising U.S. Probation Officer.

4.  I do not recall ever speaking to or meeting Michael Conlon.

5.  The allegations of the complaint arise entirely out of my official conduct as a U.S. Probation Officer.

6.  I have seen a copy of the complaint in this civil action. The complaint which I have seen was sent to the probation office in Arizona and then transmitted to the Nevada office.  The complaint was shown to me by my Chief. To date, I have not received the complaint by any means other than that described above and I have never seen or received a summons directed to me.

7.  My only involvement with Michael Conlon was as a supervisor of Pat Foy, U.S. Probation Officer, during Mr. Foy's pre-release investigation of Conlon's release plans and Mr. Foy's subsequent request to the U.S. Parole Commission for a warrant of arrest.  I had

1  no direct role in Conlon's supervision on parole.  As Mr. Foy's

2  supervisor, I would have approved his recommendations to the U.S.

3  Parole Commission.

4

5      I declare under penalty of perjury that the foregoing is true and

6  correct.

7      Executed _June 24_ , 2002 in Las Vegas, Nevada.

8

9                      THOMAS COLLINS

10                      Deputy Chief U.S. Probation Officer

                    District of Nevada

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECEIVED
U.S. ATTORNEY'S

MAY 13   3 46 PM '02

LAS VEGAS, NV

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL J. CONLON | CV 01-0700-DWH-VPC |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

### DECLARATION OF NANCY BAILEY

I, Nancy Bailey, hereby declare and state as follows:

1. I am the Warden assigned to the the Federal Correctional Institution (FCI), Fort Dix, New Jersey. Prior to my current position, I served as Warden at FCI, Safford Arizona from November, 1997 through December, 1999.

2. In my former position as Warden at FCI, Safford, I had overall supervision of all staff and inmates assigned to that institution. Many of the tasks at the institution were assigned to various departments. For example, inmate sentence computations were prepared and maintained by the Inmate Systems Management Department. Additionally, in cases involving "old law" (offenses which occurred prior to November 1, 1987) inmates, the United States Parole Commission determined the date of the release of these inmates.

3. I do not currently reside in the State of Nevada. Additionally, I do not own any real property located in the State of Nevada.

2

Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this ___ day of May, 2002 in Ft. Dix, New Jersey.

NANCY BAILEY
Warden
Federal Correctional Institution
Ft. Dix, New Jersey

```
1 │ DANIEL G. BOGDEN
  │ United States Attorney
2 │
  │ GREG ADDINGTON
3 │ Assistant United States Attorney
  │ Nevada Bar # 6875
4 │ 100 West Liberty Street, Suite 600
  │ Reno, NV  89501
5 │ (775) 784-5438
  │ (775) 784-5181-facsimile
6 │
7 │              UNITED STATES DISTRICT COURT
8 │                 DISTRICT OF NEVADA
9 │ MICHAEL J. CONLON,                )
  │                                   )
10│      Plaintiff,                   )   CV-N-01-700-DWH-VPC
  │                                   )
11│      v.                           )   DECLARATION OF GREG ADDINGTON
  │                                   )
12│ UNITED STATES OF AMERICA;         )
  │ UNITED STATES DEPARTMENT OF       )
13│ JUSTICE;                          )
  │ JOHN ASHCROFT, Attorney General;  )
14│ FEDERAL BUREAU OF PRISONS;        )
  │ NANCY BAILEY, Warden of FGI,      )
15│ Safford, Arizona;                 )
  │ UNITED STATES PAROLE COMMISSION;  )
16│ JOHN R. SIMPSON; U.S. Parole      )
  │ Commissioner;                     )
17│ UNITED STATES PROBATION OFFICE;   )
  │ KEVIN LOWRY, U.S. Probation       )
18│ Officer;                          )
  │ PATRICK FOY, U.S. Probation       )
19│ Officer;                          )
  │ THOMAS COLLINS, U.S. Probation    )
20│ Officer;                          )
  │ JOHN LAWHEAD, U.S. Probation      )
21│ Officer;                          )
  │ UNITED STATES SENTENCING          )
22│ COMMISSION;                       )
  │                                   )
23│           Defendants.             )
  │                                   )
24│ ─────────────────────────────────
25│      I GREG ADDINGTON, declare as follows pursuant to 28 USC,
26│ section 1746.
27│      1.  I am employed as an Assistant United States Attorney for
28│ the District of Nevada.  My office is located in Reno, Nevada.
```

1      2.   I am assigned litigation responsibility for the within

2 action.

3      3.   Attached hereto are exhibits 1-24.   Each exhibit is a

4 document obtained from official files maintained by the U.S.

5 Parole Commission and forwarded to me by officials of the U.S.

6 Parole Commission.

7     I declare under penalty of perjury that the foregoing is

8 true and correct and that this declaration is executed on June

9 21, 2002 at Reno, Nevada.

GREG ADDINGTON

THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**DEFENDANT**
MICHAEL JOHN CONLON
C/O F.C.I. BASTROP
P.O. Box 1010
Bastrop, Texas 78602

DOCKET NO.    A-86-CR-24(1)

# JUDGMENT AND PROBATION/COMMITMENT ORDER AO 245

**COUNSEL**

In the presence of the attorney for the government the defendant appeared in person on this date ⟶

| MONTH ✓ | DAY | YE |
|---|---|---|
| August 8, 1986 | | |

| | WITHOUT COUNSEL | However the court advised defendant of right to counsel and asked whether defendant desired to : counsel appointed by the court and the defendant thereupon waived assistance of counsel. |

| X | WITH COUNSEL | Allen W. Church _____
(Name of Counsel)

**PLEA**

| X | GUILTY, and the court being satisfied that there is a factual basis for the plea, at re-arraignment on June 13, 1986,    | NOLO CONTENDERE, | | NOT GUILTY

There being a finding/verdict of
{ | | NOT GUILTY. Defendant is discharged
{ | X | GUILTY.

**FINDING & JUDGMENT**

Defendant has been convicted as charged of the offense(s) of on or about February 25, 1986, defenda unlawfully, knowingly, and intentionally did distribute approximately one oun of cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of U.S.C. § 841(a)(1), as charged in count 2 of the indictment.

**SENTENCE OR PROBATION ORDER**

The court asked whether defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the con was shown, or appeared to the court, the court adjudged the defendant guilty as charged and convicted and ordered that: The defenda hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of TWELVE (12 YEARS pursuant to 18 U.S.C. § 4205(a), assessed a special parole term of EIGHT (8) and Fined THREE THOUSAND ($3,000.00) DOLLARS, which shall be paid to the Attor General.

IT IS FURTHER ORDERED that the defendant shall be required to immediately to the Attorney General a penalty assessment in the amount of $50.00 for the purp of funding a federal crime victims fund, pursuant to the "Victims of Crime Act 1984", 18 U.S.C. § 3013.

**SPECIAL CONDITIONS OF PROBATION**

Further, pursuant to the provisions of 18 U.S.C. § 3565, the defendant sh notify the U.S. Attorney of any change in name or address.

Upon motion of the U.S. Attorney and in accordance with the plea agreeme counts 1 and 4 of the indictment are hereby dismissed as to the defendant Mich John Conlon.

**ADDITIONAL CONDITIONS OF PROBATION**

In addition to the special conditions of probation imposed above, it is hereby ordered that the general conditions of probation set out on reverse side of this judgment be imposed. The Court may change the conditions of probation, reduce or extend the period of probation, at any time during the probation period or within a maximum probation period of five years permitted by law, may issue a warrant revoke probation for a violation occurring during the probation period.

**COMMITMENT RECOMMENDATION**

The court orders commitment to the custody of the Attorney General and recommends,

that during the period of confinement, the defendant receive treatment and counselling for substance abuse.

It is ordered that the Clerk delive a certified copy of this judgmer and commitment to the U.S. Ma shal or other qualified officer.

A true copy of the original ......

CHARLES W. VAGNER
Clerk, U.S. District Court

**SIGNED BY**

| X | U.S. District Judge

| | U.S. Magistrate

James R. Nowlin
JAMES R. NOWLIN

Date   August 8, 1986

EXHIBIT
1

**U.S. Department of Justice**
**United States Parole Commission**

( X ) **Certificate of Mandatory Release**
(   ) **Certificate of Mandatory Release to Special Parole**
(   ) **Certificate of Special Parole**
(   ) **Certificate of Court Designated Parole**

It is certified that ___CONLON, Michael John___ ___34271-080___
(Name) (Register No.)

now confined in the ___NORTH LAS VEGAS DETENTION CENTER, 2222 CONSTITUTION WAY, NORTH LAS VEGAS, NV___ ___89030___
(Facility)

(X) **MANDATORY RELEASE** is entitled to ___263___ Statutory and/or Extra Good Time deductions from the maximum term of sentence imposed as provided by law, and is hereby released from this institution under said sentence on ___NOV. 7___, 19 ___97___. Said person was released by the undersigned according to Title 18, U.S.C. Section 4163. Upon release the above named person is to remain under the jurisdiction of the United States Parole Commission, as if on parole as provided in Title 18, U.S.C. Section 4164, as amended under the conditions set forth on the reverse side of this certificate, and is subject to such conditions until expiration of the maximum term, or terms of sentence. less 180 days on ___01-28___, 19 ___98___ with a total of ___262___ days remaining to be served.

(X) **SPECIAL PAROLE** is subject to a special parole term commencing ___01-28___, 19 ___88___ in accordance with the Drug Abuse Prevention and Control Act, 21 U.S.C. 801, et seq. with a total of _____ days remaining to be served. Upon release the above-named person is to remain under the jurisdiction of the United States Parole Commission and will be under the conditions set forth on the reverse side of this certificate until ___01-27___, ___2006___

( ) **COURT DESIGNATED PAROLE** has completed service of the period of time specified by the sentencing court and is hereby released as if on parole from this institution under said sentence on _____, 19 _____ with a total of _____ days remaining to be served until maximum expiration of sentence. Said person is released by the undersigned according to Title 18, U.S.C. Section 4205 (f).

He/she is to remain within the limits of ___District of Nevada___
(District of Supervision)

RECEIVED
JAN 12 1998
P.M.

___DAVID S. SANDERS, CUSPO___
(Chief U.S. Probation Officer)

This certificate in no way lessens the obligations of the person being released to satisfy payment of any fine included in the sentence, nor will it prevent delivery of said person to authorities of any state otherwise entitled to custody.

I have read, or had read to me, the conditions of release printed on the reverse of this certificate and received a copy thereof, I fully understand them and know that if I violate any of them, I may be recommitted. I also understand that the law requires the Parole Commission to revoke my parole/mandatory release if I am found by the Commission to have possessed any illegal controlled substance. I also understand that special conditions may be added or modifications of any condition may be made by the United States Parole Commission upon notice required by law.

_(signature)_
(Inmate Signature)

___34271-080___
(Register No.)

Witnessed: _(signature)_
___IRS # 1169___
(Title)

(Date)

_(signature)_
(Chief Executive Officer)

Initial Risk Category: _____

___Community Correction Salt Lake City___
(Institution and Location)

**EACH COPY MUST BE SIGNED INDIVIDUALLY IN INK.**

EXHIBIT
2

PAROLE FORM 1-33

*HAH*                                                                  *I U/R*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA
**PROBATION OFFICE**

DAVID F. SANDERS
CHIEF PROBATION OFFICER
411 BONNEVILLE AVENUE
SUITE 400
LAS VEGAS, NV
89101-6632



PHONE: (702) 388-6428
FAX:    (702) 388-6731

February 2, 1998

Commissioner
U. S. Parole Commission
5550 Friendship Boulevard, Suite 420
Chevy Chase, Maryland  20815-7286

Attention:  Post Release Analyst

RE:  **CONLON, Michael John**
     **Reg. No.: 34271-080**
     **Release Date:  11/07/97**
     **Parole Exp. Date:  01/27/2006**
     **Institution: North Las Vegas**
     **  Detention Center**
     **2222 Constitution Way**
     **North Las Vegas, NV  89030**

     <u>**VIOLATION REPORT-WARRANT**</u>
     <u>**REQUEST**</u>

Dear Commissioner:

Be advised that the above-named individual has allegedly violated
the conditions of his parole as follows:

1.  <u>**CONDITION NO. 4**</u> - **Shall notify your probation officer within**
    **2 days of any change in your place of residence.**

    According to the offender's live-in girlfriend, Melodee
    Chastaine the offender vacated his reported residence on
    January 6, 1998.  She has not seen the offender since that
    time.  His current whereabouts are unknown.

2.  <u>**CONDITION NO. 5**</u> - **You shall make a complete and truthful**
    **written report to your probation officer between the first and**
    **third day of each month.**

    The offender has failed to submit a written monthly report
    since December 5, 1997 and his current whereabouts are
    unknown, therefore, he is considered an absconder by the U. S.
    Probation Office.

**EXHIBIT**
3

Commissioner
Page 2
February 2, 1998

RE:   CONLON, Michael John

3.    CONDITION NO. 6 - You shall not violate any law.

On January 29, 1998, the supervising probation officer spoke
with the offender's girlfriend, Melodee Chastaine.     She
reported that the offender had taken her yellow 1987 Corvette,
Nevada license number 990 HXG on or about January 6, 1998,
without returning it. She informed the probation officer that
she was reporting the car as stolen as of this date.

