ORIGINAL



1  Wm. Patterson Cashill, Esq.
   State Bar No. 1108
2  410 California Avenue
3  Reno, Nevada 89509
   775.334.4444
4  Attorney for Plaintiff

5

6               **UNITED STATES DISTRICT COURT**

7                  **DISTRICT OF NEVADA**

8  MICHAEL J. CONLON,                    Case No.    CV-N-01-0700-DWH-VPC
                        Plaintiff,
9  v.
10 UNITED STATES OF AMERICA;
   UNITED STATES DEPARTMENT OF
11 JUSTICE; JOHN ASHCROFT, the United
   States Attorney; UNITED STATES
12 DEPARTMENT OF JUSTICE, FEDERAL
13 BUREAU OF PRISONS; NANCY BAILEY,
   Warden of FGI, Safford, Arizona Prison and
14 individually; UNITED STATES
15 DEPARTMENT OF JUSTICE, PAROLE
   COMMISSION; COMMISSIONER
16 SIMPSON [first name unknown], U.S. Parole
   Commissioner and individually; UNITED
17 STATES FEDERAL JUDICIARY,
18 PROBATION OFFICE; KEVIN LOWERY,
   U.S. Probation Officer and individually;
19 PATRICK FOY, U.S. Probation Officer and
20 individually; THOMAS COLLINS, U.S.
   Probation Officer and individually;
21 JOHN LAWHEAD, U.S. Assistant Chief
22 Probation Officer and individually;
   UNITED STATES SENTENCING
23 COMMISSION; and DOES 1-50, in official
   capacities and individually, inclusive.
24                      Defendants.

25

26        **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

27        Plaintiff, by and through his counsel, opposes defendants' Motion to Dismiss

28 Complaint or, in the Alternative, for Summary Judgment, as follows:

                              1

1  I.   **INTRODUCTION**

2      On August 24, 2001, United States District Judge, William Browning held that Plaintiff,

3  Michael Conlon, had been illegally incarcerated for <u>two years</u>. The Government took no

4  appeal from that order, which is res judicata on the issue. (A copy of Judge Browning's order

5  is attached as **Exhibit A.**)

6      Plaintiff duly submitted his Administrative Claim. The Government received but failed

7  to act upon it (see 7/25/01 and 8/28/01 letters attached **Exhibit B**). Plaintiff then timely filed

8  this action.

9      Rather than confront its wrong, rather than deal with the issues of why, and at whose

10 instance, Mr. Conlon was unlawfully and tortiously deprived of his liberty for two years, the

11 Government has attempted to sow dragon's teeth to obstruct his right to compensation for the

12 grevious wrong done him. As shown below, the Government's motion must be denied.

13 II.  **STANDARD FOR REVIEW OF DEFENDANT'S MOTION**

14     2.1   <u>The 12(b)(6) Motion</u>

15         In reviewing a motion to dismiss pursuant to FRCP 12(b)(6), the Court's task is

16 to determine whether the complaint sets forth allegations sufficient to state a claim for relief.

17 The Court must take the complaint at "face value." *California Motor Transport Co. v.*

18 *Trucking Unlimited*, 404 U.S. 508, 515, 925 S.Ct. 609, 614, 30 L.Ed. 2d 642 (1972).

19 Moreover, all facts stated in the complaint must be taken as true and construed in favor of the

20 Plaintiff. The complaint cannot be dismissed unless it appears <u>beyond a doubt</u> that the

21 Plaintiff could prove <u>no</u> set of facts, which, if accepted by the trier of fact, would entitled him

22 to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 785 S.Ct. 99, 101-102, 2 L.Ed 2d 80 (1957).

23         As Professors Wright & Miller state:

24 The motion to dismiss for failure to state a claim is viewed with
disfavor and is rarely granted. Rule 8 indicates that a complaint need

25 only set out a generalized statement of facts from which defendant will
be able to frame a responsive pleading. Few complaints fail to meet

26 this liberal standard and become subject to dismissal. Moreover, the
courts are reluctant to dispose of the complaint on technical grounds in

27 view of the policy of the federal rules to determine actions on their

28 merits. Courts also hesitate to dismiss because of the possible waste of

judicial time if on appeal the dismissal is reversed and remanded. As the court stated in *Rennie & Laughlin, Inc. v. Chrysler Corporation* [242 F.2d 208, 213 (9th Cir. 1957)]:

> [A] motion to dismiss [is not] the only effective procedural implement for the expeditious handling of legal controversies. Pretrial conference; the discovery procedures; and motions for a more definite statement, judgment on the pleadings and summary judgment, all provide useful tools for the sifting of allegations and the determination of the legal sufficiency of an asserted claim. The salvaged minutes that may accrue from circumventing these procedures can turn to wasted hours if the appellate court feels constrained to reverse the dismissal of the action. That is one of the reasons why a motion to dismiss is viewed with disfavor in the federal courts. Another is the basic precept that the primary objective of the law is to obtain a determination of the merits of any claim; and that a case should be tried on the proofs rather than the pleadings. * * * This is not to say or imply that a motion to dismiss should never be granted. It is obvious that there are cases which justify and indeed compel the granting of such motion. The line between the totally unmeritorious claims and the others cannot be drawn by scientific instruments but must be carved out case by case by the sound judgment of trial judges. That judgment should be exercised cautiously on such a motion.

The test most often applied to determine the sufficiency of the complaint was set out in the leading case of *Conley v. Gibson,* in which the Supreme Court stated that

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

5A Wright & Miller, Federal Practice and Procedure, § 1357, at p. 321-324 (2nd Ed. 1990)[1].