4.    CONDITION NO. 14 - You shall submit to drug testing whenever
      ordered by your probation officer.

On November 20, 1997, the offender was enrolled in a random
urinalysis at the U. S. Probation Office. He was scheduled to
test at the rate of four times per month.   The offender has
failed   to   show   up   for   random   urinalysis   since
December 20, 1997.

Due to the offender's history of substance abuse, he is a threat to
himself and the community.  This opinion is based on the offender's
prior criminal history and numerous prior failures on parole.   It
is respectfully recommended that a warrant be issued as soon as
possible.

                              Sincerely,


                              KEVIN D. LOWRY, Senior
                              U. S. Probation Officer

KDL:mm

APPROVED:


ELIZABETH A. CUMMINGS, Supervising
U. S. Probation Officer

**U.S. DEPARTMENT OF ~~~~TICE**
UNITED STATES PAROLE COMMISSION

**WARRAN~ ~PLICATION**

| | |
|---|---|
| Case Of ..................... CONLON, Michael John | Date .............................. February 12, 1998 |
| Reg. No ...................... 34271-080 | SPT Termination Date ................ 1/27/2006 |
| FBI No ...................... 111801X5 | Violation Date ....................... 1/31/98 |
| Birth Date .................... 4/29/53 | Released ........................... 1/28/98 (to SPT) |
| Race ........................ White | |
| Sentence Length .............. 12 Yrs w/8 Yrs SPT (Original); 739 days (PV Term) | |
| Original Offense .............. Distribution of Cocaine | |

You shall, unless you have been convicted of a new offense, be given a preliminary interview by an official designated by a Regional Commissioner to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing.

At your preliminary interview and any subsequent revocation hearing you may present documentary evidence and voluntary witnesses on your behalf, and, if you deny the charge(s) against you, you may request the presence of those who have given information upon which the charges are based. Such witnesses will be made available for questioning unless good cause is found for their non-appearance.

You may be represented by an attorney or other representative of your choice, or, if you are unable to pay for counsel, an attorney will be provided by the U.S. District Court if you fill out and promptly return a Form CJA-22 to a U.S. Probation Officer.

If, after a revocation hearing, you are found to have violated the conditions of your release the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole or mandatory release, in which case the Commission will also decide when to consider you for further release.

If you have been convicted of a new offense (committed while on parole) which is punishable by a term of imprisonment, you will not receive sentence credit for the time you spent on parole. **Exception: for cases heard in the 9th Circuit beginning on October 22, 1990, the Commission will exercise discretion, in accordance with 28 C.F.R. 2.52 (Appendix), prior to ordering the forfeiture of sentence credit for the time spent on parole.** If the Commission finds that you absconded or otherwise refused to submit to parole supervision, the Commission may order that you not receive credit toward service of your sentence for that amount of time. (If your original sentence was imposed for violation of the District of Columbia Criminal Code, you will not receive credit for time spent on parole regardless of whether or not you have been convicted of a crime.)

A special parole term violator whose parole is revoked shall receive no credit for time spent on parole.

**CHARGES:**

**Charge No. 1 - Failure to Report Change in Residence.** Some time before 1/28/98, subject left his last known residence at Las Vegas, Nevada. Subject has failed to advise his USPO of his current address and his whereabouts are unknown. This charge is based on information contained in the letter dated 2/2/98 from USPO Lowry.
I ADMIT [  ] or DENY [  ] this charge.

Preliminary Interview Is Required

Warrant Recommended By:

Warrant Issued....................................February 12, 1998

Helen A. Herman, Case Analyst
U.S. Parole Commission,

Probation Office Requesting Warrant..District of Nevada (1 - Main (Las Vegas))
(  ) Commission      (  ) Inmate      (  ) Institution      (  ) USPO      (  ) Interviewing Officer      (  ) Chron



EXHIBIT
4





*Okay 2/24/98*

*P.I.
needed
HH*

# UNITED STATES MARSHALS SERVICE
## District of Nevada
## Las Vegas

Post Office Box 16039
Las Vegas, NV 89101
Office: (702) 388-6704 Facsimile: (702) 388-6937

*H. Herman*

TO: *US Parole Commission*

FROM: *Doris*

DATE: *2-24-98*

NUMBER OF PAGES: *2* EXCLUDING COVER SHEET

COMMENTS: *Conlon, Michael J.   39271-080*
*Parole Violator is in custody USM Las Vegas NV*
*as of 2-23-98. He is incarcerated at CCDC*
*Las Vegas NV awaiting your designation.*
*Subject was arrested on 2-19-98.*

WARNING: MANY FACSIMILE MACHINES PRODUCE COPIES ON THERMAL PAPER. THE IMAGE
UNSTABLE AND WILL DETERIORATE SIGNIFICANTLY IN A FEW YEARS. IT SHOULD BE COPIED ON
PRIOR TO FILING AS A RECORD.

**EXHIBIT
5**

# W A R R A N T

**U.S. Department of Justice**
**United States Parole Commission**

---

To Any Federal Officer Authorized To Serve Criminal Process Within The United States:

WHEREAS, CONLON, Michael John, Reg. No. 34271-080 was sentenced by the United States District Court to serve a sentence of 12 Years with 8 Years Special Parole Term (Original); 739 days (Parole Violator Term) for the crime of Distribution of Cocaine and on January 28, 1998 completed the Mandatory Release Term and commenced the Special Parole Term with Eight Years remaining to be served;

AND, WHEREAS, reliable information has been presented to the undersigned Member of this Commission that said released prisoner named in this warrant has violated one or more conditions of his release;

NOW, THEREFORE, this is to command you by authority of Sec. 4213, Title 18, U.S.C., to execute this warrant by taking the above-named, wherever found in the United States, and hold him in your custody either until he is released by order of the Parole Commission, or until you are authorized to transport him for further custody.

WITNESS my hand and the seal on February 12, 1998.

_____
U.S. Parole Commissioner

WARRANT for return of Prisoner released to supervision or to Special Parole Term

| | | |
|---|---|---|
| (Name) | (Number) | (Institution) |

## UNITED STATES MARSHAL'S RETURN TO UNITED STATES PAROLE COMMISSION

NOTE: Do not execute this warrant if subject is being held in custody on other Federal, State, or Local charges, unless otherwise ordered by the Commission. (See accompanying instructions on Form H-24.)

_____ District of _Nevada_____ ss:

Received this writ the _____12_____ day of __Feb_____ ,19 98 , and executed same by arresting the within-named __Michael  Conlon_____

_____this ___20_____ day of ___Feb_____ ,

19 98 , at __CCDC  Las Vegas, N__ and committing him to ___Same___

_____

Jose Troncoso
(US Marshal)

By _____C. Boyer_____
(Deputy Marshal)

Further executed same by committing him to _____

at _____ on _____ ,19_____ , the institution

designated by the Attorney General, with the copy of the Warrant and warrant application.

_____
(U.S. Marshal)

By _____
(Deputy Marshal)

NOTE.—The original of this warrant is to be returned to U.S. Parole Comissioner of the parole region where it was issued.

I have received a copy of the warrant application dated ___Feb  12, 1998_____

Signature __P Mc Conlon_____

Date ___Feb  23, 1998_____

(If subject refuses to sign. Marshal sho:  so indicate.)

## REVOCATION PREHEARING ASSESSMENT

Hearing Type:Revocation Institutional Institution:Oklahoma FTC

| | | |
|---|---|---|
| **Name:** | Conlon, Michael | **Projected MR Date:** |
| **Reg No:** | 34271-080 | **Full Term Date:** 1/27/2006 |
| **Date of Birth:** 4/29/53 | | **Fines/Restitution/Court Assessment:** None |
| **Date Dictated:** 5/1/98 | | **Reviewer:** Haworth, (JRH) |

### I.   PREVIOUS COMMISSION ACTION:

In August of 1986 subject received a 12 year RA term for distribution of
Cocaine.  He had a 8 year special parole term to follow.  His first parole
was on 5/2/90 and that was revoked September 1991 for new criminal behavior
and administrative violations.  He was reparoled after 12 months on 3/20/92
and that parole was revoked 12/28/92 for administrative violations.
Subject's third parole was on 9/15/93 and a warrant was issued
approximately 60 days later and executed on 11/30/93.  A NOA dated 4/13/94
ordered that parole be revoked, all the time spent on parole was credited
and subject was granted a new release date after service of 16 months
(3/30/95).  That date was delayed numerous times for release planning and
subject was finally given a release date of 11/30/95.  At that time, he had
a full term date of 6/19/98 and was to begin his 8 year special parole term
at that time.  However, a warrant was issued 6/27/96 and executed 7/17/96.
A NOA dated 12/7/96 ordered that parole be revoked partial credit for
street time was given and subject was ordered to continue to expiration
with special drug and alcohol aftercare.

The subject was released on mandatory release 11/7/97.  That MR term was to
expire 1/28/98 and subject was to begin his 8 year special parole term.
Subject did begin that special parole term on 1/28/98 and his violation
behavior had already started at that time.

### II.  REVIEW OF CHARGES:

**Charge No. 1 - Failure to Report Change in Residence.**

USPO Lowry reported in his letter of 2/2/98 that sometime during January
that subject left his last known residence in Las Vegas, Nevada and did not
tell his USPO where he was going.  His whereabouts were unknown at the time
of USPO Lowry's letter.

A Preliminary Interview was conducted on 2/25/98 and during that hearing
subject admitted to the violation.

### III. COMMUNITY RESOURCES AND PAROLE RISK:

The subject has little or nothing available in the way of community
resources.

CONLON.342

EXHIBIT
6

IV. **SALIENT FACTOR SCORE:**

A = 1    Subject has three or more prior convictions.

10/17/82:  Driving While Intoxicated - 3 years probation and fine.

01/17/84:  Theft - 48 days in jail and a fine.

03/05/86:  Distribution of Cocaine - 12 years plus 8 years special parole term (current offense).

B = 0    Subject has five prior commitments of more than 30 days that were imposed prior to the last overt act of the current offense (see dispositions listed above).

C = 0    Subject was 45 years old at the commencement of the current parole violation behavior.  Subject does have five or more prior commitments.

D = 0    Subject was not out three years before the violations occurred. Date of last release:  11/7/97.

E = 0    Subject is a parole violator.

F = 1    Subject does not have a history of Opiate dependence.

G = 1    Subject is 41 years of age or more at the commencement of the current offense.

3.  **TOTAL SCORE**

V. **RISK:**

Poor.

VI. **EVALUATION:**

If revoked, this will be subject's fifth revocation on this sentence. However, this will be the first revocation on his special parole term since it just began 1/28/98.

The Parole Violation Behavior is rated as Category One severity because it involved administrative violations.  The reparole guideline range is 12-16 months.

PAH
May 9, 199

CONLON.342                                      Page 2 of 2

# REVOCATION HEARING SUMMARY

| | |
|---|---|
| **Name** . . . . . . . . : Conlon, Michael | **Supervision** . . . . : Special Parole |
| **Reg** . . . . . . . . . . : 34271-080 | **Artuso** . . . . . . . . : NO |
| **Examiner** . . . . . . : Jeffrey S. Kostbar | **Artuso Years Remaining:** |
| **Warrant Executed** : 2/19/98 | **Months in Custody** : 3 |
| **Preliminary Interview:** 3/4/98 | **Custody Type** . . . : Federal |
| **Institution** . . . . . . : Oklahoma FTC | **Projected MR Date :** |
| **2nd Designation** . : Safford FCI | **Full Term Date** . . : 1/27/2006 |
| **Revoking District** : (Nevada, Las Vegas) | **Hearing Date** . . . : 3/26/98 |
| **Hearing Type** . . . : Institutional | |

---

## I. Counsel And Witnesses:

Subject was not represented by counsel.

## Witnesses Name & Any Explanatory Text Concerning Counsel and/or Witnesses:

## II. Procedural Considerations:

## III. Instant Warrant Information:

## IV. Review of Charges:

Charge No. 1 - Failure to Report Change in Residence.

Subject admits this charge. He states that while finishing up his regular supervision period he simply started to drink and absconded from supervision and from his residence. He states he wandered around Nevada and went up to Reno. He states he has no excuse for his behavior and that unless he can get his drinking problems in order he has no hope. He pointed out that both his father and grandfather died of alcoholism. While he admits the behavior he did indicate that all four of his previous violations involved alcohol use but no new criminal activity.

CONLON.342    Typist: PAH    Date Typed: June 4, 1998    Page 1 of 3

**EXHIBIT**
**7**

**Evidentiary Findings.**

Subject's admission to the hearing examiner and USPO letter dated 2/2/98.

## V. Findings of Fact And Basis:

The Examiner finds that subject has committed the following violation(s):

Charge No. 1 - Failure to Report Change in Residence.

Basis:  Your admission to the examiner panel.

## No Findings And Supporting Rational:

The Examiner makes no finding concerning the following charge(s): .

## VI. Previous Commission Action:

## VII. Fines, Restitution, Other court Ordered Payments:

## VIII. Parole Risk:

## IX. Community Resources And Issues:

## X. Salient Factor Score:

| | |
|---|---|
| 1 | - A. Prior Convictions/Adjudications (Adult or Juvenile) |
| 0 | - B. Prior Commitment(s) of More than 30 Days (Adult/ Juvenile) |
| 0 | - C. Age at Current Offense/Prior Commitments |
| | Yes (5 or more commitments) |
| 0 | - D. Recent Commitment Free Period (Three Years) |
| 0 | - E. Probation/Parole/Confinement/Escape Status Violator |
| 1 | - F. Heroin/Opiate Dependence |
| 1 | - G. Older Offenders |
| 3 | - **Total Salient Factor Score** |

## XI. Evaluation:

The subject did present a slight argument that he should have had his warrant written on just the few days remaining on his regular supervision term.  This examiner pointed out that the Parole

Commission chose not to issue any warrant on the regular supervision term but rather to wait until the special parole term began. If he was still in absconder status when the special parole supervision term began the warrant would be written on the special parole term. The subject accepted this explanation.