### 2.2   The Rule 56 Motion

As stated in Baicker-McKee Janssen Corr, <u>Federal Civil Rules Handbook</u>, pps. 790-793 (West Group 2002):

---

[1] Plaintiff is filing a Second Amended Complaint to clarify his Federal Tort Act claim. Plaintiff can do so without seeking leave of Court under Rule 15 because a motion to dismiss is <u>not</u> a responsive pleading as that term is used in Rule 15(a). See Federal Civil Rules Handbook, at 370, FN2, citing, inter alia, *Bowden v. United States,* 176 F.3d 552 (D.C. Cir. 1999) ("alternative motions to dismiss and for summary judgment are not responsive pleadings and therefore do not nullify Plaintiff's right to amend.")

Summary judgment is to be rendered "forthwith" when, <u>after an</u> <u>adequate period for discovery</u>, one party is unable to show a genuine issue as to a material fact on which that party will bear the burden of proof at trial, so long as judgment against that party is appropriate as a matter of law.

> *Genuine Issue:* A "Genuine issue" exists where the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party. This standard parallels the test for judgment as a matter of law under Rule 50(a): a mere "scintilla" of evidence, or evidence that is only "colorable" or is not sufficiently probative, is not enough to defeat summary judgment. Instead, there must be evidence upon which a jury could reasonably find in the non-moving party's favor.

\* \* \*

**Burden of Proof**

The party moving for summary judgment always has the burden of persuasion on such a motion. The burden of going forward, however, shifts during the motion process.

The moving party must first make a prima facie showing that summary judgment is appropriate under Rule 56. This does not require the moving party to disprove the opponent's claims or defenses. Instead, this prima facie burden is discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims or defenses. The burden of going forward then shifts to the non-moving party to show, by affidavit or otherwise, that a genuine issue of material fact remains for the factfinder to resolve. A party does *not* meet this burden simply by theorizing a "plausible scenario" in support of the party's claims, when that proffered scenario conflicts with direct, contrary evidence.

The burden of showing the existence or absence of a disputed issue of material fact will rarely shift to the trial judge. The district court generally is not obligated to sift through the often voluminous record, unguided, searching for a genuine issue of fact sufficient to defeat summary judgment.

**Doubts and Inferences**

In ruling on a motion for summary judgment, the court will never weigh the evidence or find the facts. Instead, the court's role under Rule 56 is narrowly limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial. Thus, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving

party, and all reasonable inferences will be drawn in the non-moving party's favor.

"Reasonable" inferences are inferences reasonably drawn from all the facts then before the court, after sifting through the universe of all possible inferences the facts could support. "Reasonable" inferences are not necessarily more probable or likely than other inferences that might tilt in the moving party's favor. Instead, so long as more than one reasonable inference can be drawn, and that inference creates a genuine issue of material fact, the trier of fact is entitled to decide which inference to believe and summary judgment is not appropriate.

**Credibility Questions**

The court will not weight the credibility of witnesses or other evidence in ruling on a motion for summary judgment. Evaluating credibility, weighing evidence, and drawing factual inferences are all functions reserved for the jury.

**State of Mind Questions**

Summary judgment is never automatically foreclosed merely because a person's state of mind (such as motive, knowledge, intent, good faith or bad faith, malice, fraud, conspiracy, or consent) is at issue. But such cases will seldom lend themselves to a summary disposition because questions of credibility will ordinarily abound.

Id. (emphasis added).

## III.   THE DEFENDANTS' ALTERNATIVE MOTION FOR SUMMARY JUDGMENT IS PREMATURE

As stated in ¶2.2, supra, if this court were to treat the Government's motion as one for summary judgment pursuant to FRCP 56, the motion is premature in that discovery has not yet begun, nor has a Rule 26(f) conference even been held. (See Declaration of Wm. Patterson Cashill attached as **Exhibit C**). The authors of the Federal Civil Rules Handbook conclude that although some courts have short-circuited the discovery process in order to grant summary judgment, that "pre-discovery summary judgments should be the exception, rather than the rule." Federal Civil Rules Handbook at 788-789.  See also *Patton v. General Signal Corp.*, 984 F.Supp. 666, 1670 (W.D.N.Y. 1997) ("prediscovery summary judgment remains the exception rather than the rule and will be 'granted only in the clearest of cases.'"); *Vaughn v. United States Small Business Administration*, 65 F.3d 1322, 1325, (6th

1  Cir. 1995) (defendant's motion for summary judgment cannot ordinarily be considered until

2  plaintiff has had the opportunity to conduct discovery).

### IV.  DEFENDANTS' ALTERNATIVE MOTION FOR SUMMARY JUDGMENT IS INAPPROPRIATE INASMUCH AS IT DEALS WITH ISSUES INVOLVING STATE OF MIND

6  As stated in ¶2.2 above, motions for summary judgment directed at fact intensive issues

7  such as state of mind (i.e. motive, malice, knowledge, intent, good faith) are wholly

8  inappropriate for disposition by summary judgment, because credibility of the witnesses is so

9  critical.  In *Mendocino Environmental Center v. Mendocino County,* 192 F.2d 1283, 1302 (9th

10  Cir. 1999), the Court said:

> Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action. *See Magana,* 107 F.3d at 1447; *Kunik,* 946 F.2d at 1580; *Hampton,* 600 F.2d at 620-21.  Moreover, "[q]uestions involving a person's state of mind ... are generally factual issues inappropriate for resolution by summary judgment." *Braxton- Secret v. Robins Co.,* 769 F.2d 528, 531 (9th Cir. 1985).