The subject appeared clean cut and remorseful for his life. As noted above, he points to a long history of alcoholism in his family. He knows he has very little chance of success unless he can somehow manage his life without resorting to the use of alcohol. He claims that he was working for a mortgage company doing refinancing and also going to school. He feels that he may have somehow over programmed himself and over pressured himself which caused him to resort once again to alcohol.

## XII. Recommendation:

Revoke Special Parole. None of the time spent on Special Parole shall be credited. Continue to a Presumptive Parole after the service of 24 months on 2/18/2000. You shall be subject to the Special Alcohol Aftercare Condition. You shall participate in a community-based program for treatment of alcoholism as directed by your U.S. Probation Officer. You shall also abstain from the use of alcohol and/or all other intoxicants during and after the course of treatment.

A presumptive parole date is conditioned upon your maintaining good institutional conduct and the development of a suitable release plan. Prior to release, your case will be subject to review to ascertain that these conditions have been fulfilled.

## XIII. Reasons:

Your Special Parole violation behavior has been rated as Category One severity because it involved administrative violations. Your new salient factor score is 3. As of 3/26/98, you have been in Federal custody for 3 months. Guidelines established by the Commission indicate a customary range of 12-16 months to be served before release. After review of all relevant factors and information presented, a decision above the guidelines appears warranted because You are a poorer risk than indicated by your SFS and that this represents your fifth revocation of supervision on this sentence.

Subsequent statutory interim not required.

CONLON.342    Typist: PAH    Date Typed: June 4, 1998        Page 3 of 3



**U.S. Department of Justice**                          **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

---

Name: CONLON, Michael John                Institution: Oklahoma  FTC
                                          Safford  FCI

Register  Number: 34271-080

---

In the case of the above named the following parole action was ordered.

Revoke special parole.  None of the time spent on special parole shall be
credited. Continue to a presumptive parole after the service of 24 months on
2/18/2000.  You shall be subject to the Special Alcohol Aftercare Condition.
You shall participate in a community-based program for treatment of alcoholism
as directed by your U.S. Probation Officer.  You shall also abstain from the
use of alcohol and/or all other intoxicants during and after the course of
treatment.  In addition, it is recommended that you complete a substance abuse
program within the BOP.

A  presumptive  parole  date  is  conditioned  upon  your  maintaining  good
institutional conduct and the development of a suitable release plan.  Prior to
release, your case will be subject to review to ascertain that these conditions
have been fulfilled.

FINDINGS OF FACT:

Charge No. 1 - Failure to Report Change in Residence.

Basis:  Your admission to the examiner panel.

REASONS:

Your special parole violation behavior has been rated as Category One severity
because it involved administrative violations. Your new salient factor score is
3.  As of 3/26/98.  You have been in Federal custody for 3 months.  Guidelines
established by the Commission indicate a customary range of 12-16 months to be
served before release.  After review of all relevant factors and information
presented, a decision above the guidelines appears warranted because you are a
poorer risk than indicated by your SFS and that this represents your fifth
revocation of supervision on this sentence.

SALIENT FACTOR SCORE (SFS-95):   Your salient factor score items have been
computed as shown below. For an explanation of the salient factor score items,
see the last page of this document.

SFS Total = 3   Item A = 1   B = 0   C = 0   D = 0   E = 0   F = 1   G = 1
Item C is 0 because you have 5 or more prior commitments

### SFS ITEM EXPLANATION

**Item A. - Prior convictions/adjudications (adult or juvenile)**
None = 3; One = 2; Two or three = 1; Four or more = 0

**Item B. - Prior commitments of more than thirty days (adult or juvenile)**
None = 2; One or two = 1; Three or more = 0

---

EXHIBIT
8

**Item C. - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile)**
26 years or more and less than 5 prior commitments for Item B = 2; 2-25 years and less than 5 prior commitments for Item B = 1; 19 years or less = 0

**Item D. - Recent commitment free period (three years)**
No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0

**Item E. - Probation/parole/confinement/escape status violator this time**
Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0

**Item F. - History of heroin/opiate dependence**
No history of heroin or opiate dependence = 1; Otherwise = 0

**Item G. - Older offenders**
If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-F above is 9 or less) = 1; Otherwise = 0

**Appeals Procedure:**
The above action is appealable to the National Appeals Board under 28 C.F.R. 2.26.

You may obtain appeal forms from your caseworker or U.S. Probation Officer and they must be filed with the Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your institution and to your probation officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others, if you so wish.

---

Date: June 15, 1998                                      Clerk: DLW

USPO-NV1                        Page 2 of 2               CONLON.342

**Appeal**

U.S. Department of Justice

United States Parole Commission

Chevy Chase, Md. 20815

Name ___Michael J. Conlon_____

Register ___34271-080_____ Institution ___F.C.I. Safford_____

I received a Notice of Action sent ____June 17, 1998_____ and hereby appeal that decision:
                                        *(Date)*

RECEIVED
7/15/98

**NATIONAL OR ORIGINAL JURISDICTION APPEAL**

I appeal to the *National Appeals Board - (Full Commission on O.J. cases)* to review and reverse or modify the decision.

_____
*(Witness Signature)*

_____
*(Signature)*

___7-10-98___
*(Date)*

**INSTRUCTIONS:** All Appeals are decided on the basis of the written record. Appeals may be based on the following grounds. Check one or more of the grounds that are applicable to your case. Explain your basis for appeal on a separate sheet of paper. Use headings so that the Commission can see which of your grounds you are discussing. Address one point at a time.

**MAILING INSTRUCTIONS:**

**NOTE:** Appeals *(National and Original Jurisdiction)* must be mailed to the appropriate regional office within 30 days from the date on the Notice of Action.

(1) [   ] The guidelines were incorrectly applied in my case as to any or all of the following:

     (A) [ **X** ] Offense severity rating;
     (B) [   ] Salient factor score item(s) _____ ;
     (C) [   ] Time in custody.

(2) [ **X** ] A decision outside the guidelines was not supported by the reasons or the facts as stated in the Notice of Action;

(3) [   ] Especially mitigating circumstances justify a different decision;

(4) [   ] The decision was based on erroneous information and the actual facts justify a different decision;

(5) [ **X** ] The commission did not follow correct procedure in deciding my case, and a different decision would have resulted if the error had not occurred;

(6) [   ] There was significant information in existence but not known at the time of the hearing;

(7) [   ] There are compelling reasons why a more lenient decision should be rendered on grounds of compassion.

(Attach explanation on a separate sheet of paper)

**EXHIBIT**
**9**

Original - Appropriate Regional Office of the Commission
Canary - Institution; Pink - Inmate

APPEAL TO THE UNITED STATES PAROLE COMMISSION

(Attachment To Original Form)

(1) **The U.S. Parole Commission Was Without Authority To carry Over A Regular Term Violation Into The Special Parole Term**

The Jurisdiction of the U.S. Parole Commission as to supervisory authority of the parolee's regular term of parole terminated as of January 28, 1998. (See Warrant).

The evidence relied upon for the revocation of the parolee's supervision is stated in the letter addressed to the parolee of March of 1998. The evidence relied upon is the Warrant, Warrant Application and the Warrant Request and Violation Report of February 2, 1998 from U.S. Probation Officer Kevin Lowery.

The violation report states that the parolee left his last known address as of January 6, 1998. Pursuant to 28 C.F.R. Section 2.40(4) and the U.S. Parole Commission Manuel the parolee is in violation as of January 8, 1998. The additional evidence relied upon is the Warrant Application which clearly and unequivocally states that "sometime before January 28, 1998, the parolee "failed to report a change of address." From January 8, until the arrest the parolee was considered in absconsion. Pursuant to The U.S. Parole Commission Manuel at 2.40(j) the term of the parolee was tolled, thus the sentence did not expire.

It is clear by the evidence relied upon by the Commission

that the violation occurred within the regular term of parole
and pursuant to 2.44-03(a) which states: "When satisfactory
evidence is received indicating that a parolee or mandatory
releasee has violated the conditions of his release to the
extent that a warrant should be issued and it can be issued
timely, a warrant application is prepared."**NOTE: A warrant
cannot be issued during a special parole term for a violation
that occurred during a regular parole term."**


    For the reasons stated the parolee should be in all
respects released.

NOTICE OF ACTION ON APPEAL

**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland   20815-7201

Name: Conlon, Michael

Register Number: 34271-080            Institution: Safford FCI

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

Your special parole violator term is hereby converted to a regular term of imprisonment for which you are eligible for regular parole under 18 U.S.C. § 4208(a). Your full term date is unchanged and your previously established presumptive parole date is converted to a presumptive release on regular parole.

**REASONS:**

The National Appeals Board has reviewed the ground you raise in your appeal and affirms the prior Commission decision.

Your behavior, failing to report a change in residence, was clearly a violation of special parole. Your special parole term commenced on January 28, 1998. You did not report to your probation officer after that date. As of February 2, 1998, your probation officer did not know where you were. You remained in absconder status until February 20, 1998, when the warrant was executed. You admitted this parole violation charge at your preliminary interview and at your revocation hearing.

The conversion of your special parole violator term to a term of regular imprisonment is required by the law of the United States Court of Appeals for the Ninth Circuit.

All decisions by the National Appeals Board on appeal are final.

Date: October 15, 1998            National Appeals Board

EXHIBIT
10

CONLON 342   10

SCHAYE & WOLFKIEL
9460 N. Camino del Plata
Tucson, Arizona  85742
(520)544-2955

Natman Schaye
State Bar No. 07095
Attorney for Michael J. Conlon

FILED _____ LODGED
RECEIVED _____ COPY

FEB 1 9 1999

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

_____ FILED _____ LODGED
_____ RECEIVED _____ COPY

FEB 1 9 1999

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| MICHAEL J. CONLON, | ) | |
| | ) | |
| Petitioner, | ) | NO. CIV98-346-TUC-WDB |
| | ) | |
| vs. | ) | |
| | ) | **Amended Petition for Writ of** |
| NANCY BAILY,  Warden, | ) | *Habeas Corpus* |
| F.C.I. Safford, U.S.  PAROLE | ) | |
| COMMISSION, | ) | |
| | ) | |
| Respondents. | ) | |

The Petitioner, MICHAEL J. CONLON, through counsel undersigned,

hereby submits his amended petition for writ of *habeas corpus*.

I.    Factual Background

On August 8, 1986,  Mr. Conlon was sentenced by the United States

District Court, Western District of Texas, to twelve years in prison with an eight

year special parole term to run consecutive to the term of imprisonment. [1]

---

[1] Mr. Conlon had previously pleaded guilty to possession with intent to distribute cocaine in violation of 18 U.S.C. §841(a)(1).

EXHIBIT
11

Mr. Conlon was released on regular parole in May of 1990. His regular

parole term was to expire on January 28, 1998, at which time his special parole

term was to begin. (Exhibit "A", Warrant Application.) On February 12, 1998,

the United States Parole Commission issued a warrant for Mr. Conlon's arrest

based on the following allegation in the warrant application:

> **Charge No. 1- Failure to Report Change in
> Residence:** <u>Some time before 1/28/98</u>, subject left his last
> known residence at Las Vegas, Nevada. Subject has failed to
> advise his USPO of his current address and his whereabouts
> are unknown. This charge is based on information contained
> in the letter dated 2/2/98 from USPO Lowery.

(Emphasis added.)(Exhibit A, attached).

United States Probation Officer Lowery's letter of February 2, 1998,

referred to above, further indicates that Mr. Conlon 1) failed to submit a written

monthly report since December 5, 1997, and therefore was considered an

absconder; 2) failed to submit to drug testing since December 20, 1997; and 3)

may have violated the law by not returning his girlfriend's car after taking it on

January 6, 1998. (Exhibit "B", P.O. Lowery's letter). None of these additional

allegations was contained in the warrant application.

Mr. Conlon was arrested on the outstanding warrant on February 19,

1998. (Exhibit "C", Revocation Hearing Summary). On March 26, 1998, a special

parole revocation hearing was held. Mr. Conlon admitted that he failed to report

a change in address. (Exhibit "C", attached). Mr. Conlon's parole was

subsequently revoked and the Parole Commission converted his special parole

violator term of eight years to a regular term of imprisonment. Even though the

Ilotman Schoye
9460 NORTH CAMINO DEL PLATA
TUCSON, ARIZONA 85742
(520) 544-2965

2

commission's own guidelines indicate a customary range of 12-16 months to be

1    served before release, and the violation was merely administrative, Mr. Conlon

2    was given a sentence of 24 months.[2] (Exhibit "C", attached).

3        On or about July 9, 1998, Mr. Conlon appealed the revocation of his special

4
5    parole term to the National Appeals Board. (Exhibit "D", Appeal to the United

6    States Parole Commission). Mr. Conlon argued that the Parole Commission

7    lacked the authority to issue a warrant for violation of his **regular parole**

8    during his **special parole** term. On October 15, 1998, the National Appeals

9    Board affirmed the Commission's decision:

10
11           Your behavior, failing to report a change in residence, was
             clearly a violation of special parole. Your special parole term
12           commenced on January 28, 1998. You did not report to your
             probation officer after that date. As of February 2, 1998, your
13           probation officer did not know where you were. You remained
             in absconder status until February 20, 1998, when the warrant
14           was executed.