17  *Mendocino Environmental* is especially opposite here, where the motives, intentions,

18  and state of mind of Plaintiff's captors is at the center of the inquiry.

### V.  CLAIM BY CLAIM ANALYSIS

**5.1  FIRST CLAIM FOR RELIEF: Violation of 42 U.S.C. §1983, 42 U.S.C. §1985 (3), *et seq.* - Deprivation of Rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States**

**5.1.1  The Arguments Directed at 42 U.S.C. § 1983 and the Fourteenth Amendment are Moot**

24  Plaintiff is amending his complaint to delete any claim under 42 U.S.C. §

25  1983.  Thus, the arguments directed at that claim are moot[2].  Likewise, the references to the

26  fourteenth amendment are being deleted.  Plaintiff has sufficiently set out his first claim for

---

[2]  Plaintiff is clarifying his complaint to allege a claim under the Federal Tort Claims Act, 28 U.S.C. § 2671-2680.

relief in paragraphs 55 through 67:

55. Defendant John Lawhead, U.S.P.O., by and through the U.S. Probation Office made fraudulent and false allegations of special parole violations that were originally filed by the U.S. Parole Commission's case analyst.

56. Having reviewed the warrant application the case analyst elected to forward his/her stamp of approval to the Commissioner to issue a warrant for the Plaintiff's arrest even though the allegations were without jurisdiction.

57. Plaintiff was arrested and subsequently was subjected to what was to be a preliminary hearing with an "independent probation officer" to determine probable cause. The probation officer was predisposed to find the Plaintiff's guilt and ruled accordingly.

58. After the above-stated hearing, Plaintiff was transferred to FTC Oklahoma for a revocation hearing.

59. At the revocation hearing, Plaintiff argued that the Commission lacked jurisdiction to violate the special parole term as it had not started.

60. The record reflects that the regular parole period was tolled as the U.S. District Court confirmed in its granting of the Plaintiff's writ of habeas corpus, thus no violation occurred in the special parole period.

61. The U. S. Parole Commission's own manual prohibits the violation of the special parole period.

62. The Examiner disallowed the argument as "weak," and assessed the Plaintiff 24 months in prison.

63. The Plaintiff exhausted his administrative remedy to filing an appeal to the National Appeals Board. Counsel (name unknown) elected to affirm the examiner's order without explanation. The evidence presented to the Appeals Board was overwhelming by virtue of its own regulation and case law, which clearly and unequivocally showed the order of the examiner to be overturned. Counsel, with the Commissioner's approval, chose to continue this constitutional violation by ignoring the Plaintiff's claim.

64. At all times relevant Defendants, and each of them, acted arbitrarily and capriciously so as to deny Plaintiff's liberty and property interests and rights without due process in violation of the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

65. As a direct and proximate result of the acts of the Defendants, and each of them, Plaintiff has suffered personal injury, wrongful and false imprisonment, embarrassment, humiliation, and severe and extreme mental anguish, all to his general

damage in excess of $10,000, and special damages for lost
wages and other pecuniary loss.

66.   The acts of the Defendants, and each of them, were oppressive,
malicious, and intentional, thus, entitling Plaintiff to receive
punitive damages pursuant to law.

67.   Plaintiff has been compelled to retain the services of counsel to
prosecute this action.

5.1.1   Plaintiff States a Claim Against the United States Under the Federal Tort
Claims Act (FTCA) and Against the Individual Defendants under *Bivens*

The Government correctly argues that the claims alleged under 42 U.S.C.
§ 1983 are inappropriate inasmuch as the Defendants, at all times relevant acted under color
of Federal, not State law, hence the amendment deleting any reference to § 1983.

However, Plaintiff does state a claim under the FTCA, 28 U.S.C. §§
2671-2680 for false arrest and imprisonment. 28 U.S.C. § 2680(h). Moreover, Plaintiff
states a claim against the individuals pursuant to *Bivens v. Six Unknown Agents of the
Federal Bureau of Narcotics*, 403 U.S. 838, 91 S.Ct. 1999 (1971).

That Plaintiff states a claim under *Bivens* is underscored by *Boda v. The
United States*, 698 F.2d 1174 (11th Cir. 1983), cited by the Government in its brief at page
17, lines 23-25. In *Boda* the court said that "Had Boda in her amendment not sought to drop
the individual officers as defendants, she would have stated at least a colorable *Bivens* claim
not barred by sovereign immunity." *Id.* at 1176, FN3.

The claim for conspiracy under § 1985 also remains alive and well. See
*Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991).

5.2   SECOND CLAIM FOR RELIEF: Intentional Infliction of Emotional Harm

Plaintiff set out his second claim for relief in paragraphs 69 through 73:

69.   The acts of the Defendants, and each of them, were outrageous, and
were intended by them to subject Plaintiff to severe and extreme
emotional distress.

70.   As a direct and proximate result of Defendants' acts, Plaintiff has lost
wages and other compensation and has suffered a diminished reputation,
embarrassment, humiliation, mental anguish, physical injury, and
extreme emotional distress.

71.   Defendants, and each of them, sought to maximize the emotional

distress suffered by Plaintiff and to wrench from him the joy and happiness which was a vital part of his life.

72.  The acts of the Defendants, and each of them, were oppressive, malicious, and intentional, thus, entitled Plaintiff to receive punitive damages pursuant to law.

73.  Defendants acted with intent, malice and oppression, thus entitling Plaintiff to recover punitive damages pursuant to law.