15   (Exhibit "E", Notice of Action on Appeal and National Appeal). Mr. Conlon has

16   exhausted all of his administrative appeals.
17
18       On or about July 23, 1998 Mr. Conlon filed a Petition for Writ of Habeas

19   Corpus and a separate supporting Memorandum of Points and Authorities. He

20   now substitutes his first amended petition.

21

22

23

24   ───────────────────────
     [2] The Parole Commission indicated that because this revocation was his fifth, he was a poorer risk
25   than indicated by his salient factor score of three. It should be noted, however, that Mr. Conlon's
     four previous parole violations were also administrative, rather than criminal violations, and
26   were directly related to the fact that he is an alcoholic. Mr. Conlon's father and grandfather died
     from alcoholism and Mr. Conlon suffers from the same disease. (Exhibit "C", attached).

                                              3

II. Legal Analysis

A.    Jurisdiction

Michael Conlon is incarcerated at the Federal Correctional Institution in Safford, Arizona. This petition demonstrates that he is being held in violation of his constitutional right to due process.

Federal prisoner's are required to exhaust their administrative remedies prior to bringing a petition for writ of habeas corpus. *Martinez v. Roberts*, 804 F.2d 570 (9th Cir. 1986). Mr. Conlon has exhausted his administrative remedies. He appealed the Parole Commission's decision to the National Appeals Board, which affirmed his parole revocation.

This petition is therefore properly before this Court. The argument in the original petition for writ of habeas corpus asking that the Court waive the exhaustion requirement is now moot.

B.    Violation of Due Process

Michael Conlon is being held illegally in violation of his right to due process on two grounds:

1) The parole violation, which occurred prior to the January 28, 1998, commencement of his special parole term, tolled the running of the regular parole term. The regular parole term was tolled from the time he absconded until the time of his arrest on February 19, 1998. Therefore, Mr. Conlon's special parole term never commenced and the Parole Commission never had jurisdiction to revoke his special parole term.

2) Alternatively, if Mr. Conlon's regular parole term was not tolled by the parole violation and is deemed to have expired on January 28, 1998, the commission did not have the authority to revoke his special parole term for a regular parole violation.

### 1.    The Parole Commission did not have authority to revoke Mr. Conlon's special parole term because his regular parole term was tolled by the violation.

There is no dispute that Mr. Conlon violated the conditions of his regular parole term. The warrant application explicitly alleged that sometime before his regular parole term ended, January 28, 1998, Mr. Conlon failed to report a change in residence. Mr. Conlon admitted this allegation. Furthermore, pursuant to the letter supporting the warrant application, Mr. Conlon's whereabouts were unknown after December 5, 1997 and he was therefore an absconder. (Exhibit "B", attached.) Mr. Conlon remained in absconder status until he was arrested on the warrant on February 19, 1998.   Mr. Conlon's absconder status indisputably commenced during his regular parole term.

United States Parole Commission regulation 28 C.F.R. 2.40(j) provides, "Any parolee who absconds from supervision has effectively prevented his sentence from expiring." A parole term is tolled by the parolee's action and not the actual filing of a parole violation charge. *Henrique v. United States Marshal*, 653 F.2d 1317, 1322 (9th Cir. 1981). In *Henrique*, the parole commission violated the defendant, after his parole term had expired, for "failing to report a change in residence".   Henrique argued that the formal charge had to be filed by the

Parole Commission before his sentence expired in order to toll his sentence. He further argued, because the commission failed to do so, its jurisdiction had expired. The Ninth Circuit rejected this argument, holding that it was the defendant's act of absconding, and not the filing of the parole violation charge, that tolled the sentence.

Tolling begins "whenever the suspect flees with the intent of avoiding prosecution, even if prosecution has not actually begun at the time of the flight." *United States v. Ballesteros-Cordova*, 586 F.2d 1321, 1323 (9th Cir. 1978). *See also Shiffman v. Wilkinson*, 216 F.3d 589, 591 (9th Cir. 1954)(it is the misbehavior of the parolee and not the issuance of a warrant that tolls the expiration of the minimum sentence.)

Additionally, the issuance of a warrant under 28 C.F.R. 2.44 operates to bar the expiration of a parolee's sentence. Such warrant maintains the commission's jurisdiction to retake the parolee either before or after the normal expiration of the sentence and to reach a final decision as to revocation of parole and forfeiture of time. *Barrier v. Beaver*, 712 F.2d 231 (6th Cir. 1983).

The law is clear that the violation tolls the running of a parole term. Mr. Conlon's regular parole term should have expired on January 28, 1998, but was tolled by his previous act of absconding. Quite simply, he was in absconder status through February 19 (the date of his arrest), his regular parole term was tolled during that time, and his special parole term never began. The parole

commission never had jurisdiction to issue the warrant to revoke Mr. Conlon's

special parole term, and he is therefore illegally imprisoned.

## 2. The parole commission lacked authority to revoke Mr. Conlon's special parole term based on a regular parole violation.

Should this Court determine that Michael Conlon's regular parole term

was not tolled by his parole violation, the parole commission nevertheless lacked

authority to issue a warrant during the special parole term for a violation

occurring during regular parole. The warrant application is explicit, alleging on

its face that sometime "before 1/28/98", Mr. Conlon failed to report a change in

residence. The warrant was issued and executed based solely on a violation

occurring during regular parole.

The commission's guidelines specifically prohibit the issuance of a warrant

during a special parole term for a regular parole term violation:

28 C.F.R. 2.44-03. Warrant Application.

(a) When satisfactory evidence is received indicating that a parolee or mandatory releasee has violated the conditions of his release to the extent that a warrant should be issued and it can be issued timely, a warrant application is prepared. **NOTE: A warrant cannot be issued during a special parole term for a violation that occurred during a regular parole term.**

The commission therefore violated its own rules by delaying the

issuance of the warrant until the regular parole term expired and the

special term began.[3]

---

[3] The national appeals decision concedes that the commission intentionally delayed issuance of the warrant because Mr. Conlon faced much greater punishment as a result of

7

Holman Schaye
9460 NORTH CAMINO DEL PLATA
TUCSON, ARIZONA 85742
(520) 544-2965

The parole commission's rules and regulations must provide parolees with some measure of due process. When those rules are not followed, significant constitutional rights are implicated. *Morrissey v. Brewer*, 408 U.S. 471 (1972). By intentionally delaying the issuance of the challenged warrant, and then using it to revoke the special parole term that had never commenced, the commission violated its own rules, as well as the United States Code. Mr. Conlon is therefore being held illegally and the writ of habeas corpus must issue.

RESPECTFULLY SUBMITTED this *18* day of February, 1999.

Natman Schaye
Attorney for Petitioner CONLON

A copy of the foregoing delivered
this *18* day of February, 1999 to:

United States Attorney's Office
110 S. Church, Suite 8310
Tucson, Arizona  85701

---

violating his newly commenced special parole term than he did by violating his nearly expired regular term. (Exhibit "E", National Appeal). However, 18 U.S.C. §4213(b) prohibits such manipulative delay. The statute provides that "any summons or warrant issued under this section shall be issued by the Commission as soon as practicable after discovery of the alleged violation, except when delay is deemed necessary." (Emphasis supplied).

Natman Schaye
9480 NORTH CAMINO DEL PLATA
TUCSON, ARIZONA 85742
(520) 544-2955

8

SCHAYE & WOLFKIEL
9460 N. Camino del Plata
Tucson, Arizona  85742
(520)544-2955

Natman Schaye
State Bar No. 07095
Attorney for Michael J. Conlon

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| MICHAEL J. CONLON, | ) | |
| | ) | |
| Petitioner, | ) | NO. CIV98-346-TUC-WDB |
| | ) | |
| vs. | ) | |
| | ) | **EXHIBITS TO AMENDED** |
| NANCY BAILY, Warden, | ) | **PETITION FOR WRIT OF** |
| F.C.I. Safford, U.S. PAROLE | ) | *HABEAS CORPUS* |
| COMMISSION, | ) | |
| | ) | |
| Respondents. | ) | |

1.    Exhibit "A":  Warrant Application

2.    Exhibit "B":  P.O. Lowery Letter of 2/2/98

3.    Exhibit "C":  Revocation Hearing Summary

4.    Exhibit "D":  Appeal to the United States Parole Commission

5.    Exhibit "E":  Notice of Action on Appeal and National Appeal

# U.S. DEPARTMENT OF JUSTICE
UNITED STATES PAROLE COMMISSION

# WARRANT APPLICATION

Case Of ..................... CONLON, Michael John
Reg. No .................... 34271-080
FBI No .................... 111801X5
Birth Date .................... 4/29/53
Race .................... White
Sentence Length .............. 12 Yrs w/8 Yrs SPT (Original); 739 days (PV Term)
Original Offense .............. Distribution of Cocaine

Date .................... February 12, 1998
SPT Termination Date ................ 1/27/2006
Violation Date ...................... 1/31/98
Released .......................... 1/28/98 (to SPT)

You shall, unless you have been convicted of a new offense, be given a preliminary interview by an official designated by a Regional Commissioner to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing.

At your preliminary interview and any subsequent revocation hearing you may present documentary evidence and voluntary witnesses on your behalf, and, if you deny the charge(s) against you, you may request the presence of those who have given information upon which the charges are based. Such witnesses will be made available for questioning unless good cause is found for their non-appearance.

You may be represented by an attorney or other representative of your choice, or, if you are unable to pay for counsel, an attorney will be provided by the U.S. District Court if you fill out and promptly return a Form CJA-22 to a U.S. Probation Officer.

If, after a revocation hearing, you are found to have violated the conditions of your release the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole or mandatory release, in which case the Commission will also decide when to consider you for further release.

If you have been convicted of a new offense (committed while on parole) which is punishable by a term of imprisonment, you will not receive sentence credit for the time you spent on parole. Exceptions for cases heard in the 9th Circuit beginning on October 22, 1990, the Commission will exercise discretion, in accordance with 28 C.F.R. 2.52 (Appendix), prior to ordering the forfeiture of sentence credit for the time spent on parole. If the Commission finds that you absconded or otherwise refused to submit to parole supervision, the Commission may order that you not receive credit toward service of your sentence for that amount of time. (If your original sentence was imposed for violation of the District of Columbia Criminal Code, you will not receive credit for time spent on parole regardless of whether or not you have been convicted of a crime.)

A special parole term violator whose parole is revoked shall receive no credit for time spent on parole.

## CHARGES:

Charge No. 1 - Failure to Report Change in Residence. Some time before 1/28/98, subject left his last known residence at Las Vegas, Nevada. Subject has failed to advise his USPO of his current address and his whereabouts are unknown. This charge is based on information contained in the letter dated 2/2/98 from USPO Lowry.
I ADMIT [  ] or DENY [  ] this charge.

Preliminary Interview Is Required

Warrant Recommended By:

_____
Helen A. Herman, Case Analyst
U.S. Parole Commission

Warrant Issued.....................................February 12, 1998

Probation Office Requesting Warrant..District of Nevada (1 - Main (Las Vegas))
(  ) Commission        (  ) Inmate        (  ) Institution        (  ) USPO        (  ) Interviewing Officer        (  ) Chron

*HAH*

*15/R*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**PROBATION OFFICE**

**DAVID F. SANDERS**
**CHIEF PROBATION OFFICER**
**411 BONNEVILLE AVENUE**
**SUITE 400**
**LAS VEGAS, NV**
**89101-6632**



**PHONE:** (702) 388-6428
**FAX:**   (702) 388-6731

February 2, 1998

Commissioner
U. S. Parole Commission
5550 Friendship Boulevard, Suite 420
Chevy Chase, Maryland  20815-7286

Attention:  Post Release Analyst

> **RE:  CONLON, Michael John**
> **Reg. No.:  34271-080**
> **Release Date:  11/07/9λ**
> **Parole Exp. Date:  01/27/2000**
> **Institution: North Las Vegas**
> **Detention Center**
> **2222 Constitution Way**
> **North Las Vegas, NV  89030**

> <u>**VIOLATION REPORT-WARRANT**</u>
> <u>**REQUEST**</u>

Dear Commissioner:


Be advised that the above-named individual has allegedly violated
the conditions of his parole as follows:

1. <u>**CONDITION NO. 4**</u> **- Shall notify your probation officer within
   2 days of any change in your place of residence.**

   According  to  the  offender's  live-in  girlfriend,  Melodee
   Chastaine  the  offender  vacated  his  reported  residence  on
   January 6, 1998.  She has not seen the offender since that
   time.  His current whereabouts are unknown.   .

2. <u>**CONDITION NO. 5**</u> **- You shall make a complete and truthful
   written report to your probation officer between the first and
   third day of each month.**

   The offender has failed to submit a written monthly report
   since December 5, 1997 and his current whereabouts are
   unknown, therefore, <u>he is considered an absconder by the U. S.</u>
   <u>Probation Office.</u>   .

**ATTACHMENT "C"**

Commissioner
Page 2
February 2, 1998

RE:   CONLON, Michael John

3.    **CONDITION NO. 6** - You shall not violate any law.