In Jayson & Longstreth, <u>Handling Federal Tort Claim</u>, § 9.05[4], p. 9-140 (2002), the authors state:

> Liability may be imposed on the United States under the Tort Claims Act for either a "negligent or wrongful act or omission" of a federal employee. The word "wrongful," as used in the Act, is not fully synonymous with "negligent"; it has a broader meaning. Negligent conduct is wrongful conduct in the eyes of the law, but wrongful conduct may, and does, include other torts as well.[156]

In reaching their conclusion the authors note the following:

> [156] The word "wrongful" was added to an earlier phraseology so as to enlarge the coverage beyond "negligence." The House Judiciary Committee explained: "The Senate bill covers only claims arising out of 'negligence' whereas the recommended bill uses the phrase 'negligent or wrongful act or omission.' The committee prefers its language as it would afford relief for certain acts or omissions which may be wrongful but not necessarily negligent." H.Rep. No. 2245, 77th Cong., 2d Sess., p.11 (1942). *See also* Hearings Before a Subcommittee of the Senate Judiciary Committee on S 2690, 76th Cong., 3d Sess., pp. 43-44 (1940).

> For discussion of legislative history as to meaning of "wrongful act," *see In re* Bomb Disaster at Roseville, Cal., 438 F.Supp. 769 (E.D. Cal. 1977), this treatise cited.

*Id.* at FN 156.

The tort of the intentional infliction of emotional distress has specifically been held actionable under the FTCA. *See Sheehan v. United States*, 896 F.2d 1168 (9th Cir. 1990); *Truman v. United States*, 26 F.3d 592 (5th Cir. 1994); *Crain v. Krehbiel*, 443 F.Supp. 202 (N.D. Cal. 1977). To the extent that this court feels compelled to determine whether

1    local law allows a claim such as this, as is suggested in *Crain v. Krehbiel*, 443 F.Supp. 202

2    (N.D. Cal. 1977), Nevada does recognize just such a claim. *See, Star v. Rabello*, 97 Nev.

3    124, 1625 P.2d 90 (1981), and its progeny.

4      5.3    THIRD CLAIM FOR RELIEF: Negligence

5        75.    Defendants, and each of them, owed to Plaintiff to duty of care to

6            refrain from interfering with his vested property rights, and to refrain from causing him emotional distress or other harm to his person,

7            reputation, and well being.

       76.    Defendants, and each of them, breached this duty as described above.

8        77.    As a direct and proximate result of Defendants' acts, Plaintiff suffered

9            general, special, economic, and non-economic damages in excess of $10,000.

10

11      Negligence is specifically addressed and encompassed by the FTCA. In *Beins*

12    *v. United States*, 695 F.2d 591 (D.C. Cir. 1982) the court stated that a finding of negligence

13    is the "lynchpin" of the FTCA.

14      5.4    FOURTH CLAIM FOR RELIEF:  Intentional Misrepresentation

15        Plaintiff is amending to delete this claim.

16      5.5    FIFTH CLAIM FOR RELIEF:  False Arrest

17        84.    Defendant U.S. Probation officer Patrick Foy along with Defendants

18            Collins and Lawhead, acted individually and conspired to violate the Plaintiff's First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment

19            rights under Title 42 §§ 1983 and 1985(3).

20        85.    The Parole Commission did not request the District of Nevada to supervise the Plaintiff as the certificate of special parole designated the Western District of Texas as the jurisdictional district.

21        86.    Defendant Foy submitted a letter to the Commission with the complete

22            approval of Defendants Collins and Lawhead for the arrest of the Plaintiff for failure to report for supervision even though there was no

23            requirement for supervision of Plaintiff in Nevada.

24        87.    The false arrest of Plaintiff resulted in an additional two months of illegal incarceration until the Honorable Judge Browning released

25            Plaintiff from custody of the Parole Commission.

26        88.    The Plaintiff's detention was based upon the acts of false information, misrepresentation, negligence, as well as deliberate indifference to the

27            Plaintiff.

       89.    As a direct and proximate result of Defendants' acts, Plaintiff suffered

28            general, special, economic, and non-economic damages in excess of

$10,000.

See ¶5.1; 28 U.S.C. § 2680(h), supra.

5.6    SIXTH CLAIM FOR RELIEF:  False Imprisonment

91.    Defendant Warden Nancy Bailey acted individually and conspired with Defendant's Inmate Systems Manager (name unknown) and Inmate Systems Manager (name unknown) to violate the Plaintiff's First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights under Title 42 §§ 1983 and 1985(3) of false imprisonment.

92.    Plaintiff filed his administrative remedy with Defendant Bailey.

93.    Defendant Bailey passed the action to Inmate Systems Manager (name unknown who stated the Commission could violate the special parole term.

94.    Defendant Bailey approved the decision of the institution to not act upon the request.

95.    Plaintiff approached the "new" Inmate Systems Manager with the same information and received the same negative response given by Defendant Bailey.

96.    Plaintiff appealed to the Regional office which affirmed the Warden's actions.

97.    Plaintiff appealed to the Central office and they affirmed the Warden's actions without investigation.

98.    As a direct and proximate result of Defendants' acts, Plaintiff suffered general, special, economic, and non-economic damages in excess of $10,000.

See ¶5.1; 28 U.S.C. § 2680(h), supra.

5.7    SEVENTH CLAIM FOR RELIEF:  Cruel and Unusual Punishment

100.    Defendant Warden Nancy Bailey acted individually and conspired with Defendant's Inmate Systems Manager (name unknown) and Inmate Systems Manager (name unknown) to violate Plaintiff's First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights under Title 42 §§ 1983 and 1985(3) of cruel and unusual punishment.

101.    The false arrest of Plaintiff resulted in an additional two months of illegal incarceration until the Honorable Judge Browning released Plaintiff from custody of the Parole Commission.