On January 29, 1998, the supervising probation officer spoke
with the offender's girlfriend, Melodee Chastaine. She
reported that the offender had taken her yellow 1987 Corvette,
Nevada license number 990 HXG on or about January 6, 1998,
without returning it. She informed the probation officer that
she was reporting the car as stolen as of this date.

4.    **CONDITION NO. 14** - You shall submit to drug testing whenever
ordered by your probation officer.

On November 20, 1997, the offender was enrolled in a random
urinalysis at the U. S. Probation Office. He was scheduled to
test at the rate of four times per month. The offender has
failed to show up for random urinalysis since
December 20, 1997.

Due to the offender's history of substance abuse, he is a threat to
himself and the community. This opinion is based on the offender's
prior criminal history and numerous prior failures on parole. It
is respectfully recommended that a warrant be issued as soon as
possible.

Sincerely,

KEVIN D. LOWRY, Senior
U. S. Probation Officer

KDL:mm

APPROVED:

ELIZABETH A. CUMMINGS, Supervising
U. S. Probation Officer

## REVOCATION HEARING SUMMARY

| | |
|---|---|
| Name . . . . . . . . : Conlon, Michael | Supervision . . . . : Special Parole |
| Reg . . . . . . . . . . : 34271-080 | Artuso . . . . . . . . : NO |
| Examiner . . . . . . : Jeffrey S. Kostbar | Artuso Years Remaining: |
| Warrant Executed  : 2/19/98 | Months in Custody : 3 |
| Preliminary Interview: 3/4/98 | Custody Type . . . : Federal |
| Institution . . . . . . : Oklahoma FTC | Projected MR Date : |
| 2nd Designation . : Safford FCI | Full Term Date . . : 1/27/2006 |
| Revoking District  : (Nevada, Las Vegas) | Hearing Date . . . : 3/26/98 |
| Hearing Type . . . : Institutional | |

## I. Counsel And Witnesses:

Subject was not represented by counsel.

## Witnesses Name & Any Explanatory Text Concerning Counsel and/or Witnesses:

## II. Procedural Considerations:

## III. Instant Warrant Information:

## IV. Review of Charges:

Charge No. 1 - Failure to Report Change in Residence.

Subject admits this charge. He states that while finishing up his regular supervision period he simply started to drink and absconded from supervision and from his residence. He states he wandered around Nevada and went up to Reno. He states he has no excuse for his behavior and that unless he can get his drinking problems in order he has no hope. He pointed out that both his father and grandfather died of alcoholism. While he admits the behavior he did indicate that all four of his previous violations involved alcohol use but no new criminal activity.

CONLON.342    Typist: PAH    Date Typed: June 4, 1998                      Page 1 of 3

**Evidentiary Findings.**

Subject's admission to the hearing examiner and USPO letter dated 2/2/98.

**V. Findings of Fact And Basis:**

The Examiner finds that subject has committed the following violation(s):

Charge No. 1 - Failure to Report Change in Residence.

Basis: Your admission to the examiner panel.

**No Findings And Supporting Rational:**

The Examiner makes no finding concerning the following charge(s): .

**VI. Previous Commission Action:**

**VII. Fines, Restitution, Other court Ordered Payments:**

**VIII. Parole Risk:**

**IX. Community Resources And Issues:**

**X. Salient Factor Score:**

- 1 - A. Prior Convictions/Adjudications (Adult or Juvenile)
- 0 - B. Prior Commitment(s) of More than 30 Days (Adult/ Juvenile)
- 0 - C. Age at Current Offense/Prior Commitments
  Yes (5 or more commitments)
- 0 - D. Recent Commitment Free Period (Three Years)
- 0 - E. Probation/Parole/Confinement/Escape Status Violator
- 1 - F. Heroin/Opiate Dependence
- 1 - G. Older Offenders
- 3 - **Total Salient Factor Score**

**XI. Evaluation:**

The subject did present a slight argument that he should have had his warrant written on just the few days remaining on his regular supervision term. This examiner pointed out that the Parole

CONLON.342   Typist: PAH   Date Typed: June 4, 1998         Page 2 of 3

Commission chose not to issue any warrant on the regular supervision term but rather to wait until the special parole term began. If he was still in absconder status when the special parole supervision term began the warrant would be written on the special parole term. The subject accepted this explanation.

The subject appeared clean cut and remorseful for his life. As noted above, he points to a long history of alcoholism in his family. He knows he has very little chance of success unless he can somehow manage his life without resorting to the use of alcohol. He claims that he was working for a mortgage company doing refinancing and also going to school. He feels that he may have somehow over programmed himself and over pressured himself which caused him to resort once again to alcohol.

## XII. Recommendation:

Revoke Special Parole. None of the time spent on Special Parole shall be credited. Continue to a Presumptive Parole after the service of 24 months on 2/18/2000. You shall be subject to the Special Alcohol Aftercare Condition. You shall participate in a community-based program for treatment of alcoholism as directed by your U.S. Probation Officer. You shall also abstain from the use of alcohol and/or all other intoxicants during and after the course of treatment.

A presumptive parole date is conditioned upon your maintaining good institutional conduct and the development of a suitable release plan. Prior to release, your case will be subject to review to ascertain that these conditions have been fulfilled.

## XIII. Reasons:

Your Special Parole violation behavior has been rated as Category One severity because it involved administrative violations. Your new salient factor score is 3. As of 3/26/98, you have been in Federal custody for 3 months. Guidelines established by the Commission indicate a customary range of 12-16 months to be served before release. After review of all relevant factors and information presented, a decision above the guidelines appears warranted because You are a poorer risk than indicated by your SFS and that this represents your fifth revocation of supervision on this sentence.

Subsequent statutory interim not required.

CONLON.342   Typist: PAH   Date Typed: June 4, 1998          Page 3 of 3

APPEAL TO THE UNITED STATES PAROLE COMMISSION

(Attachment To Original Form)

**(1) The U.S. Parole Commission Was Without
Authority To carry Over A Regular Term
Violation Into The Special Parole Term**

The Jurisdiction of the U.S. Parole Commission as to
supervisory authority of the parolee's regular term of parole
terminated as of January 28, 1998. (See Warrant).

The evidence relied upon for the revocation of the parolee's
supervision is stated in the letter addressed to the parolee of
March of 1998. The evidence relied upon is the Warrant, Warrant
Application and the Warrant Request and Violation Report of
February 2, 1998 from U.S. Probation Officer Kevin Lowery.

The violation report states that the parolee left his
last known address as of January 6, 1998. Pursuant to 28 C.F.R.
Section 2.40(4) and the U.S. Parole Commission Manuel the parolee
is in violation as of January 8, 1998. The additional evidence
relied upon is the Warrant Application which clearly and
unequivocally states that "sometime before January 28, 1998,
the parolee "failed to report a change of address." From January
8, until the arrest the parolee was considered in absconsion.
Pursuant to The U.S. Parole Commission Manuel at 2.40(j) the
term of the parolee was tolled, thus the sentence did not
expire.

It is clear by the evidence relied upon by the Commission

that the violation occurred within the regular term of parole
and pursuant to 2.44-03(a) which states: "When satisfactory
evidence is received indicating that a parolee or mandatory
releasee has violated the conditions of his release to the
extent that a warrant should be issued and it can be issued
timely, a warrant application is prepared."**NOTE: A warrant
cannot be issued during a special parole term for a violation
that occurred during a regular parole term."**

For the reasons stated the parolee should be in all
respects released.

Michael J. Conlon
34271-080

July 9, 1998

P.O. Box 9000
Safford, Az 85546

<*BOPCODE-SAF>

## NATIONAL APPEAL

NAME: Conlon, Michael                    REG. NO.  34271-080  INST:  Safford FCI

DATE: October 13, 1998                   REVIEWER: RKP    MOS AT REL: 24

*RKP*

### RECOMMENDED ACTION:

Affirmation of the previous decision.

Your special parole violator term is hereby converted to a regular term of imprisonment for which you are eligible for regular parole under 18 U.S.C. § 4208(a).  Your full term date is unchanged and your previously established presumptive parole date is converted to a presumptive release on regular parole.

### RECOMMENDED REASONS:

The National Appeals Board has reviewed the ground you raise in your appeal and affirms the prior Commission decision.

Your behavior, failing to report a change in residence, was clearly a violation of special parole. Your special parole term commenced on January 28, 1998. You did not report to your probation officer after that date.  As of February 2, 1998, your probation officer did not know where you were.  You remained in absconder status until February 20, 1998, when the warrant was executed.  You admitted this parole violation charge at your preliminary interview and at your revocation hearing.

The conversion of your special parole violator term to a term of regular imprisonment is required by the law of the United States Court of Appeals for the Ninth Circuit.

### NOTES:

Subject objects that the Commission did not issue a parole violator warrant while he was on regular parole.  He started violating the conditions of his regular parole shortly before his regular parole ended.  Obviously, subject would like the Commission to have issued a regular parole violator warrant because he would have almost no exposure to a sanction for violating the conditions of his regular parole.  The Commission could clearly wait until the special parole term commenced and if subject still did not report, then issue a warrant and consider only the violations that occurred once the special parole term began.  I recommend that the prior decision be affirmed.

rkp

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL J. CONLON, | No. Civ 98-346-TUC-WDB |
| Petitioner, | **ORDER** |
| vs. | |
| NANCY BAILEY, et al., | |
| Respondents. | |

On July 27, 1998, Petitioner Michael J. Conlon, presently confined in the Federal Correctional Institution in Safford, Arizona (FCI- Safford), filed with the Clerk of the Court a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Petitioner filed an Amended Petition for Writ of Habeas Corpus on February 19, 1999.

On August 8, 1986, Petitioner was sentenced by the United States District Court, Western District of Texas, to twelve years in with prison with an eight year special parole term to run consecutive to the term of imprisonment. Petitioner was released on regular parole in May of 1990. His regular parole term was to expire on January 28, 1998, at which time his special parole was to begin. On February 12, 1998, the United States Parole Commission issued a warrant for Mr. Conlon's arrest based on the following allegations in the warrant application:

**Failure to Report Change in Residence**
    Some time before 1/28/98, subject left his last known residence at Las Vegas, Nevada.  Subject has failed to advise his USPO of his current address and his whereabouts are unknown.  This charge is based on information contained in the letter dated 2/2/98 from USPO Lowry.





EXHIBIT
12

FROM : Case 8:01-cv-00700-BES-VPC Document 15-2595884 Filed 06/25/02 Page 94 of 120 04/21
DEP. DIST. DISTRICT COURT       1-08       3:10 : U.S. DISTRICT L       520 348 1350:# 3/ 4

1    Petitioner was arrested on the outstanding warrant on February 19, 1998. On March 26,

2    1998, a special parole revocation hearing was held and Petitioner admitted that he failed to

3    report a change in residence. Petitioner's parole was revoked and the Parole Commission

4    converted his special parole violator of eight years to a regular term of imprisonment and he was

5    given a sentence of 24 months. In July 1998, Petitioner appealed the revocation of his special

6    parole term to the National Appeals Board. Petitioner argued that the Parole Commission

7    lacked the authority to issue a warrant for violations of his regular parole during his special

8    parole term. On October 15, 1998, the National Appeals Board affirmed the Commissioner's

9    decision stating that Petitioner's failure to report to his probation officer after January 28, 1998,

10   was a violation of his special parole. Petitioner has exhausted his administrative remedies.

11          Petitioner alleges in his Amended Petition that he is being held illegally in

12   violation of his right to due process on the following two grounds:

13          1.    The parole violation, which occurred prior to the January 28, 1998
                  commencement of his special parole term, tolled the running of the regular
14                parole term. The regular parole term was tolled from the time he
                  absconded until the time of his arrest on February 19, 1998. Therefore,
15                Mr. Conlon's special parole term never commenced and the Parole
                  ·     Commission never had jurisdiction to revoke his special parole term."
16                (Petition at 4).

17          2.    Alternatively, if Mr. Conlon's regular parole term was not tolled by the
                  parole violation and is deemed to have expired on January 28, 1998, the
18                Commission did not have the authority to revoke his special parole term
                  for a regular parole violation. (Petition at 5)

19
     The United States Parole Commission Regulation 28 C.F.R. 2.40(j) provides. "Any
20
     parolee who absconds from supervision has effectively prevented his sentence from expiring."
21
     The violation of parole tolls the running of the parole term being served. *See Henrique v.*
22
     *United States Marshal*, 653 F.2d 1317 (9th Cir. 1981) (The Ninth Circuit found that it was the
23
     defendant's act of absconding, and not the filing of the parole violation charge that tolled the
24
     sentence.); *Klinker v. Squire*, 144 F.2d 490 (9th Cir. 1944)(In which the Court stated that "it is
25
     not the issuance of a warrant charging parole violation that tolls the expiration of a minimum
26
     sentence, but the misbehavior to the parolee.")
27

28

                                           - 2 -

The Court finds that the violation tolls the running of a parole term. Thus, Petitioner's regular parole, that should have expired on January 28, 1998, was tolled by his previous act of absconding. Therefore, his special parole term never began and the Parole Commission never had jurisdiction to issue the warrant to revoke Petitioner's special parole. Petitioner has been incarcerated since his arrest on February 19, 1998. Thus, the Court finds that Petitioner should be released and

Accordingly,

IT IS **ORDERED** that the Amended Petition for Writ of *Habeas Corpus* is **GRANTED.**

IT IS FURTHER **ORDERED** that the Bureau of Prisons release Petitioner from custody on or before December 15, 1999.

IT IS FURTHER **ORDERED** that all pending motions are denied as moot.