102.    Plaintiff's detention was based upon the acts of false information, misrepresentation, negligence, as well as deliberate indifference to the Plaintiff.

103.    As a direct and proximate result of Defendants' acts, Plaintiff suffered general, special, economic, and non-economic damages in excess of $10,000.

11

In Jayson & Longstreth, <u>Handling Federal Tort Claim</u>, § 9.05[4], p. 9-144

(2002), the authors state:

> The word "wrongful" has been held to include conduct
> constituting duress. Thus, where a claimant alleged that it
> acted under duress, when government agents through threats
> and similar acts coerced it into a compromise agreement
> whereby it had to pay certain sums to the government without
> just cause, it was held that an actionable claim was stated
> under the Tort Claims Act. The intentional infliction of
> emotional distress has also been held actionable under the Act.
> It has been indicated that breach of fiduciary duties is
> actionable.

If being illegally detained and imprisoned for two years is not cruel and

unusual punishment—what is? Clearly, Plaintiff was deprived of his liberty and must have a

remedy.

## VI.   SERVICE WAS PROPER ON DEFENDANTS

Defendants Kevin Lowry, U.S. Probation Officer, Patrick Foy, U.S. Probation Officer,

Thomas Collins, U.S. Probation Officer and John Lawhead, U.S. Probation Officer, were

served via the Probation Office in Tucson, Arizona on April 1, 2002. On April 2, 2002, Ms.

Magdeline Jensen, Chief Probation Officer in Arizona contacted Plaintiff's attorney advising

that she had received the summons and complaint, but that the probation officers mentioned in

the complaint were officers in the District of Nevada, not Arizona. On Wednesday, April 17,

2002, the secretary to Plaintiff's counsel contacted Ms. Jensen in the Probation Office of

Arizona and was advised that Ms. Jensen would forward the summons and complaint to the

probation officers listed in care of the chief officer at: 411 Bonneville Avenue, Suite 400, Las

Vegas, Nevada 89101-6632. (Declaration of Cindy Pulsipher is attached as **Exhibit D**).

## VII.   IMMUNITY

Any defense of immunity is fact driven and fact intensive, and thus inappropriate for a

motion for summary judgment. None of the Defendants are immune.

/ / /

/ / /

12

7.1   ABSOLUTE IMMUNITY

Defendants do not enjoy absolute immunity, *Mullinau v. McElhenney*, 817 F.2d 711 (11th Cir.); *Gobel v. Maricopa County*, 867 F.2d 1201 (9th Cir. 1989); (obtaining a "safe keeping order" from the court in order to keep in inmate incarcerated after the reversal of his conviction); *Allen v. Lowder*, 875 F.2d 82 (4th Cir. 1989); (wrongfully delaying transfer from state back to federal custody following dismissal of state charges); *Dinand v. County of Suffolk*, 52 F.3d 1139 (2nd Cir. 1995); (when a defendant commits an intentional violation of a defendant's rights, he enjoys no absolute immunity).

In *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606 (1993) the Court denied absolute immunity, saying:

> A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as there were here, the immunity that protects them is also the same.

*Id.* at 275-276. The issue of absolute immunity, like that of qualified immunity is fact driven and fact intensive and thus inappropriate for summary judgment.

In *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) (cert. denied, 145 L.Ed.2d 48, 120 S.Ct. 55 (1999), the court discussed the determining factors for absolute immunity and stated:

> The Supreme Court has adopted a 'functional approach' to determine whether an official is entitled to absolute immunity. This approach looks to the <u>nature of the function performed, not the identity of the actor who performed it</u>. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

*Id.* 169 F.3d at 1186 (emphasis added).

In *Kalima v. Fletcher*, 522 U.S. 118, 121, 118 S.Ct. 502, 505 (1997) a prosecutor "personally vouched" for the truth of the allegations of the changing documents

1    she could only claim qualified immunity, and was denied summary judgment. This

2    "functional approach" is, by its very nature, fact intensive and dependent to dismissal where

3    there has been no discovery. It would deny Plaintiff any meaningful opportunity to contest

4    the motion and to prove his case.

5            In *Mishler v. Clift*, 191 F.3d 998, 1007 (9th Cir. 1999), the Court states:

6            The act of responding to the Ohio Board inquiry is not entitled to
             absolute immunity. This court has already held a claim based on the
7            response to the Ohio Board should not be dismissed at the Rule
             12(b)(6) stage on the basis of qualified immunity because it was alleged
8            to be a ministerial act. *See Mishler II*, 990 F.2d 1259. This act of
9            responding to inquiries from other medical boards would seem to be, at
             its essence, an administrative function entailing examination of records
10           and sending of correspondence. This act is not closely associated with
11           the judicial process and thus falls outside the protections of absolute
             immunity.
12

13   *Id.* 191 F.3d at 1008.

14           In sum, all the above cited cases are fact driven by a "functional approach" to

15   the determination of absolute immunity.

16       7.2    QUALIFIED IMMUNITY

17           In *Ford v. Retter*, 840 F.Supp. 489, 492 (N.D.Ohio,1993), the Court discussed

18   qualified immunity, saying:

19           These cases lead the Court to conclude that the distinction between the
             defense of qualified immunity and the substantive law of an excessive
20           force claim have become blurred. As this Court has previously
             explained, "the determination of qualified immunity turns on the same
21           objective reasonableness standard that the claim of excessive force
             turns on...." *Jackson v. Hoylman*, 3:89CV7208 at p. 5 (N.D.Ohio
22           December 18, 1989), *affirmed*, 933 F.2d 401, 402 (6th Cir.1991). [FN3]
23           As Judge Suhrheinrich has observed:

24
                 FN3. The Court acknowledges the fine work of Professor Karen
25               M. Blum. In her article, Qualified Immunity: *A User's Manual*, 26
                 Ind.L.Rev. 187 (1993), Professor Blum provides a practical and
26               insightful discourse on the qualified immunity doctrine and the
27               difficulty with which it is applied to Section 1983 actions.