DATED this 29th day of November, 1999.

William D. Browning
William D. Browning
Senior United States District Judge

DATE: _12-01-99_ TIME: _1035_
PHONE: _(520) 620-7200_ CONTACT: _Becky_
_in clerk's office_
_modified order_

SIGNATURE: _Paula Bingham_

- 3 -



**U.S. Department of Justice**
**United States Parole Commission**

RECEIVED
JAN 3 2000
P.M.

### CERTIFICATE OF SPECIAL PAROLE
[CORRECTED]
**COURT-ORDERED RELEASE**

Know all Men by these Presents:

It having been made to appear to the United States Parole Commission that CONLON, Michael John, Register No. 34271-080, a prisoner incarcerated in the Safford FCI has been ordered released by the U.S. District Court for the District of Arizona (No. Civ. 98-346-TUC-WDB, order dated November 30, 1999) and has an Eight (8) Year Special Parole Term to serve, said prisoner should be released pursuant to the court order no later than December 15, 1999 to Special Parole supervision. The Special Parole Term shall commence January 28, 1998, *Nunc Pro Tunc*, and that said prisoner is to remain within the limits of Western District of Texas until February 27, 2006.

Given under the hands and the seal of the United States Parole Commission this December 15, 1999.

UNITED STATES PAROLE COMMISSION

*Juanita E. Holmes*

By: Juanita E. Holmes, Parole Info. Specialist

Initial Risk Category: SFS - 3 (Poor)
Chief U.S. Probation Officer: Ruby J. Lehrmann, Western District of Texas

I have read, or had read to me, the conditions of release printed on the attached Conditions of Release form and received a copy thereof, I fully understand them and know that if I violate any, I may be recommitted. I also understand that the law requires the Parole Commission to revoke my parole if I am found by the Commission to have possessed any illegal controlled substance. I also understand that special conditions may be added or modifications of any condition may be made by the Parole Commission upon notice required by law.

CONLON, Michael John
Name

34271-080
Reg. No.

(Inmate refused to sign)

Witnessed:   Cyndi C. Mayo, Inmate Systems Manager      12/15/99
Name and Title                                          Date

The above-named person was released on the __15__ day of __December__, 19 _99_ with a total of __8__ Years ~~days remaining~~ to be served. (Conlon was physically released 12-15-99, Special Parole effective Nunc Pro Tunc 01-28-98).

*J. Wrigley, Acting*
Nancy Bailey, Warden
Official Certifying Release

BOP-SAF

Page 1 of 3

CONLON.

EXHIBIT 13

This CERTIFICATE will be the effective on the day of release indicated above. If the releasee fails to comply with any of the conditions listed on the attached page, the releasee may be summoned to a hearing or retaken on a warrant issued by a Commissioner of the U.S. Parole Commission and reimprisoned pending a hearing to determine if the release should be revoked.

## CONDITIONS OF RELEASE

1. You shall go directly to the district shown on the CERTIFICATE OF RELEASE (unless released to the custody of other authorities). Within three days after your arrival, you shall report to your parole advisor if you have one. and the United States Probation Officer whose name appears on the Certificate. If in any emergency you are unable to get in touch with your parole advisor, or your Probation Officer or the United States Probation Office, you shall communicate with the United States Parole Commission, Department of Justice, Chevy Chase, Maryland 20815.

2. If you are released to the custody of other authorities. and after your release from physical custody of such authorities, you are unable to report to the United States Probation Officer to whom you are assigned within three days, you shall report instead to the nearest United States Probation Office.

3. You shall not leave the limits fixed by the CERTIFICATE OF RELEASE without written permission from your Probation Officer.

4. You shall notify your Probation Officer within 2 days of any change in your place of residence.

5. You shall make a complete and truthful written report (on a form provided for that purpose) to your Probation Officer between the first and third day of each month, and on the final day of parole. You shall also report to your Probation Officer at other times as your Probation Officer directs, providing complete and truthful information.

6. You shall not violate any law, nor shall you associate with persons engaged in criminal activity. You shall get in touch within 2 days with your Probation Officer or the United States Probation Office if you are arrested or questioned by a law-enforcement officer.

7. You shall not enter into any agreement to act as an informer or special agent for any law enforcement agency.

8. You shall work regularly unless excused by your Probation Officer, and support your legal dependents. if any, to the best of your ability. You shall report within 2 days to your Probation Officer any changes in employment.

9. You shall not drink alcoholic beverages to excess. You shall not purchase, possess, use or administer marijuana or narcotic or other habit-forming or dangerous drugs. unless prescribed or advised by a physician. You shall not frequent places where such drugs are illegally sold. dispensed, used or given away.

10. You shall not associate with persons who have a criminal record unless you have permission by your Probation Officer.

11. You shall not possess a firearm, ammunition or other dangerous weapons.

12. You shall permit confiscation by your Probation Officer of any materials which your Probation Officer believes may constitute contraband in your possession and which your Probation Officer observes in plain view in your residence, place of business or occupation. vehicle(s) or on your person

CONLON.342

BOP-SAI

Case 3:01-cv-00700-BES-VPC   Document 15-2595884   Filed 06/25/02   Page 98 of 120

13. You shall make a diligent effort to satisfy any fine, restitution order, court costs or assessment, and/or court ordered child support or alimony payment that has been, or may be, imposed, and shall provide such financial information as may be requested, by your Probation Officer, relevant to the payment of the obligation. If unable to pay the obligation in one sum, you will cooperate with your Probation Officer in establishing an installment payment schedule.

14. You shall submit to a drug test whenever ordered by your Probation Officer.

15. If you have been convicted of any sexual offense under District of Columbia or federal law (including Uniform Code of Military Justice offenses), you must report for registration with your state sex offender registration agency as directed by your U.S. Probation Officer. You are required to report for registration in any state in which you live, work, attend school, or pursue any vocation. You must be registered in compliance with applicable state law that applies to current or prior federal, state or local convictions for sexual offenses, and in compliance with 42 U.S.C. §14072(i) (which makes it a federal crime for any offender covered by 18 U.S.C. §4042 not to register in accordance with state law). If there is any question as to whether or where you are required to register, you must seek and follow the guidance of your U.S. Probation Officer.

By signing this Parole Certificate, I consent to the unrestricted communication between any treatment facility administering a drug or alcoholic treatment program in which I am, or will be participating, and the U.S. Parole Commission and the Probation Office. I further consent to the disclosure by such facility to the U.S. Parole Commission and the Probation Office of any information requested, and the redisclosure of such information to any agencies that require it for the performance of their official duties. This consent shall be irrevocable until the termination of parole supervision, or the occurrence of one of the items specified in 42 C.F.R. §2.35(b), whichever is earlier.

You shall also abide by the special condition(s) as indicated below :

- You shall be subject to the Special Alcohol Aftercare Condition. You shall participate in a community-based program for treatment of alcoholism as directed by your U.S. Probation Officer. You shall also abstain from the use of alcohol and/or all other intoxicants during and after the course of treatment.

Information concerning a releasee under the supervision of the U.S. Parole Commission may be disclosed to a person or persons who may be exposed to harm through contact with that particular releasee if such disclosure is deemed to be reasonably necessary to give notice that such danger exists. Information concerning a releasee may be released to a law enforcement agency as required for the protection of the public or the enforcement of the conditions of the release.

BOP-SAF

CONLON.342

01/10/00  12:06  FAX                                    @001



# FEDERAL BUREAU OF PRISONS

## FEDERAL CORRECTIONAL INSTITUTION
### SAFFORD , ARIZONA
**1529 West Highway 366**
**Box 820**
**Safford, Arizona 85548**

---

### Facsimile Transmission Cover Sheet

Date Sent: _1/10/00_

#### Please bring to the immediate attention of:

Name: _Mary Jo Williams_

Firm: _U.S. Parole Comm_

Address: _____

Fax #: _301 492-6520_

Reference: _____

Saguaro    Unit Team

Total pages including this cover sheet: _2_

Sent by: _J.P. Smith    Case Manager_

Phone #: _(520)428-6600 Ext#_    Fax #: _(520)348-3605_

Notes: _____

**EXHIBIT**
**14**

_01/10/00  12:06  FAX                                                              ⓘ02

# U.S. Department of Justice
# Federal Bureau of Prisons
## **FCI Safford**
## **Safford, Arizona**

I, Jeff Smith, make this statement freely without any promises or assurances:

1.    I have not taken any medication nor have I consumed any alcoholic beverages no illicit drugs prior to submitting this is statement.

2.    On or about December 13, 1999, Inmate Conlon was summoned to my office to sign the Certificate of Special Parole.

3.    Inmate Conlon was asked to sign the Parole Certificates and he refused, by the advice of his Attorney. At that time he did request to look at the certificates. I proceeded to read the stipulations of the special parole conditions in which I specifically read, "prisoner is to remain within the limits of Western District of Texas until February 27, 2006". I also informed Inmate Conlon that he was to report to the Probation Office within 72 hours after his release. Inmate Conlon replied he was going to return to Nevada to see his Attorney and if his Attorney would advise him to report to either the Nevada or Texas Probation Office, he would do so.

4.    One December 14, 1999, Inmate Systems Manager, Cyndi Mayo contacted Juanita Holmes, the Parole Information Specialist to request modifications of the Parole Certificates.

_____        _1/10/00_
Jeff Smith  Case Manager, FCI Safford, Safford, AZ         Date



**United States District Court**
**District of Nevada**
**Probation Office**

**David F. Sanders**
Chief United States Probation Officer
411 Bonneville
Suite 400
Las Vegas, Nevada
89101-6632

Tel:  (702) 388-6428
Fax:  (702) 388-6731

December 28, 1999

Mr. Edward F. Reilly, Jr., Chairman
United States Parole Commission
5550 Friendship Blvd., Ste. 420
Chevy Chase, MD 20815-7286

Re:     **CONLON, Michael John**
        **Reg. No. 34271-080**
        **Special Parole Term: 1/28/98 to 2/27/2006**
        *VIOLATION REPORT - WARRANT*
        *REQUESTED*

Dear Commissioner Reilly:

Please be advised that the above-named released from the FCI, Safford, Arizona on December 15, 1999, with a Special Parole Term in effect through February 27, 2006. He has failed to report to the probation officer within 3 days of his release, as required by condition number 1 of his Special Parole Certificate. Mr. Conlon's release resulted from a court order issued by the U.S. District Court in the District of Arizona. Apparently there was question as to the validity of the Parole Violator Warrant issued by the Commission, resulting in revocation. Presently, there appears to be little issue about Mr. Conlon's status as a special parolee, however, there has been confusion where Mr. Conlon is supposed to be. The Special Parole Certificate issued December 15, 1999, shows Mr. Conlon to release to the Western District of Texas until expiration on February 27, 2006. This apparently resulted from disapproval of submitted release plans by Mr. Conlon to the District of Nevada. However, contact with Jeff Smith, Case Manager at FCI Safford on December 15, 1999, indicated Mr. Conlon was coming to Las Vegas, despite the Special Parole Certificate reflecting otherwise. Mr. Conlon has not contacted the U.S. Probation Office in the District of Nevada, nor has he contacted the U.S. Probation Office in the Western District of Texas, pursuant to a telephone conversation with the Western District of Texas, today. Attempts to locate Mr. Conlon at the residence he proposed in his recent release plan to Las Vegas, have proven negative.

Whether this warrant request should have originated in the Western District of Texas or the District of Nevada is a matter that the Parole Commission may address, however, Mr. Conlon has apparently absconded from supervision by his failing to report to a U.S. Probation Officer within the first three days following his release from custody.

If additional information is needed, please advise.

Sincerely,

PAT FOY
Sr. U.S. Probation Officer

PF:dd

cc: CUSPO WD/TX - San Antonio

APPROVED    THOMAS M. COLLINS, Supervising
U.S. Probation Officer

**EXHIBIT**
15

**U.S. DEPARTMENT OF JUSTICE**                **WARRANT APPLICATION**
UNITED STATES PAROLE COMMISSION

| | | | |
|---|---|---|---|
| Case On | Conlon, Michael John | Date | January 12, 2000 |
| Reg. No. | 34271-080 | SPT Termination Date | February 17, 2006 |
| FBI No | 111 801 X5 | Violation Date | December 19, 1999 |
| Birth Date | April 29, 1953 | Released | December 15, 1999 |
| Race | White | | |
| Sentence Length | 12 years with 8 years SPT (Original); 8 years SPT | | |
| Original Offense | Distribution of Cocaine | | |

You shall, unless you have been convicted of a new offense, be given a preliminary interview by an official designated by a Regional Commissioner to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing.

At your preliminary interview and any subsequent revocation hearing you may present documentary evidence and voluntary witnesses on your behalf, and, if you deny the charge(s) against you, you may request the presence of those who have given information upon which the charges are based. Such witnesses will be made available for questioning unless good cause is found for their non-appearance.

You may be represented by an attorney or other representative of your choice, or, if you are unable to pay for counsel, an attorney will be provided by the U.S. District Court if you fill out and promptly return a Form CJA-22 to a U.S. Probation Officer.

If, after a revocation hearing, you are found to have violated the conditions of your release the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole or mandatory release, in which case the Commission will also decide when to consider you for further release.

If you have been convicted of a new offense (committed while on parole) which is punishable by a term of imprisonment, you will not receive sentence credit for the time you spent on parole. Exception: for cases heard in the 9th Circuit beginning on October 22, 1990, the Commission will exercise discretion, in accordance with 28 C.F.R. 2.52 (Appendix), prior to ordering the forfeiture of sentence credit for the time spent on parole.