28

                                                 14

Although *Anderson* makes it clear that qualified immunity is available as a defense to a Fourth Amendment claim of an unreasonable search, Graham leaves open the question of whether qualified immunity would apply in the excessive force case. Because the Fourth Amendment excessive force inquiry is governed by the same "objective reasonableness" standard as the qualified immunity inquiry, a number of courts and commentators have suggested that the qualified immunity defense is redundant in this context and does not apply. Those adhering to this view would frame the question on the merits and the qualified immunity question in the same way: was the officer's conduct objectively reasonable given the totality of the circumstances? *Id.* at 219-220.

I believe generally ... that qualified immunity is not available in excessive force cases.... It seems to this writer that qualified immunity has no relevance unless there is excessive force, for if there is no excessive force, the officer acted in an objectively reasonable manner under the circumstances and there is no constitutional violation. It also seems that once you have determined the need for the defense of [qualified immunity], ... as a matter of law ... the officer has acted unreasonably ... and has violated clearly established law. *Yates v. City of Cleveland*, 941 F.2d 444, 450 (6th Cir.1991) (Suhrheinrich, J., concurring).

Furthermore, assuming the qualified immunity defense exists in an excessive force case, there has, historically, been some confusion as to the role of the judge and the role of the jury in its application. See *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). As Professor Blum explains:

When historical facts material to the issue of qualified immunity remain in dispute, summary judgment is inappropriate and a jury should decide those facts. It is important to understand that a defendant does not lose his or her immunity simply because the qualified immunity issue cannot be disposed of on summary judgment. If the qualified immunity issue is not resolved at the summary judgment stage, it is subject to disposition during trial, on a directed verdict motion, or even after trial on a motion for a judgment notwithstanding the verdict. When factual issues remain for the jury, the best way to accomplish jury resolution of the facts while maintaining the court's control over the legal question of qualified immunity is to submit special interrogatories to the jury that will provide answers to the facts dispositive of the immunity defense.

Karen M. Blum, Qualified Immunity: A User's Manual, 26
Ind.L.Rev. 187, 209 (1993) (footnotes omitted).

As the Court has observed, plaintiff's claim against defendant Retter
fails at an earlier point in the analytical framework. Plaintiff failed to
satisfy the threshold requirement of Siegert and, his claim will be
dismissed on that basis, leaving for another day the tortuous task of
applying the doctrine of qualified immunity to an excessive force
claim.

In *Pope v. Horgan,* 538 F.Supp. 808, 812-813 (D.C.Tex., 1982), the court said:

The unresolved question of fact regards Horgan's motivation for
approving of the penalty recommendation against the plaintiff. If her
decision evinced retaliatory or vindictive purposes, then the qualified
immunity which otherwise protects her would dissolve. The plaintiff
alleges that Horgan approved of the penalty recommendation "to get
even with him" for unpleasant remarks he made to her on the
telephone in April, 1978.

In finding a material issue of fact as to her good faith, based on what
her motivation was, this court refused to grant a summary judgment
on the basis of qualified immunity. In so finding, we brushed over this
area too lightly. "Motivation" is not necessarily synonymous with
good faith for purposes of immunity.

The standard for determining the availability of a qualified immunity
was set out in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40
L.Ed.2d 90 (1974): It is the existence of reasonable grounds for the
belief formed at the time in light of all the circumstances, coupled
with good faith belief, that affords a basis for qualified immunity of
executive officers for acts performed in the course of official conduct.
*Id.* at 247-48, 94 S.Ct. at 1692. Thus, there are both subjective and
objective components. The subjective standard for good faith is
whether the official took the action with the belief that it was lawful
and without malicious intent to cause, or knowledge that the action
would cause, a deprivation of constitutional rights. *Wood v. Strictland,*
420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975);
*Scheuer v. Rhodes,* 416 U.S. at 248, 94 S.Ct. at 1692 (made applicable
to federal executive officials in *Butz v. Economou,* 438 U.S. 478, 510-
511, 98 S.Ct. 2894, 2912-2913, 57 L.Ed.2d 895 (1978)). The objective
standard is whether, given the responsibilities of the job and amount
of discretion available to the official and the circumstances as they
reasonably appeared at the time, it was reasonable to believe that there
was a lawful right to take the action. Id.

///

16

1          Qualified immunity involves a determination of the objective reasonableness of

2    the defendants' conduct, which, of course, involves a factual inquiry into what the Defendants

3    knew at the time he/she acted and what his/her motives were for the action taken.  These

4    inquiries preclude summary judgment.

5    **VIII.  <u>PLAINTIFF INTENDS TO FILE A RULE 56(f) MOTION</u>**

6          Plaintiff intends to file a Rule 56(f) motion to enlarge the time to oppose the myriad of

7    factual contentions raised by the Government's motion.  Thus summary judgment must be

8    denied.