If the Commission finds that you have absconded or otherwise refused to submit to parole supervision, the Commission may order that you not receive credit toward service of your sentence for that amount of time.

In addition, if you are (1) a special parole term violator, or (2) an adult D.C. Code violator, you will not receive credit toward service of your sentence for the time you spent on parole.

**CHARGES:**

Charge No. 1 - Failure to Report for Supervision. On 12/15/99, subject was released from FCI Safford. He has failed to report to the U.S. Probation Office for supervision within three days as instructed and *his whereabouts are unknown*. Subject neither reported to the *Western District of Texas* as directed on his Special Parole Certificate nor to the *District of Nevada* his last district of supervision. This charge is based on information contained in the letter dated 12/28/99 from USPO Pat Foy and the statement dated 1/10/99 from Case Manager Jeff Smith.
I ADMIT [   ] or DENY [   ] the above charge(s).

Preliminary Interview Is Required                Warrant Recommended By:

Warrant Issued..................................January 12, 2000

Mary Jo Williams, Case Analyst
U.S. Parole Commission.

Probation Office Requesting Warrant..District of Nevada (1 - Main (Las Vegas))~
(   ) Commission        (   ) Inmate        (   ) Institution        (   ) USPO        (   ) Interviewing Officer        (   ) Chron

EXHIBIT
16

# WARRANT

**U.S. Department of Justice**
**United States Parole Commission**

**To Any Federal Officer Authorized To Serve Criminal Process Within The United States:**

WHEREAS, Conlon, Michael John, Reg. No. 34271-080 was sentenced by the United States District Court to serve a sentence of 12 years with 8 years SPT (Original); 8 years SPT for the crime of Distribution of Cocaine and was released *nunc pro tunc* February 18, 1998 in accordance with Public Law 91-513 (Special Parole Term) from Safford FCI with 8 years SPT remaining to be served; (actual release from custody date was December 15, 1999)

AND, WHEREAS, reliable information has been presented to the undersigned Member of this Commission that said released prisoner named in this warrant has violated one or more conditions of his release;

NOW, THEREFORE, this is to command you by authority of Sec. 4213, Title 18, U.S.C., to execute this warrant by taking the above-named, wherever found in the United States, and hold him in your custody either until he is released by order of the Parole Commission, or until you are authorized to transport him for further custody.

WITNESS my hand and the seal on January 12, 2000.

_____
U.S. Parole Commissioner

# Memorandum



**WARRANT APPLICATION & WARRANT**
Re: Conlon, Michael John
Reg. No. 34271-080

**Date Warrant Issued:**

January 12, 2000

To:

U.S. Marshal
District of Nevada
448 U.S. Courthouse
300 Las Vegas Boulevard, South
Las Vegas, NV 89101

From:

Mary G. Williams
Case Analyst
U.S. Parole Commission

Enclosed are copies of the Warrant Application and Warrant (in duplicate) issued by the United States Parole Commission for the above-named parolee. Please notify the Parole Commission promptly of all developments concerning the disposition of this warrant.

Please assume custody as soon as possible or when located.

If the parolee is already in the custody of federal or state authorities, do not execute this warrant. Place a detainer and notify the Commission for further instructions. *Do not execute the warrant if the parolee is released on bond.* Also, if a criminal arrest warrant has been issued for this parolee, execution of such criminal warrant shall take precedence and the Parole Commission is to be notified before its warrant may be executed.

After execution of the warrant, (1) give one copy of Warrant Application to the prisoner; (2) provide one copy to the U.S. Probation Officer as soon as practical after taking custody; and (3) advise the Parole Commission that subject is in custody (noting the place of confinement and the date Warrant was executed).

When prisoner is returned to the designated institution, leave one Warrant and one Warrant Application with the Warden. Make your return on the other Warrant to the Parole Commission.

**PROBATION OFFICER:** Please keep the Commission advised of all further developments in this case.

If there has been a conviction of an offense committed while under supervision for which a term of imprisonment is authorized by law (even if no term of imprisonment is imposed in this case), do not conduct a preliminary interview unless the Parole Commission specifically orders that one be conducted.

cc: Pat Foy
Senior U.S. Probation Officer
District of Nevada
411 Bonneville
Suite 400
Las Vegas, NV 89101-6632

APR 17 '00 10:03 FR U S MARSHALS SERVICE 702 388 6937 TO 913014925525    P.01/06



**U.S. Department of Justice**

United States Marshals Service

*District of Nevada*

---

*Las Vegas, NV 89101*

UNITED STATES MARSHAL SERVICE
P.O.BOX 16039
LAS VEGAS. NEVADA 89134
702-388-6704  FAX: 388-6937
APRIL 14, 2000

PAROLE COMMISSION
5550 FRIENDSHIP BLVD
SUITE 420
CHEVY CHASE, MD    20815
301-492-5821 EXT:105   FAX:301-492-5525

ATTENTION: MARY JO WILLIAMS :

SUBJECT: COLON, MICHAEL JOHN  - FID#38853- USMS #34271-080 - PAROLE
VIOLATION: ARREST - MINNEAPOLIS, MINNESOTA

FYI...

SUBJ: CONLON, MICHAEL JOHN WAS ARRESTED ON LOCAL CHARGES AND
PICKED UP BY USMS IN MINNEAPOLIS. MINNESOTA (612-664-5912 - FAX:664-5911)
ON APRIL 17,2000 (MONDAY)

THANK YOU.

SANDI ALLEN
INVESTIGATIVE RESEARCH SPECIALIST
702-388-6704 / 6443 (WARRANTS)
702-388-6937 (FAX)
702-388-6986 (CRIMINAL CLERK DESK)

EXHIBIT
17

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### PROBATION OFFICE

GAROLD T. RAY
Chief Probation Officer
406 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415-1320
612/664-5400
FAX 612/664-5350

Reply to:  Minneapolis

May 11, 2000

RECEIVED
MAY 1 5 2000

600 U.S. Courthouse
316 North Robert Street
St. Paul, MN 55101-1465
651/848-1250
FAX 651/848-1255

206 U.S. Courthouse
515 West First Street
Duluth, MN 55802-1302
218/529-3550
FAX 218/529-3540

Ms. Sylvia B. Hall
Case Analyst
U.S. Parole Commission
5550 Friendship Boulevard, #420
Chevy Chase, MD 20815

RE:   **Conlon, Michael John**
Register No. 34271-080
**PRELIMINARY INTERVIEW**

Dear Ms. Hall:

On May 3, 2000, I conducted a preliminary interview with Mr. Conlon at the Anoka County Jail in Anoka, Minnesota.  He was represented by Dan Scott of the Federal Public Defender's Office, Minneapolis, Minnesota.  Mr. Conlon requested a postponement of his preliminary interview. Mr. Conlon and his attorney requested that the Records Officer at the Federal Correctional Institution in Safford, Arizona, be an adverse witness and/or they be given copies of all discharge records and certificates surrounding Mr. Conlon's December 15, 1999, release from that facility.  Mr. Conlon and his attorney also requested a local revocation hearing be held in either Las Vegas, Nevada, or in the Western District of Texas.  They pointed out that Mr. Conlon is scheduled to appear in Tucson, Arizona, on June 12, 2000, for a hearing on habeas relating to the current Parole Commission charges.  A copy of Parole Form F-2, Preliminary Interview and Revocation Hearing Form, is attached.

New Arrest Information

On April 13, 2000, Mr. Conlon was arrested by the Woodbury, Minnesota, Police Department and charged with Gross Misdemeanor Financial Transaction Card Fraud/Forgery and False Information to Police.  A copy of the police report is enclosed.  A copy will be also sent to the U.S. Probation Office in Las Vegas for consideration of additional charges.  The Woodbury City Attorney's Office voiced its intention to pursue prosecution of these charges, but no formal charges have yet been filed. The Woodbury Police Department discovered that the Parole Commission had an active warrant on Mr. Conlon, and the U.S. Marshal's Office in Minneapolis took custody of Mr. Conlon on April 17, 2000.

**EXHIBIT**
**18**

Ms. Sylvia B. Hall                                      RE: **Conlon, Michael John**
May 11, 2000                                            Register No. 34271-080
Page 2                                                  <u>**PRELIMINARY INTERVIEW**</u>


Please call me at 612-664-5364 to discuss the next step in the process.

               Sincerely.

               Garold T. Ray
               Chief U.S. Probation Officer


               Robert D. Holliday
               U.S. Probation Officer

Approved:
               Karen S. Gilman
               Supervising U.S. Probation Officer

RDH:en

Enclosures

C: USPO Henry Stegman, Las Vegas, NV
   Dan Scott, Public Defender, Minneapolis, MN

U.S. Department of Justice
· United States Parole Commission
Chevy Chase, MD 20815



**Preliminary Interview and Revocation Hearing Form**

## PART ONE

This part is to be completed at the initial visit of the interviewing officer following the arrest of an alleged parole or mandatory release violator on a Warrant or appearing by Summons issued by the United States Parole Commission. The explanation of the Commission's procedure and the alleged violator's legal rights which appears below must be read and acknowledged by the alleged violator, and a copy provided to him.

The rules of the United States Parole Commission provide that, as an alleged parole or mandatory release violator who has not been convicted of a criminal offense committed while under supervision shall be given a preliminary interview by an official designated by the Commission. At the interview, each charge on the warrant application will be read to you, and you will be apprised of the information supporting those charges. You will be asked to admit or deny each charge and to so indicate in the spaces provided for your initials on the warrant application. You may explain, justify or clarify your admission or denial to the probation officer and this will be reported by him as part of his report of the preliminary interview. Following the interview, you will be held in local custody pending a determination by the Commission as to whether there is probable cause to believe that you have violated a condition of your release, and if so, whether to order a revocation hearing to make a final determination of the charges against you. The rules of the Commission further provide that you may be represented at your preliminary interview by an attorney and that you may present voluntary witnesses and documentary evidence in defense of the charges against you. If you deny violating the conditions of release and have not been convicted of a crime while on release, you may request the presence of those persons who have given evidence that you violated your conditions of release.

OPPORTUNITY TO REQUEST POSTPONEMENT OF PRELIMINARY INTERVIEW. The preliminary interview will be held at this time unless you request postponement of the interview in order to permit you to obtain an attorney and/or witnesses. Such postponement will not exceed thirty days. If you desire the presence of voluntary witnesses at the preliminary interview or local revocation hearing, the responsibility of their presence at the appropriate time and place rests with you or your attorney.

COURT-APPOINTED ATTORNEY. If you cannot pay for the services of an attorney and desire legal assistance, you may complete Form C.J.A.-22 to request the local United States District Court to appoint an attorney to represent you at your preliminary interview. Your interviewing officer will furnish you with this form, and will present it to the Court for you. If you waive representation by an attorney at your preliminary interview, you may, at the conclusion of the interview or no later than 15 days prior to revocation hearing complete Form C.J.A.-22 to request appointment of an attorney to represent you in the event the Commission orders a revocation hearing.

OPPORTUNITY TO REQUEST ADVERSE WITNESSES. If you intend to contest the administrative charges against you and have not been convicted of a new criminal offense during your release, you may also request the presence at a postponed preliminary interview of any adverse witness who has given information upon which revocation may be based. If you do so by completing this form, such witness will be made available at the interview for questioning unless good cause is found to deny your request. Your supervising U.S. Probation Officer will normally be present if you are being held in your district of supervision.

Pending a postponed preliminary interview you may request that any witness be interviewed and that the testimony of such witness be reported to the Commission. When appropriate, the Commission may order that a postponed preliminary interview be conducted as a local revocation hearing.

**THIS FORM CONSTITUTES THE NOTICE OF YOUR
PRELIMINARY INTERVIEW REQUIRED BY LAW**

_____ I have read (or had read to me) the above explanation of the Commission's preliminary interview procedure, and I fully understand my legal rights under that procedure. *(Initial one of the choices below:)*

(A) _____ I WISH TO PROCEED WITH MY PRELIMINARY INTERVIEW AT THIS TIME.

(B) _____ I REQUEST A POSTPONEMENT (NOT TO EXCEED THIRTY DAYS) OF MY PRELIMINARY INTERVIEW IN ORDER TO OBTAIN AN ATTORNEY AND/OR WITNESS(ES).

I request the following adverse witnesses:

_Records Office  FCI  Safford  for  all  disburse records
and certificate surrounding  12-6-99  release from
FCI  Safford._

_____          _____
(Signature of Parolee/Mandatory Releasee)        (Signature of Interviewing Officer)

_34171-080_          _C 5 - 03 - 00_
(Register Number)          (Date)

PAROLE FORM F-2
JUNE 87

 

| U.S. DEPARTMENT OF JUSTICE | SUPPLEMENT |
|---|---|
| UNITED STATES PAROLE COMMISSION | |

Case Of:     Conlon, Michael
Reg. No:     34271-080
FBI No:      111801X5
Birth Date:  4/29/53
Race:        W
Date:        June 2, 2000

## SUPPLEMENT TO WARRANT APPLICATION DATED January 12, 2000

### CHARGES:

Charge No. 2 - Law Violation: A) Fraud, B) False Information to Police.   On or about 4/13/2000, subject was arrested by the Woodbury, Minnesota, Police Department for Fraud/Forgery and False Information to Police, which occurred on or about the same date. Information contained in the police report dated 4/13/00 indicates that the subject was arrested after he gave a false name to police and police found, once they ascertained his correct name, that he had the outstanding parole violator warrant against him. After his arrest, police found that he possessed credit cards that were not issued in his name and had used one of the credit cards that evening. This charge is based on information contained in the Woodbury, Minnesota, Police Department report dated 4/13/00.
I ADMIT [  ] or DENY [  ] this charge.