9    **IX.    <u>CONCLUSION</u>**

10         Plaintiff respectfully requests that Defendants' Motion to Dismiss be DENIED.

11   DATED this 26th day of August, 2002.

14   Wm. Patterson Cashill, Esq.
     Nevada Bar No. 1108

15   410 California Avenue
     Reno, Nevada 89509

16   775.334.4444

17   Attorney for Plaintiff

17

Exhibit A

Legal Tabs Co. 1-800-322-3022

RECEIVED

AUG 27 2001

FEDERAL PUBLIC DEFENDER
DISTRICT OF ARIZONA

FILED _____ LODGED
RECEIVED _____ COPY

AUG 2 7 2001

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL CONLON, | No. CIV 98-346-TUC-WDB |
| Petitioner, | ORDER |
| vs. | |
| NANCY BAILEY, et al., | |
| Respondents. | |

Through a long and circuitous process, the Court is now considering the effects of its grant of a writ of habeas corpus to Petitioner in November 1999. Based on the following, the Court holds that Petitioner was not on notice of any requirement to contact the Parole Commission after his release on the writ, and, in an exercise of its equitable powers, the Court releases Petitioner from serving any remaining parole term.

**BACKGROUND**

In 1986 Petitioner was sentenced to a mandatory release supervision term of 12 years and a special parole term of 8 years. In his Petition for Writ of Habeas Corpus, Petitioner argued that his constitutional rights were violated when his special parole term was revoked after he had absconded during his regular parole term, but before he had begun to serve the special parole term. The Court held that the special term was tolled, and as a result the

1   Parole Commission had no jurisdiction to revoke the special parole term. The Court ordered
2   that the Petitioner be released.

3       The Order contained no instructions concerning Petitioner's duty to contact the Parole
4   Commission. Petitioner claims that he attempted to contact his parole officer in Las Vegas
5   but was told that they would not handle his case. Petitioner then moved to Minnesota.

6       Petitioner was arrested by local police in Minnesota in the Spring of 2000. Although
7   it appears the state did not charge him with any violation of the law, he was transferred to the
8   U.S. Marshals for violating parole. A warrant for a parole violation has not yet been issued
9   and no probable cause hearing has been held.

10      Petitioner requested that the Court reopen his habeas petition, which the Court did.
11  An evidentiary hearing was set for June 12, 2000. However, Petitioner was not transferred
12  to Tucson, the hearing was continued and Petitioner was released. Petitioner failed to appear
13  for the rescheduled evidentiary hearing and a bench warrant was issued. Petitioner appears
14  to have been arrested on different charges. He was brought before this Court, pursuant to the
15  warrant.

16  **ISSUES**

17      Previously, the Government offered the following argument as to why Petitioner
18  should still be considered to be serving his special parole and to have absconded from
19  supervision. By the time Petitioner was released because of the grant of habeas corpus, he
20  had served the 12 year term of his sentence and mandatory release term. He therefore should
21  have begun serving the special parole term. Allegedly he was presented with a special parole
22  certificate before leaving prison, but refused to sign it because he wanted to discuss it with
23  his attorney. He allegedly stated he would contact parole in either Nevada or Texas after
24  his December 15, 1999, release, but did not do so.

25      The Government argues that it is an inappropriate remedy for the wrong of improperly
26  imprisoning Petitioner to vacate his entire special parole term. The Government gives two
27  reasons for this: (1) it is possible for equitable considerations to be made by terminating the

28

-2-

1  supervised release term early; and (2) vacating the term would, in essence, vacate the

2  sentence imposed by the Texas district court without a showing that the sentence was

3  improper.

4      Petitioner argues, in response, that the Court should consider equitable issues in this

5  case. Petitioner has served nearly 11 years of prison time and close to 3 years on regular

6  parole.  He was then incarcerated illegally for 22 months, as a result of the Parole

7  Commission's decision to revoke his special parole.

8      Additionally, Petitioner notes that the Parole Commission asserted that Petitioner

9  violated special parole and then converted his eight-year special parole term into a two year

10  term of imprisonment.  Had the revocation been legitimate (and not the subject of

11  Petitioner's application for writ of habeas) Petitioner would have been released in March

12  2000 and the Parole Commission could have either imposed a term of ordinary parole, or

13  released Petitioner unconditionally. The Parole Commission does not have the authority to

14  re-impose a term of special parole, after the original term is revoked. *Robles v. U.S.*, 146

15  F.3d 1098 (9th Cir. 1998); *Fultz v. Stratman*, 963 F.Supp 926 (S.D.Cal. 1997).  Had

16  Respondents actions been proper, they could not reimpose the special term, thus, they should

17  not be able to reimpose the term once their actions have been deemed illegal.  Petitioner

18  argues that he should be released without conditions, or in the alternative, with a reasonable

19  period of regular parole.

20  DISCUSSION

21      The original grant of writ of habeas corpus was pursuant to 28 U.S.C. § 2241.

22  However, Petitioner was in custody under sentence by a federal court. Accordingly, the

23  Court has jurisdiction to vacate and set the judgment aside. . . [and] correct the sentence as

24  may appear appropriate." 28 U.S.C. § 2255. There is "broad and flexible power" conferred

25  upon a district court due to the equitable nature of habeas corpus relief. *See United States*

26  *v. Handa*, 122 F.3d, 690, 691 (9th Cir. 1997). Thus, where the actions of the Government are

27

28

-3-

1 | set aside as illegal, the court is free to restructure the sentence to reflect the circumstances.
2 | *Id.* at 692.
3 | Here, the Court's original Order granting the writ of habeas corpus did not require the
4 | Petitioner to establish contact with the Parole Commission, nor did it make clear that he still
5 | had a term of probation to complete. Thus, the Court cannot find that Petitioner's failure to
6 | contact the Parole Commission was improper. Considering the amount of time that
7 | Petitioner has spent in custody since his release on the writ, equity suggests that to impose
8 | additional probation, on top of the 22 months of illegal imprisonment, would be unwarranted.
9 | Accordingly,
10 | IT IS HEREBY **ORDERED** that Petitioner's special parole term be **VACATED** and
11 | Petitioner be **RELEASED** no later than August 31, 2001.
12 | DATED this 24th day of August, 2001.