Preliminary Interview is Required

Warrant Issued:   January 12, 2000
District Sent To:  District of Minnesota

Warrant Recommended By:

*Helen Herman*

Helen A. Herman, Case Services Dep. Administrator
U.S. Parole Commission

EXHIBIT
19


FILED ___ LODGED
___ RECEIVED ___ COPY

MAY    1 2000

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

MICHAEL J. CONLON,

      Plaintiff,

vs.

NANCY BAILY, Warden and ;
U.S. PAROLE COMMISSION,

      Defendants.

No. CV 98-346-TUC-WDB

**ORDER**

The Plaintiff having filed a Motion to Reopen Proceedings re Petition for Writ of Habeas Corpus, the Court having considered the same,

IT IS ORDERED that the Motion to Reopen is GRANTED and that this matter is set for Evidentiary Hearing on June 12, 2000 at 8:30 a.m. before the Honorable William D. Browning.

IT IS FURTHER ORDERED that the Motion for Immediate Release from Custody is DENIED.

The Court further directs the United States Attorney's Office to prepare the writ for the production of Mr. Michael J. Conlon for the hearing on June 12, 2000.

DATED this 28th day of April, 2000.

William D. Browning
Senior United States District Judge

**EXHIBIT
20**

FILED _____ LODGED
RECEIVED _____ COPY

JUN 19 2000

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| MICHAEL J. CONLON, | ) | No. CIV 98-346-TUC-WDB |
| Petitioner, | ) | **ORDER** |
| vs. | ) | |
| NANCY BAILEY, et al., | ) | |
| Respondent. | ) | |

Pending before the Court are Respondents' Motion to Vacate Order to Reopen Proceedings, Motion to Vacate Hearing, and Motion to Reconsider Order Releasing Petitioner. An evidentiary hearing on Petitioner's claims was to have been held on June 12, 2000. Due to an error by the U.S. Marshal, that hearing was postponed and reset for August 7, 2000. Respondents' Motions were not filed until June 15, 2000. In consideration of the fact that Petitioner filed his claim on April 21, 2000, the Court ordered the hearing on May 25, 2000, and the hearing was to have been held on June 12th, Respondents' Motions are untimely and shall not be considered.

The issue for consideration at the August 7, 2000, hearing shall be whether this Court's Order of November 30, 1999, granting a Writ of Habeas Corpus, which did not order the Petitioner to resume contact with the Parole Commission, obviated the resumption of Petitioner's parole status. Respondents are ordered to address this issue in a brief filed with this Court by at least July 31, 2000.



EXHIBIT
21

1    Accordingly,

2    IT IS HEREBY **ORDERED**:

3         1.    Respondent's Motion to Vacate Order to Reopen is **DENIED**;

4         2.    Respondent's Motion to Vacate Hearing is **DENIED**;

5         3.    Respondent's Motion to Reconsider is **DENIED**.

6         IT IS FURTHER **ORDERED** that Respondent file a brief addressing the resumption

7    of Petitioner's parole status and the propriety of revoking parole by July 31, 2000.

8         DATED this 16th day of June, 2000.

9

10

11                           William D. Browning
12                           Senior United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
CIVIL MINUTES - GENERAL

RECEIVED

Date: _____ December 11, 2000 _____

Civil Case No. _CV98-346-TUC-WDB_    2000 DEC 12  P 12 21

Title _MICHAEL CONLON_ ___ vs. _NANCY BAILEY_

_____ TUCSON, AZ

```
FILED _____ LODGED
RECEIVED _____ COPY

    DEC 1 2 2000

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
_____ DEPUTY
```

========================================================

Present:

HON. _____ WILLIAM D. BROWNING _____

Deputy                          Court
Clerk: _____ Cathy Schwader _____    Reporter: ____ Tape: 21-136 _____

ATTORNEY(s) FOR PETITIONER       ATTORNEY(s) FOR RESPONDENT

_Natman Schaye_ _____       _Gerald Frank_ _____

========================================================

PROCEEDINGS: __XX__ Open Court _____ Chambers _____ Other

STATUS HEARING _____

Hearing held.  Counsel for petitioner informs the Court that the petitioner is

not present and he has had no recent communication with his client.

IT IS ORDERED continuing this matter until such time as the petitioner can be

brought before the Court.

IT IS FURTHER ORDERED that a warrant be issued for the arrest of the petitioner

commanding the person executing the warrant to appear before this court with

the petitioner at the earliest practicable time.

_____

_____

_____

_____

_____

WDB  AUSA (FRANK   SCHAYE   USM

```
EXHIBIT
  22
```

10 442 (Rev.5/85-AZ) Warrant for Arrest

# United States District Court
## District of Arizona

# WARRANT FOR ARREST

UNITED STATES OF AMERICA
V.
**MICHAEL CONLON**

CASE NUMBER :   **CV-98-346-TUC-WDB**

**To:**   The United States Marshal and any Authorized United States Officer

**YOU ARE HEREBY COMMANDED** to arrest   **MICHAEL CONLON**

and bring him or her forthwith to the nearest magistrate to answer a(n)

XX Order of Court Failure to Appear

charging him  with (brief description of offense) failure to appear for the hearing on December 11, 2000 at 10:00 a.m.

before this court.

in violation of Title_____ United States Code, Section(s)_____

| RICHARD H. WEARE | CLERK, U.S. DISTRICT COURT |
|---|---|
| Name of Issuing Officer | Title of Issuing Officer |
| _Signature of Issuing Officer_ | _December 12, 2000, Tucson, Arizona_ |
| (By) C. Schwader, Deputy Clerk | Date and Location |

Bail fixed at $ DEFT. TO BE HELD WITHOUT BOND   By: Judge William D. Browning

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at: | | |
| Date Received | Name and Title of Arresting Officer | Signature of Arresting Officer |
| Date of Arrest | | |

RECEIVED

2001 AUG 27 P 3: 33

U.S. ATTORNEY
TUCSON, AZ

FILED _____ LODGED
_____ RECEIVED _____ COPY

AUG 2 7 2001

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL CONLON, | No. CIV 98-346-TUC-WDB |
| Petitioner, | **ORDER** |
| vs. | |
| NANCY BAILEY, et al., | |
| Respondents. | |

Through a long and circuitous process, the Court is now considering the effects of its grant of a writ of habeas corpus to Petitioner in November 1999. Based on the following, the Court holds that Petitioner was not on notice of any requirement to contact the Parole Commission after his release on the writ, and, in an exercise of its equitable powers, the Court releases Petitioner from serving any remaining parole term.

**BACKGROUND**

In 1986 Petitioner was sentenced to a mandatory release supervision term of 12 years and a special parole term of 8 years. In his Petition for Writ of Habeas Corpus, Petitioner argued that his constitutional rights were violated when his special parole term was revoked after he had absconded during his regular parole term, but before he had begun to serve the special parole term. The Court held that the special term was tolled, and as a result the

EXHIBIT
23

1   Parole Commission had no jurisdiction to revoke the special parole term. The Court ordered
2   that the Petitioner be released.

3       The Order contained no instructions concerning Petitioner's duty to contact the Parole
4   Commission. Petitioner claims that he attempted to contact his parole officer in Las Vegas
5   but was told that they would not handle his case. Petitioner then moved to Minnesota.

6       Petitioner was arrested by local police in Minnesota in the Spring of 2000. Although
7   it appears the state did not charge him with any violation of the law, he was transferred to the
8   U.S. Marshals for violating parole. A warrant for a parole violation has not yet been issued
9   and no probable cause hearing has been held.

10      Petitioner requested that the Court reopen his habeas petition, which the Court did.
11  An evidentiary hearing was set for June 12, 2000. However, Petitioner was not transferred
12  to Tucson, the hearing was continued and Petitioner was released. Petitioner failed to appear
13  for the rescheduled evidentiary hearing and a bench warrant was issued. Petitioner appears
14  to have been arrested on different charges. He was brought before this Court, pursuant to the
15  warrant.

16  **ISSUES**

17      Previously, the Government offered the following argument as to why Petitioner
18  should still be considered to be serving his special parole and to have absconded from
19  supervision. By the time Petitioner was released because of the grant of habeas corpus, he
20  had served the 12 year term of his sentence and mandatory release term. He therefore should
21  have begun serving the special parole term. Allegedly he was presented with a special parole
22  certificate before leaving prison, but refused to sign it because he wanted to discuss it with
23  his attorney. He allegedly stated he would contact parole in either Nevadea or Texas after
24  his December 15, 1999, release, but did not do so.

25      The Government argues that it is an inappropriate remedy for the wrong of improperly
26  imprisoning Petitioner to vacate his entire special parole term. The Government gives two
27  reasons for this: (1) it is possible for equitable considerations to be made by terminating the
28

-2-

1  supervised release term early; and (2) vacating the term would, in essence, vacate the
2  sentence imposed by the Texas district court without a showing that the sentence was
3  improper.

4      Petitioner argues, in response, that the Court should consider equitable issues in this
5  case. Petitioner has served nearly 11 years of prison time and close to 3 years on regular
6  parole.  He was then incarcerated illegally for 22 months, as a result of the Parole
7  Commission's decision to revoke his special parole.

8      Additionally, Petitioner notes that the Parole Commission asserted that Petitioner
9  violated special parole and then converted his eight-year special parole term into a two year
10  term of imprisonment.  Had the revocation been legitimate (and not the subject of
11  Petitioner's application for writ of habeas) Petitioner would have been released in March
12  2000 and the Parole Commission could have either imposed a term of ordinary parole, or
13  released Petitioner unconditionally. The Parole Commission does not have the authority to
14  re-impose a term of special parole, after the original term is revoked. *Robles v. U.S.*, 146
15  F.3d 1098 (9th Cir. 1998); *Fultz v. Stratman*, 963 F.Supp 926 (S.D.Cal. 1997).  Had
16  Respondents actions been proper, they could not reimpose the special term, thus, they should
17  not be able to reimpose the term once their actions have been deemed illegal.  Petitioner
18  argues that he should be released without conditions, or in the alternative, with a reasonable
19  period of regular parole.

20  **DISCUSSION**

21      The original grant of writ of habeas corpus was pursuant to 28 U.S.C. § 2241.
22  However, Petitioner was in custody under sentence by a federal court.  Accordingly, the
23  Court has jurisdiction to vacate and set the judgment aside. . . [and] correct the sentence as
24  may appear appropriate." 28 U.S.C. § 2255. There is "broad and flexible power" conferred
25  upon a district court due to the equitable nature of habeas corpus relief. *See United States*
26  *v. Handa*, 122 F.3d, 690, 691 (9th Cir. 1997). Thus, where the actions of the Government are

27
28

1   set aside as illegal, the court is free to restructure the sentence to reflect the circumstances.

2   *Id.* at 692.

3        Here, the Court's original Order granting the writ of habeas corpus did not require the

4   Petitioner to establish contact with the Parole Commission, nor did it make clear that he still

5   had a term of probation to complete. Thus, the Court cannot find that Petitioner's failure to

6   contact the Parole Commission was improper. Considering the amount of time that

7   Petitioner has spent in custody since his release on the writ, equity suggests that to impose

8   additional probation, on top of the 22 months of illegal imprisonment, would be unwarranted.

9        Accordingly,

10        IT IS HEREBY **ORDERED** that Petitioner's special parole term be **VACATED** and

11   Petitioner be **RELEASED** no later than August 31, 2001.

12        DATED this 24th day of August, 2001.

13

14   

15   William D. Browning
     Senior United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201
<CC-USP-NV1-702 388 6731>

**Notice of Action**

---

Name: CONLON, Michael John

---

Register Number: 34271-080          Institution: USPO - Las Vegas, NV

---

In the case of the above-named, the following parole action was ordered:

Withdraw the warrant dated 7/13/01 and close case.

**NOTE TO U.S. MARSHAL** - Return the unexecuted warrant to this office as soon as possible.

**REASONS:**

In an order dated 8/24/01, the U.S. District Court for the District of Arizona held that the special parole term must be vacated. Conlon v. Bailey, No. CIV 98-346-TUC-WDB (D. Az. order dated 8/24/01). If the government appeals this order and the court's decision is reversed, you may be required to serve your special parole term and you may be taken into custody as an alleged special parole violator.

THE ABOVE DECISION IS NOT APPEALABLE.

Attn:    Chief U.S. Probation Officer
         District of Nevada
         411 Bonneville
         Suite 400
         Las Vegas, NV  89101-6632

---

Date: September 7, 2001                    Clerk: dej

Page 1 of 1                                CONLON.342

EXHIBIT
24

1

CERTIFICATE OF SERVICE

2     I certify that a copy of the foregoing MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT and DECLARATION OF GREG
3   ADDINGTON and DECLARATION OF PAT FOY and DECLARATION OF THOMAS
COLLINS and DECLARATION NANCY BAILEY and DECLARATION OF KEVIN
4   LOWRY were mailed by first-class mail, postage pre-paid, on June
_25_ , 2002:

5

6   Wm. Patterson Cashill
410 California Avenue
7   Reno, NV 89509

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28