William D. Browning
Senior United States District Judge

-4-

Exhibit B

Legal Tabs Co. 1-800-322-3022



**U.S. Department of Justice**

Federal Bureau of Prisons

*Western Regional Office*

---

*Dublin, California  94568*

July 25, 2001

Michael Conlon
Reg. No. 34271-080
Federal Correctional Institution
8901 South Wilmont Road
Tucson, AZ  85706

RE:   Administrative Claim No. TRT-WXR-2001-06091

Dear Mr. Conlon:

This is to acknowledge receipt of your Claim for Damage, Injury or Death (Standard Form 95) that was submitted to or forwarded to this office under the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671, et seq.  You seek compensation in the amount of $1,500,000.00 for alleged personal injury as a result of events at the Federal Correctional Institution, Tucson, Arizona, on or after December 1, 1999.  Your claim was received and filed July 23, 2001.

In accordance with the applicable provisions of the statute, this agency has up to six months within which to make a final determination of your administrative claim for damages.  This time frame began on the date that your claim was received for filing and processing as noted above.

It is your responsibility to advise this office of any change in your address.  You are also requested to refer to the newly assigned claim number whenever corresponding with this office about your submission.

Sincerely,

Harlan W. Penn

HARLAN W. PENN
Regional Counsel

HWP/jmh

**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815*

August 28, 2001

Michael J. Conlon
#34271-080
F.C.I., Tucson
8901 S. Wilmot Road
Tucson, Az 85706

Dear Mr. Conlon:

This is in response to your administrative tort claim dated July 18, 2001, in which you allege personal injury on the basis of actions taken by the Parole Commission. The claim was received in this office on July 25, 2001

Our office will notify you when we have completed review of your claim and have sent our recommendation to the Assistant Attorney General, Civil Division, Department of Justice.

Sincerely,

Michael A. Stover
General Counsel

*P. Dawn Sikkema*

By:      P. Dawn Sikkema
         Attorney

MAS/PDS

Exhibit C

Legal Tabs Co.  800-322-3022

## DECLARATION OF WM. PATTERSON CASHILL, ESQ.

Wm. Patterson Cashill declares as follows:

1.    I am the attorney for Plaintiff Michael Conlon herein.

2.    The First Amended Complaint was filed in the case entitled: *Michael Conlon vs. United States of America, et al*, on March 19, 2002.

3.    Defendants were served between March 29, 2002 and April 11, 2002.

4.    There has been no discovery conducted in this case.

5.    There has been no Rule 26(f) conference held between the parties in this case.

I declare under penalty of perjury under the laws of the State of Nevada, that the foregoing is true and correct.

DATED this 26th day of August, 2002, at Reno, Nevada.

WM. PATTERSON CASHILL, ESQ.

1



Legal Tabs Co. 1-800-322-3022

Exhibit D

## DECLARATION OF CINDY PULSIPHER

Cindy Pulsipher declares as follows:

1.   I am a paralegal for Wm. Patterson Cashill, attorney for Plaintiff herein.

2.   On April 1, 2002, service of process of summons and First Amended Complaint in this action, was effected upon Defendants Kevin Lowry, U.S. Probation Officer, Patrick Foy, U.S. Probation Officer, Thomas Collins, U.S. Probation Officer and John Lawhead, U.S. Probation Officer, by serving the Probation Office in Tucson, Arizona.

3.   On April 2, 2002, I received a telephone call from Ms. Magdeline Jensen, Chief Probation Officer in Arizona, advising that she had received the summons and complaint served upon defendant probation officers, but that the probation officers mentioned were officers in the District of Nevada, not Arizona.

4.   On April 17, 2002, I instructed my secretary to contact Ms. Jensen in the Probation Office of Arizona in regards to the service of process of the probation officers.  Ms. Jensen advised my secretary that she would forward the summons and complaint to the probation officers listed, in care of the Chief Officer at: 411 Bonneville Avenue, Suite 400, Las Vegas, Nevada 89101-6632.

5.   Mr. Conlon provided to our office a letter he received from Mr. Harlan W. Penn, Regional Counsel for the U.S. Department of Justice, Federal Bureau of Prisons, dated July 25, 2001, acknowledging receipt on July 2, 2001, of Mr. Conlon's claim for damages under the Federal Tort Claims Act (FTCA).

6.   Additionally, Mr. Conlon provided to our office a copy of a letter he received from the U.S. Parole Commission, Attorney P. Dawn Sikkema, dated August 28, 2001, in response to Mr. Conlon's administrative tort claim dated July 18, 2001, that was received on July 25, 2001 (Our Bates-stamped number: FPD-AZ-070).

I declare under penalty of perjury under the laws of the State of Nevada, that the foregoing is true and correct.

DATED this 26th day of August, 2002, at Reno, Nevada.

CINDY PULSIPHER

1

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I hereby certify that I am an employee of WM. PATTERSON CASHILL, ESQ., and that on this date I:

- ☒ deposited for mailing, with sufficient first class postage thereon
- ☐ personally delivered
- ☐ served via facsimile (upon mutual consent of litigants) to fax number below
- ☐ served via Reno/Carson Messenger Service for service on _____
- ☐ served via Federal Express or other overnight delivery service

a true and correct copy of the foregoing document, addressed to:

Greg Addington, Esq................................................Fax: 784.5181
Assistant United States Attorney
100 West Liberty, Suite 1600
Reno, Nevada  89501

DATED:   August 26, 2002.