1   DANIEL G. BOGDEN
    United States Attorney
2
    GREG ADDINGTON
3   Assistant United States Attorney
    Nevada Bar # 6875
4   100 West Liberty Street, Suite 600
    Reno, NV  89501
5   (775) 784-5438
    (775) 784-5181-facsimile
6

7                    UNITED STATES DISTRICT COURT

8                        DISTRICT OF NEVADA

9   MICHAEL J. CONLON,                   )
                                         )
10       Plaintiff,                      )    CV-N-01-700-DWH-VPC
                                         )
11       v.                              )    MOTION TO DISMISS SECOND
                                         )    AMENDED COMPLAINT OR, IN THE
12   UNITED STATES OF AMERICA;           )    ALTERNATIVE, FOR SUMMARY
     UNITED STATES DEPARTMENT OF         )    JUDGMENT
13   JUSTICE;                            )
     JOHN ASHCROFT, Attorney General;)
14   FEDERAL BUREAU OF PRISONS;          )
     NANCY BAILEY, Warden of FGI,        )
15   Safford, Arizona;                   )
     UNITED STATES PAROLE COMMISSION;)
16   JOHN R. SIMPSON; U.S. Parole        )
     Commissioner;                       )
17   UNITED STATES PROBATION OFFICE; )
     KEVIN LOWRY, U.S. Probation         )
18   Officer;                            )
     PATRICK FOY, U.S. Probation         )
19   Officer;                            )
     THOMAS COLLINS, U.S. Probation      )
20   Officer;                            )
     JOHN LAWHEAD, U.S. Probation        )
21   Officer;                            )
     UNITED STATES SENTENCING            )
22   COMMISSION;                         )
                                         )
23          Defendants.                  )
                                         )
24
         Come now each of the named defendants in this action,
25
    individually and collectively, through their undersigned counsel,
26
    and move this Court pursuant to Rule 7(b), Fed.R.Civ.P., for
27

28

1 | dismissal of this action or, in the alternative, for summary
2 | judgment.

3 | The motion to dismiss is made on the grounds that this Court
4 | lacks subject matter jurisdiction as to the claims against
5 | certain defendants, this Court lacks personal jurisdiction over
6 | certain defendants, service of process has been insufficient as
7 | to certain defendants, and the second amended complaint fails to
8 | state a viable claim for relief against any of the named
9 | defendants.

10 | The alternative motion for summary judgment is made on the
11 | grounds that plaintiff can prove no facts which would entitle him
12 | to the relief requested against any of the named defendants.

13 | This motion is based on the attached memorandum of law and
14 | the Statement of Undisputed Material Facts (and corresponding
15 | attachments), filed and served herewith.  This motion is brought
16 | pursuant to Rules 12(b)(1),(2),(5), and (6) and Rule 56,
17 | Fed.R.Civ.P.

18 | For the reasons described in the attached memorandum of law,
19 | this action should be dismissed or, in the alternative, summary
20 | judgment entered against plaintiff and in favor of each of the
21 | defendants.

22 |                         Respectfully submitted,

23 |                         DANIEL G. BOGDEN
                            United States Attorney

24 |

25 |

26 |                         GREG ADDINGTON
                            Assistant United States Attorney

27 |

28 |                              2

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## I.   PROCEDURAL HISTORY

Plaintiff Conlon commenced this action by filing a complaint pro se on December 14, 2001.  The complaint sought damages from multiple individual and institutional defendants, all of them having some affiliation with the federal government.  The focus of Conlon's complaint was his "illegal" incarceration by federal authorities.  Specifically, Conlon contended that he was entitled to  damages on account of the erroneous effect given to Conlon's various parole violations. No summons was issued in connection with the complaint.

On March 19, 2002, Conlon (represented by counsel) filed his first amended complaint and obtained issuance of summonses directed to some of the defendants.  By Notice (#5) issued April 18, 2002, this Court directed Conlon to demonstrate service of the summons and complaint or suffer dismissal of the action.  In response, Conlon filed several summonses with information which purported to show effective service on some (but not all) of the defendants.[1]

On May 24, 2002, this Court entered its Order (#13) dismissing this action as to defendants Thomas Collins, Patrick

---

[1]    The summonses filed by Conlon (## 6-12) showed "service" by certified mail on the following defendants: 1) U.S. Sentencing Commission, 2) John Simpson (Parole Commissioner), 3) U.S. Parole Commission, 4) U.S. Bureau of Prisons, 5) U.S. Federal Judiciary, Probation Office, 6) Attorney General John Ashcroft, and 7) Nancy Bailey (former Warden of BOP facility).

1 | Foy, John Lawhead, Kevin Lowery, and the United States of
2 | America. The basis of the dismissal Order was Conlon's failure
3 | to serve the summons and complaint within the time provided by
4 | Rule 4(m), Fed.R.Civ.P. Conlon sought reconsideration of this
5 | dismissal Order but Conlon's motion for reconsideration was
6 | denied on July 23, 2002 (#18).

7 | In the meantime, all of the defendants (including those
8 | already dismissed by the May 24, 2002 Order) sought dismissal or
9 | summary judgment through a motion (#15) which was supported by
10 | declarations of the various individual defendants with personal
11 | knowledge of Conlon's parole status. Among other things, the
12 | motion sought dismissal on the grounds of insufficient service of
13 | process, failure of the complaint to state a viable claim for
14 | relief, and immunity enjoyed by the individual defendants. The
15 | motion was opposed by Conlon. In addition to opposing the
16 | motion, Conlon sought leave to file a second amended complaint
17 | (#32), a motion which was granted by Order entered November 19,
18 | 2002 (#35). Accordingly, the second amended complaint was filed
19 | on the same day (#42) - with the previously-filed dispositive
20 | motion (#15) still pending. The Court solicited supplemental
21 | memoranda from the parties regarding the pending dispositive
22 | motion, with the parties submitting their respective supplemental
23 | memoranda (## 36, 37).

24 | By Order (#41) entered March 14, 2003, this Court denied the
25 | motion (#15) to dismiss without prejudice. The Court concluded
26 | that the filing of the second amended complaint had left the

27 |
28 |                                4

1   motion to dismiss the first amended complaint "moot."   In the
2   same Order, the Court noted that Conlon had "not demonstrated
3   that the defendants have been properly served under Rule 4" and
4   specifically noted the time limits for such service under Rule
5   4(m), Fed.R.Civ.P.   This Court directed Conlon to file proof of
6   timely and effective service of process within sixty days.

7        At the time of this Court's Order of March 14, 2003, no
8   summonses had been issued (or apparently requested) in connection
9   with the second amended complaint and no service of the second
10  amended complaint had been effected on any of the individual
11  defendants.[2]  In response to the March 14, 2003, Order, Conlon
12  obtained issuance of eleven summonses (#43) on March 24, 2003.
13  Presumably, Conlon is now attempting service upon the various
14  individual defendants.

15       As discussed below, Conlon can not possibly obtain timely
16  and effective service of the summons and second amended
17  complaint, as directed by the Order (#41) of March 14, 2003,
18  because the time period for obtaining such service has expired
19  (and, in fact, expired prior to the issuance of the summonses on
20  the second amended complaint).   Accordingly, this action should
21  be dismissed as to all of the individual defendants (and
22  dismissed for the second time as to defendants Collins, Foy,
23  Lawhead, and Lowery (see Order #13)).

24

25  _____

26       [2]   It is obvious that no service could possibly have been
    effected prior to March 24, 2003 regarding the second amended
27  complaint since no summons was issued until that date (#43).

28                              5

1     Additionally, dismissal is sought as to all individual
2   defendants on the grounds that the complaint fails to state a
3   viable claim for relief as to them and that they enjoy absolute
4   or qualified immunity from suit.  Also, this Court lacks personal
5   jurisdiction as to defendant Nancy Bailey.[3]

6     In addition to the dismissal of the individual defendants on
7   various grounds, this motion seeks dismissal of the named
8   "institutional" defendants on multiple grounds.  Specifically, it
9   is argued that the Federal Tort Claims Act (FTCA) claims are
10  barred by the statute of limitations, no other remaining claims
11  are viable against any of the remaining institutional defendants,
12  and this Court lacks subject matter jurisdiction over such non-
13  existent claims.

14    Alternatively, summary judgment is sought against Conlon
15  with respect to all claims alleged against all defendants,
16  individual and institutional.  The original declarations of Kevin
17  Lowey, Pat Foy, Thomas Collins, Nancy Bailey, and Greg Addington
18  were previously submitted to the Court in connection with the
19  previous dispositive motion (#15).  For the Court's convenience,
20  copies of those declarations are attached to the Statement of
21  Undisputed Material Facts, filed and served herewith.

22
23
24
25  _____

26        [3]     These defendants must assert all of these grounds for
    dismissal in this motion in order to avoid waiver of such
27  defenses under Rule 12(h), Fed.R.Civ.P.

28                                  6

1 | II. INTRODUCTION

2 | Conlon was sentenced to a term of imprisonment in 1986 for
3 | narcotics offenses. He was paroled at various times and his
4 | parole was revoked by the U.S. Parole Commission for parole
5 | violations. During one of those paroles in late 1997 and early
6 | 1998, he was briefly supervised by U.S. Probation Officer Kevin
7 | Lowry. That parole was revoked by the U.S. Parole Commission on
8 | account of parole violations. He was again released on parole in
9 | late 1999. The parole certificate in late 1999 directed Conlon
10 | to report to the probation office in the Western District of
11 | Texas within 72 hours. Conlon told his BOP case manager that he
12 | (Conlon) wanted to report to the District of Nevada. Conlon did
13 | not, however, report to either probation office (Texas or Nevada)
14 | and, accordingly, a recommendation was made to the U.S. Parole
15 | Commission to again revoke parole. A warrant of arrest was
16 | issued and Conlon was eventually apprehended and returned to
17 | custody. As matters progressed, Conlon initiated habeas corpus
18 | proceedings in the District of Arizona (where he was
19 | incarcerated), claiming that he had been incarcerated too long on
20 | account of irregularities in the computation of his sentence
21 | following parole revocation. Those proceedings resulted in the
22 | August 27, 2001 Order which is attached to the complaint as
23 | exhibit 1. The order directed that Conlon be released without
24 | further parole no later than August 31, 2001.

25 | Based on the allegations of the second amended complaint,
26 | Conlon seeks recovery of damages against various defendants,

27 |

28 | 7

1 | asserting claims under the Federal Tort Claims Act (FTCA), as
2 | well as under the Constitution (based on Bivens) and 42 U.S.C.,
3 | section 1985.

4 | The named defendants include six "institutional" defendants.
5 | They are (1) the United States, (2) the U.S. Department of
6 | Justice, (3) The Bureau of Prisons, (4) the U.S. Parole
7 | Commission, (5) the U.S. Probation Office, and (6) the U.S.
8 | Sentencing Commission. As discussed below, the United States is
9 | the only proper party to an FTCA claim and the FTCA claim is
10 | untimely and must be dismissed. The remaining institutional
11 | defendants must be dismissed from all claims because no viable
12 | claim is asserted as to such defendants.

13 | Conlon also names seven "individual" defendants. They are
14 | (1) Attorney General John Ashcroft, (2) Nancy Bailey (former
15 | warden at the BOP Safford, Arizona facility), (3) John Simpson
16 | (U.S. Parole Commissioner), and four U.S. Probation Officers
17 | (Kevin Lowry, Pat Foy, Thomas Collins, and John Lawhead). As
18 | discussed below, all of these defendants must be dismissed
19 | because they enjoy absolute or qualified immunity from suit, this
20 | Court lacks personal jurisdiction as to some of them, there has
21 | been insufficient service of process as to all of them, and the
22 | complaint fails to state a viable claim for relief as to any of
23 | them.

24 | To the extent any claims survive the motions for dismissal,
25 | summary judgment is sought as to any remaining defendants on the
26 | grounds that no viable claim can be maintained by Conlon based on
27 |
28 |                                   8

1   the facts established through the attached declarations and
2   evidentiary materials.

3

4   III. THE DEFENDANTS

5       The allegations of the second amended complaint betray a
6   fundamental misunderstanding of the roles which are played by the
7   various agencies in the computation of criminal sentences, the
8   decisions which are made concerning parole for "old law"
9   offenders, and the fixing of release dates for federal prisoners.
10  Because an understanding of these roles is important to an
11  understanding of each defendant's conduct, the following brief
12  discussion is provided regarding these agencies and their
13  functions.

14      The United States Parole Commission is a federal agency that
15  has jurisdiction, _inter alia_, over federal prisoners who
16  committed their offenses prior to November 1, 1987.  Such
17  prisoners are referred to as "old law" federal prisoners in
18  contrast to "new law" federal prisoners who committed their
19  offenses after November 1, 1987, are sentenced under the
20  Sentencing Reform Act, are not eligible for parole, and are not
21  under the Commission's jurisdiction.  See 18 USC, sections 4201-
22  4218; 28 CFR, sections 2.1-2.66.[4]  The parole Commission is made
23  up of Parole Commissioners who are appointed by the President and
24  approved by the Senate.  The Commissioners make parole decisions

25

26  _____
      [4]  Sections 4201-4218 of Title 18, USC, have been repealed
27  but remain in effect for old law prisoners.

28                              9

1 | for the individuals under the Commission's jurisdiction. Those
2 | decisions include decisions to grant or deny parole to prisoners,
3 | to revoke the parole for parolees, and to revoke the mandatory
4 | release of mandatory releasees. When the Parole Commission
5 | denies a prisoner release on parole, the prisoner is released by
6 | the Bureau of Prisons via mandatory release based on good time
7 | credits. Mandatory releasees are under the Parole Commission's
8 | jurisdiction upon their release as if they had been released on
9 | parole; the only difference between a parolee and a mandatory
10 | releasee is that the mandatory releasee's sentence terminates 180
11 | days before his full term date (his "180-day date") unless his
12 | mandatory release is revoked prior to that date. See 18 USC,
13 | sections 4163-64. Only a Parole Commissioner (not a staff person
14 | or a probation officer) has the authority to order a prisoner
15 | released on parole, issue a warrant, or revoke parole or
16 | mandatory release.

17 | U.S. Probation Officers are employees of the federal
18 | district court. However, they also work for the Parole
19 | Commission when they supervise parolees, special parolees, and
20 | mandatory releasees who are under the Commission's jurisdiction.
21 | U.S. Probation Officers are responsible for reporting to the
22 | Commission and making recommendations to the Commission.

23 | The Bureau of Prisons is the federal agency that is charged
24 | with housing federal inmates and computing their release dates.
25 | The computation of an old law prisoner's release date is first
26 | based on the judgment and commitment order but may also be

27 |

28 | 10

1 | affected by subsequent orders of the Parole Commission revoking
2 | the person's parole and/or ordering forfeited certain period of
3 | time spent on parole.

4 | If the Parole Commission revokes the parole of a parolee or
5 | the mandatory release of a mandatory releasee and orders the
6 | individual to serve a term of incarceration, he is returned to
7 | the Bureau of Prisons to serve the term.  The Bureau of Prisons
8 | does not make the revocation decision; rather, it houses the
9 | revoked parolee or mandatory releasee for the period of time
10 | ordered by the Commission and it recalculates the person's
11 | release date based on the Parole Commission's order (which is
12 | called a "Notice of Action").

13 | The U.S. Sentencing Commission was created by the Sentencing
14 | Reform Act in 1984.  The Sentencing Commission is an independent
15 | federal agency in the judicial branch of government.  It is
16 | comprised of seven voting members who are appointed by the
17 | President and confirmed by the Senate.  The Sentencing
18 | Commission's duties include developing guidelines for sentencing
19 | in federal courts, collecting data about crime and sentencing,
20 | and serving as a resource to Congress, the Executive Branch, and
21 | the Judiciary on crime and sentencing policy.  The Sentencing
22 | Commission does not compute the sentences of individual federal
23 | offenders.

24 | Defendant John Ashcroft is the Attorney General of the
25 | United States.  Other than being named in the caption of the
26 | complaint and identified in paragraph 3 of the complaint, he is

27 |

28 | 11

1  nowhere mentioned in the complaint and no factual allegations are
2  made against him.

3  Defendant John Simpson is a U.S. Parole Commissioner. Other
4  than being named in the caption of the complaint and identified
5  in paragraph 9 of the complaint, he is nowhere mentioned in the
6  complaint and there are no factual allegations made against him.

7  Defendant Nancy Bailey is the former warden of the Safford,
8  Arizona corrections facility which housed Conlon during his
9  federal custody. It appears as though the Fifth Claim for Relief
10 (False Imprisonment) and Sixth Claim for Relief (Cruel and
11 Unusual Imprisonment) are specifically directed against defendant
12 Bailey.

13 Defendants Lowry, Foy, Collins, and Lawhead are U.S.
14 Probation Officers (Lawhead is now retired) in Nevada. Their
15 respective roles in the supervision of Conlon's parole are
16 described in the declarations attached hereto. It should be
17 noted that, as to defendant Collins, he is named in the caption
18 of the complaint and identified in paragraph 6 of the complaint.
19 He is referred to again in paragraph 79 with a conclusory
20 allegation that he "conspired" with others to violate Conlon's
21 Constitutional rights. He is nowhere else mentioned in the
22 complaint and there are no factual allegations made against him.

23

24 IV.  STATEMENT OF FACTS

25 See Statement of Undisputed Materials Facts, filed and
26 served herewith.

27

28                                    12

1

2  V.  ARGUMENT

3       A.  This Action Should Be Dismissed on Multiple Grounds.

4  i.  The Institutional Defendants Are Improper Parties To An
   Action Under the Constitution or Under 42 USC, Section 1985.

5       Conlon brings his action against these defendants under 42

6  USC, section 1985(3) as well as various provisions of the U.S.

7  Constitution.  It is well settled, however, that section 1985, by

8  its own terms, imposes liability only upon "persons" as that term

9  is defined.  Federal agencies are not "persons" as that term is

10  used in section 1985.  See Monell v. Dept. of Social Services,

11  436 U.S. 658 (1978)(holding that only local governmental agencies

12  are "persons" within the meaning of section 1983).

13       Likewise, these federal institutional defendants may not be

14  sued under section 1985 or under the Constitutional theories of

15  tort liability because a federal agency may not be sued in its

16  own name unless Congress has specifically authorized such suit in

17  legislation containing explicit authorizing language.  See

18  Blackmar v. Guerre, 342 U.S. 512 (1952)(government agency may not

19  be sued eo nomine without explicit authorizing statute).

20       A suit for damages against a federal agency (and against a

21  federal official in his or her official capacity) is essentially

22  a suit against the United States.  See Brandon v. Holt, 469 U.S.

23  464, 471-73 (1985); Lehner v. United States, 685 F.2d 1187, 1189

24  (9th Cir. 1982), cert. denied, 460 U.S. 1039 (1983);  Gilbert v.

25  DaGorssa, 756 F.2d 1455, 1458 (9th Cir. 1985);  Daly-Murphy, 837

26  F.2d at 355.  The United States, as sovereign, is immune from

27

28                              13

1 | suit except as it consents to be sued.  See Lehman v. Nakshian,
2 | 453 U.S. 156, 160 (1981).  Thus, a damages claim against a
3 | federal agency (or a federal official in his or her official
4 | capacity) must be dismissed on the ground of sovereign immunity
5 | if the United States has not consented to be sued for damages
6 | regarding the claim.  See Ross v. United States, 574 F. Supp.
7 | 536, 540-41 (S.D.N.Y. 1983); Safeway Portland Employees' Federal
8 | Credit Union v. FDIC, 506 F.2d 1213 (9th Cir. 1974).  In this
9 | instance, Conlon has explicitly based some of his damages claims
10 | on the Constitution and on a statute which does not impose
11 | liability on federal agencies.

12 | Constitutional tort actions are not maintainable against the
13 | United States and thus are not maintainable against federal
14 | agencies.  See Jaffee v. United States, 592 F.2d 712, 717 (3d
15 | Cir. 1979) (FTCA does not authorize suits against the United
16 | States based on a constitutional tort theory); Boda v. United
17 | States, 698 F.2d 1174, 1176 (11th Cir. 1983)(constitutional torts
18 | are barred by sovereign immunity, and the court lacks
19 | jurisdiction to consider such a claim).  Thus, neither the United
20 | States nor its agencies is subject to suits based on
21 | constitutional tort.  See Daly-Murphy, 820 F.2d at 1478;
22 | Arnsberg v. United States, 757 F.2d 971, 980 (9th Cir. 1985),
23 | cert. denied, 475 U.S. 1010 (1986) (Bivens does not provide a
24 | means of cutting through the sovereign immunity of the United
25 | States).  Therefore, insofar as Conlon's claims against the
26 | institutional defendants are construed (as they are plainly

27 |

28 |                                14

1 | alleged) to be a constitutional cause of action, the suit is
2 | barred by sovereign immunity and must be dismissed as to them.

3

4 | ii.  Other than Against the United States, no FTCA Claim May Be
Maintained Against Any of the Defendants.

5

6 | Sovereign immunity bars all suits against the United States
and its agencies/employees except in accordance with the explicit

7 | terms of the statutory waiver of such immunity.  Cox v. Secretary

8 | of Labor, 739 Supp. 28, 30 (D.D.C. 1990); Kline v. Republic of El

9 | Salvador, 603 F.Supp. 1313, 1316 (D.D.C. 1985); see also United

10 | States v. Testan, 424 U.S. 392, 399 (1976); United States v.

11 | Mitchell, 445 U.S. 535, 538 (1980).  The FTCA, 28 U.S.C.,

12 | sections 2671-ff, specifically sets forth the exclusive judicial

13 | remedy provided to persons who are damaged by tortious conduct

14 | committed by federal employees or agencies, together with the

15 | conditions under which the remedy may be invoked. 28 U.S.C.,

16 | section 2679(b).

17

18 | One such condition is contained in 28 U.S.C., section
2679(a), which provides that only the United States is a proper

19 | defendant to such a suit, not individual federal agencies or

20 | employees. Section 2679(b)(1) specifically provides that "[a]ny

21 | other civil action ... against the employee or the employee's

22 | estate is precluded..."   It is thus clear that, under the FTCA,

23 | only the United States is a proper defendant to a suit for money

24 | damages and no damages action can be maintained against the

25 | particular federal agency or federal employee.  28 U.S.C.,

26 | section 2679(a) and (b).  Allen v. Veteran's Administration, 749

27

28 | 15

1    F.2d 1386, 1388 (9th Cir. 1984) ("The Federal Tort Claims Act

2    provides that the United States is the sole party which may be

3    sued for personal injuries arising out of the negligence of its

4    employees. 28 U.S.C., sections 1346(b), 2679(a). Individual

5    agencies may not be sued."); Galvin v. OSHA, 860 F.2d 181, 183

6    (5th Cir. 1988)("an FTCA claim against a federal agency or

7    employer as opposed to the United States itself must be dismissed

8    for want of jurisdiction"); Stewart v. United States, 655 F.2d

9    741 (7th Cir. 1981)(dismissing FTCA action brought against U.S.

10    Postal Service and postal employee driver); Hagmeyer v.

11    Department of Treasury, 647 F.Supp. 1300, 1304-05

12    (D.D.C.)(dismissing FTCA claim against the Department of the

13    Treasury); Cox v. Secretary of Labor, 739 F.Supp. at 29 (suit

14    against the secretary of Labor rather than the government itself

15    must be dismissed for lack of subject matter jurisdiction). See

16    also Cooper v. U.S. Postal Service, 740 F.2d 714 (9th Cir. 1984);

17    Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1188

18    (9th Cir. 1998). "[T]he courts have consistently held that an

19    agency or government employee can not be sued eo nomine under the

20    Federal Tort Claims Act." Galvin v. OSHA, 860 F.2d at 183.

21       Here, Conlon explicitly states that he is alleging (among

22    other things) an FTCA cause of action. The United States is the

23    only proper defendant in such an action and all other defendants

24    (institutional and individual) must be dismissed from the FTCA

25    claims. See Gregory v. Mitchell, 634 F.2d 199 (5th Cir. 1981).

26

27

28                      16

1  <u>iii</u>.   The FTCA Action Against the United States is Untimely.

2       Conlon specifically invokes the Court's jurisdiction for his

3  claims against the United States (as a discrete defendant) under

4  the Federal Tort Claims Act (FTCA).   It is the defendants'

5  position that the United States is the only proper defendant in

6  this entire action and that all other defendants must be

7  dismissed.   The FTCA claim against the United States, however, is

8  untimely and must be dismissed.   The FTCA claim is untimely

9  because Conlon did not file a timely administrative tort claim, a

10 jurisdictional prerequisite under the FTCA.

11      Conlon claims that he was falsely arrested, based on an

12 improper calculation of his parole status, in February 1998 and

13 was thereafter imprisoned unlawfully.   <u>See</u> Second Amended

14 Complaint, paras. 20-23.   Plaintiff has attached to his second

15 amended complaint (as exhibit A) various letters acknowledging

16 receipt of administrative tort claims submitted by plaintiff in

17 July 2001.   Any FTCA action based on those administrative tort

18 claims would be barred because the claims are untimely.

19      There is a two-year limitations period for submission of the

20 required administrative claim under the FTCA.   28 USC, section

21 2401(b); <u>Davis v. United States</u>, 642 F.2d 328, 330 (9th Cir.

22 1981), <em>cert. denied</em>, 455 U.S. 919 (1982).   The date on which a

23 claim accrues is determined by federal law. <u>Washington v. United</u>

24 <u>States</u>, 769 F.2d 1436, 1438 (9th Cir. 1985).   Here, the alleged

25 tort (false arrest) occurred in February 1998 and his damages

26 began to accumulate on that date.   All of his alleged damages

27

28                                    17

1   arise from the single event (arrest) which occurred in February
2   1998.  Accordingly, the administrative claims filed in July 2001
3   were untimely and can not provide the jurisdictional basis for an
4   FTCA cause of action.

5       Conlon may attempt to salvage his proposed FTCA claim by
6   arguing that he was subjected to a continuing tort which
7   effectively tolled the statute of limitations until he was
8   released from prison.  Such an argument would fail.  For a
9   continuing violation to be established, there must be a series of
10   tortious acts one or more of which falls within the limitations
11   period. Western Center for Journalism v. Cederquist, 235 F.3d
12   1153, 1157 (9th Cir. 2000).  A continuing violation is occasioned
13   by continual unlawful acts rather than by the continual ill
14   effects from an original violation. Ward v. Caulk, 650 F.2d 1144
15   (9th Cir. 1981).  Assuming that a tort was committed in February
16   1998 (or earlier) when plaintiff was arrested, the tort was
17   completed at that time and plaintiff was required to submit an
18   administrative claim within two years thereafter in order to
19   support a viable FTCA claim.

20       In Sandutch v. Muroski, 684 F.2d 252 (3rd Cir. 1982), the
21   Third Circuit rejected the notion that a continuing incarceration
22   was a continuing tort.  In the absence of allegations of unlawful
23   acts while incarcerated, the continuing incarceration was simply
24   the continuing ill effects from the initial tortious conduct
25   which resulted in the incarceration. Id. at 254.  The same result
26   was reached in Maslauskas v. United States, 583 F.Supp. 349

27

28                          18

(D.Mass. 1984)(FTCA suit untimely based on negligence of Parole Commission-incarceration was not continuing violation).

Accordingly, the FTCA claim against the United States must be dismissed for lack of subject matter jurisdictioon.

iv. Defendants Simpson, Lawhead, Lowry, Foy, and Collins Should Be Dismissed Based on Absolute Immunity.

Conlon sues defendants Simpson, Lawhead, Lowry, Foy, and Collins in both their individual and official capacities. They may properly claim immunity from suit in their individual capacities for their actions.

First, the Court lacks subject-matter jurisdiction over defendants Simpson, Lawhead, Lowry, Foy, and Collins because they may properly claim absolute immunity from suit for their actions. In order to protect them from harassment and to allow them to perform their duties, government officials are entitled to claim an appropriate form of immunity from suits for damages. See Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982). Parole officials, including Regional Commissioners, are absolutely immune from suit for their decision-making. See Fendler v. U.S. Parole Com'n, 774 F.2d 975, 979-80 (9th Cir. 1985); Walrath v. United States, 35 F.3d 277 (7th Cir. 1994); Anderson v. Boyd, 714 F.2d 906 (9th Cir. 1983); Sellars v. Procunier, 641 F.2d 1295, 1298 (9th Cir. 1981), cert. denied, 454 U.S. 1102 (1981); Walker v. Prisoner Review Board, 769 F.2d 396, 398 (7th Cir. 1985), cert. denied, 474 U.S. 1065 (1986). This firmly established immunity is based upon the quasi-judicial nature of parole decisions and the threat

19

1   that retaliatory suits will undermine independent decision-

2   making.  Like judges, parole officials must,

3               render impartial decisions in cases and
               controversies that excite strong feelings
4               because the litigant's liberty is at stake.
               *** Just as the decision-making process of
5               judges must be kept free from fear, so must
               that of parole board officials.  Without this
6               protection, there is the same danger that the
               decision-maker might not impartially
7               adjudicate the often difficult cases that
               come before them.

8

9   Sellars, 641 F.2d at 1303.  Thus, U.S. Parole Commissioner John

10  R. Simpson is absolutely immune from suit for his actions of

11  issuing warrants and revoking parole and mandatory release terms.

12      Other parole officials who participate in quasi-judicial

13  functions are also entitled to absolute immunity from suit.  See

14  Cleavinger v. Saxner, 474 U.S. 193, 204 (1985);  Fry v.

15  Malaragno, 939 F.2d 832, 837 (9th Cir. 1991); Sellars, 641 F.2d

16  at 1295;  Anderson, 714 F.2d at 908-09 (parole officials are

17  entitled to absolute quasi-judicial immunity for the execution of

18  parole revocation proceedings).  Thus, absolute immunity is not

19  limited to the parole decision-makers, but extends to the staff

20  employees who assist the Commissioners in their responsibilities.

21  See Cleavinger, 474 U.S. at 200 ("With this judicial immunity

22  firmly established, the Court has extended absolute immunity to

23  certain others who perform functions closely associated with the

24  judicial process. The federal hearing examiner and administrative

25  law judge have been afforded absolute immunity.");  Allison v.

26  California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969).

27

28                                  20

1 It is immaterial whether the act complained of occurred before,

2 during, or after a parole hearing.  What matters for immunity

3 purposes is that the act is "entwined with the exercise ... of

4 quasi-judicial power." Anderson, 714 F.2d at 909.

5 Defendants Lawhead, Lowry, Foy, and Collins are (or were)

6 U.S. Probation Officers. Their recommendations to the U.S. Parole

7 Commission are an intricate part of the parole adjudicatory

8 process.  On that basis, they are entitled to absolute immunity

9 for their alleged actions of submitting a violation report and

10 request for a warrant to the Parole Commission in 1998 and

11 notifying the Commission in 2000 of petitioner's failure to

12 report for supervision.  Federal probation officers are entitled

13 to absolute immunity for quasi-prosecutorial functions of

14 initiating parole revocation proceedings, which are an intricate

15 part of the parole adjudicatory process.  See Briscoe v. LaHue,

16 460 U.S. 325, 335 (1983)(police officer testifying in a criminal

17 trial granted absolute immunity); Imbler v. Pachtman, 424 U.S.

18 409 (1976);  Fry, 939 F.2d at 836-37 (actions of IRS attorneys in

19 initiating a prosecution and prosecuting plaintiffs was

20 intimately connected to the judicial process, and therefore suit

21 on those actions was barred by absolute immunity);  Thompson v.

22 Duke, 882 F.2d 1180, 1184-85 (7th Cir. 1989); Meyers v. Contra

23 Costa Dep't of Social Services, 812 F.2d 1154 (9th Cir. 1987);

24 Johnson v. Kelsh, 664 F.Supp. 162 (S.D.N.Y. 1987)(parole officer

25 who initiates revocation process entitled to absolute immunity

26

27

28                                21

1  because role is comparable to that of a prosecutor in a criminal

2  trial).

3      Thus, because their alleged actions of submitting a

4  violation report and request for a warrant to the Parole

5  Commission in 1998 and for notifying the Commission in 2000 of

6  petitioner's failure to report for supervision were "entwined

7  with the exercise ... of quasi-judicial power," defendants

8  Lawhead, Lowry, Foy, and Collins are also entitled to absolute

9  immunity from suit. Anderson, 714 F.2d at 909.

10     Accordingly, defendants Simpson, Lawhead, Foy, Collins, and

11 Lowry must be dismissed from this action for lack of subject

12 matter jurisdiction and failure to state a claim against for

13 which relief may be granted.

14

15 v.  Defendants Lawhead, Foy, Simpson, Collins, Lowry, and Bailey
   Should Be Dismissed on the Grounds of Qualified Immunity.

16

17     In any event, if they are not entitled to absolute immunity,

   defendants Simpson, Lawhead, Lowry, Foy, and Collins are entitled
18
   to qualified immunity, pursuant to Anderson v. Creighton, 483
19
   U.S. 635 (1987); Davis v. Scherer, 468 U.S. 183, 191 (1984), and
20
   Harlow, 457 U.S. at 806; Siegert v. Gilley, 111 S.Ct. 1789
21
   (1991);  Gomez v. Toledo, 446 U.S. 635 (1960)).  Likewise, Nancy
22
   Bailey (former warden of the BOP facility in Safford, Arizona) is
23
   entitled to qualified immunity.
24
       Qualified immunity, pursuant to the Supreme Court's decision
25
   in Harlow, 457 U.S. 800, permits federal employees to be subject
26
   to suit for actions taken in the course of their employment only
27

28                                22

1  if their conduct violates "clearly established statutory or
2  constitutional rights of which a reasonable person would have
3  known."   457 U.S. at 818.   See Anderson, 483 U.S. at 639-40;
4  Capoeman v. Reed, 754 F.2d 1512 (9th Cir. 1985)(discussing
5  "clearly established" requirement).   Whether an official
6  protected by qualified immunity may be held personally liable for
7  an alleged unlawful official action generally turns on the
8  "objective legal reasonableness" of the official's action.
9  Anderson, 483 U.S. at 639.   An official is entitled to prompt
10  dismissal based on this defense if the complaint fails to plead a
11  violation of established law.   See Harlow, 457 U.S. at 818;
12  Mitchell v. Forsyth, 472 U.S. 511 (1985); Fendler, 774 F.2d at
13  980; Arnsberg, 757 F.2d at 981.

14      If the Court concludes that defendants Simpson, Lawhead,
15  Lowry, Foy, and Collins are not entitled to absolute immunity for
16  their alleged actions (as discussed in section iv, above), they
17  certainly are entitled to qualified immunity (as is defendant
18  Bailey).   All of their alleged actions were taken in the course
19  of their federal employment and their actions did not violate any
20  clearly established constitutional or statutory right of which a
21  reasonable person would have known.   See Fendler, 774 F.2d at
22  980.   It is plain from the face of plaintiff's second amended
23  complaint that the actions of these individual defendants were
24  taken in their official capacities as a U.S. Parole Commissioner,
25  U.S. Probation Officers, or as a federal prison warden.
26  Therefore, they can be deprived of the defense of qualified

27

28                              23

1   immunity only if the complaint alleges facts that, if true, would

2   constitute a clear invasion of a constitutional or statutory

3   right secured to federal parolees.   See Mitchell, 472 U.S. at

4   528.

5        In this case, the conduct of defendants Simpson, Lawhead,

6   Lowry, Foy, and Collins did not violate clearly established

7   statutory or constitutional rights of which a reasonable person

8   would have known.  Even assuming that the reports given to the

9   Parole Commission by the U.S. Probation Office were erroneous,

10  Conlon has no constitutional protection against having an

11  erroneous report filed with the Parole Commission by his U.S.

12  Probation Officer. Even if his 2000 special parole certificate

13  listed the Western District of Texas as his district of

14  supervision, petitioner has no constitutional protection against

15  having the District of Nevada (where he had told the Bureau of

16  Prisons he intended to go) notify the Parole Commission that he

17  had failed to report for supervision in either the Western

18  District of Texas or the District of Nevada.  A U.S. Probation

19  Officer is obliged to report to the Commission.  See 28 C.F.R. §

20  2.42.  The Constitution only provides protection at the stage of

21  a hearing if such a report results in the parolee's arrest as a

22  parole violator.  See Morrissey v. Brewer, 408 U.S. 471 (1971).

23  A constitutional violation occurs if an arrested parolee receives

24  no hearing to contest the truth of the report that caused his

25  arrest.  Conlon does not claim that he was not given a revocation

26  hearing after he was taken into custody in 1998 under the Parole

27

28                              24

1  Commission's warrant.  The record shows that Conlon was provided
2  with a preliminary interview and a parole revocation hearing in
3  1998 (Exhibits 6 & 7), and that he was provided with due process
4  before, at, and after the hearing.  See 18 U.S.C. § 4214 (setting
5  out due process rights for parole revocation) and § 4215
6  (administrative appeal right).  He was also given a preliminary
7  interview in 2000 (Exhibit 18), prior to his release by Judge
8  Browning's court order (Exhibit 20).

9      It is apparent, as well, that the Bureau of Prisons
10  correctly computed Conlon's sentence and release date based on
11  the orders and rulings of the U.S. Parole Commission, as BOP is
12  required to do.[5]

13      Accordingly, there is no "established law" which these
14  defendants may be said to have violated.  See Fendler, 774 F.2d
15  at 980 (plaintiff "has not alleged a violation of a clearly
16  established constitutional right.").  Since these defendants can
17  be deprived of the defense of qualified immunity only if the
18  complaint alleges facts that, if true, would constitute a clear
19  invasion of a constitutional or statutory right secured to
20  federal parolees in existing case law, they are entitled to the
21  prompt dismissal or entry of summary judgment in this case.  See
22  Harlow, 457 U.S. 800; Schultz v. Sundberg, 759 F.2d 714, 717-18
23  (9th Cir. 1985) (the decision in Harlow "was motivated by a

---

25      [5]  It should also be noted that defendant Bailey does not
      personally compute inmate sentences and release dates(and did not
26  compute Conlon's).  As discussed below, she can not be held
      personally liable for damages on account of the errors of her
27  subordinates (if there were any such errors).

28                                    25

desire to allow for more expeditious disposition of suits against

government officials on summary judgment.").


vi.  The Claims Against Defendants Lawhead, Collins, and Bailey
Must Be Dismissed For failure to State a Claim.

Conlon's claim against defendants Lawhead, Collins, and

Bailey should be dismissed for failure to state a claim under

Rule 12(b)(6).

Neither Collins, Lawhead, nor Bailey had any direct role or

participation in Conlon's parole, incarceration, or sentencing

computation.  Each of them functioned as supervisors in their

respective organizations and are being sued for the alleged mis-

conduct of their subordinates.  Conlon must allege and prove that

these defendants personally participated in or directed the

alleged unconstitutional actions of which he complains.  See

Watts v. Morgan, 572 F. Supp. 1385, 1392 (N.D. Ill. 1983)(claim

of constitutional injury based on a theory of vicarious liability

not actionable under § 1983).  These supervisory defendants may

not be held vicariously liable for the action of their

subordinates.  See Terrell v. Brewer, 935 F.2d 1015, 1018 (9th

Cir. 1991);  Boettger v. Moore, 483 F.2d 86, 87 (9th Cir.

1973)(higher government officials are not liable under the

doctrine of respondeat superior for lower officials because both

are employees of the government, and higher officials are not the

employers of the lower officials);  Adams v. Pate, 445 F.2d 105,

107 (7th Cir. 1971)(respondeat superior inapplicable where money

damages are sought).  See Rizzo v. Goode, 423 U.S. 362 (1976);

26

1 | <u>Sportique Fashions, Inc. v. Sullivan</u>, 597 F.2d 664, 666 (9th Cir.

2 | 1979); <u>Kulow v. Nix</u>, 28 F.3d 855 (8th Cir. 1994).

3 |  Therefore, to the extent that Conlon's claims against these

4 | defendants is based on the doctrine of respondeat superior, they

5 | should be dismissed for failure to state a claim.

6 |

7 | <u>vii</u>.   Conlon Has Failed to State a Claim Against Defendants

  Simpson, Ashcroft, and Collins.

8 |

9 |  Conlon has also failed to state a claim against defendants

  Simpson, Ashcroft, and Collins because he does not make any

10 | specific allegations regarding what unlawful actions were taken

11 | by any of these defendants.  Damage actions against government

12 | officials are subject to a heightened pleading standard, and,

13 | under that standard, Conlon has failed to state a claim against

14 | these defendants.  Even without a heightened pleading standard,

15 | the complaint is utterly silent regarding any conduct personally

16 | undertaken by these defendants against Conlon.  See <u>Siegert</u>, 111

17 | S.Ct at 1793 (plaintiff failed "to establish the violation of any

18 | constitutional right at all."); <u>Smith</u>, 807 F.2d at 200 ("Bare

19 | allegations of improper purpose . . . do not suffice to drag

20 | officials into the mire of discovery.").

21 |  As to defendant Simpson, he is identified in the caption of

22 | the complaint and (correctly) identified as a U.S. Parole

23 | Commissioner in paragraph 9 of the complaint.  His name appears

24 | nowhere else in the complaint.

25 |  As to defendant Ashcroft, he is identified in the caption of

26 | the complaint and (correctly) identified as the United States

27 |

28 |          27

Attorney General in paragraph 3 of the complaint.  His name appears nowhere else in the complaint.[6]

As to defendant Collins, he is identified in the caption of the complaint and (correctly) identified as a U.S. Probation Officer in paragraph 6 of the complaint.  There is a conclusory allegation at paragraph 79 that he "conspired" with others to deprive Conlon of various Constitutional rights (with no description of what Collins allegedly did in furtherance of this conspiracy).  His name appears nowhere else in the complaint.

Since there are no claims stated against these defendants, they must be dismissed.

viii.  Conlon's claims against all individual defendants should be dismissed for his failure to serve them with the summons and complaint.

A federal court must obtain personal jurisdiction over the defendant before it can issue a binding judgment in a suit where plaintiff seeks money damages from the defendant. In the absence of technically correct service of process, the court has no jurisdiction to render a personal judgment.  Moskovits v. DEA, 774 F.Supp. 649 (D.D.C. 1991).  Actual notice by the defendant is not sufficient and does not substitute for compliance with the personal service requirement in accordance with the applicable rule. Moskovits, id.; DeFazio v. Delta Air Lines, 849 F.Supp. 98 (D.Mass. 1994).

_____

[6]  It is rather unlikely that John Ashcroft would have had any direct involvement in Conlon's parole status from 1997 through 2000.  At that time, Ashcroft was a U.S. Senator.

1    The requirement of personal service is no less firm in so-
2  called <u>Bivens</u> actions brought against federal employees for
3  Constitutional torts.[7]   In order to maintain such an action,
4  which seeks recovery of money damages from the individual
5  employee's personal assets, proper service must be effected on
6  the defendant employee. <u>Daly-Murphy v. Winston</u>, 837 F.2d 348, 355
7  (9th Cir. 1987)("failure to effect individual service is fatal to
8  a Bivens action"); <u>Despain v. Salt Lake Area Gang Unit</u>, 13 F.3d
9  1436 (10th Cir. 1994); <u>Tajeddini v.Gluch</u>, 942 F.Supp. 772
10  (D.Conn. 1996); <u>Huskey v. Quinlan</u>, 785 F.Supp. 4 (D.D.C.
11  1992)(dismissing Bivens case for failing to serve defendant).

12    A federal court may only use those methods of service
13  authorized by rule or statute. <u>Omni Capital International Ltd. v.</u>
14  <u>Rudolff Wolff & Co.</u>, 484 U.S. 97, 104-08 91987). In the present
15  context, the provisions of Rule 4, Fed.R.Civ.P., describe the
16  required service of process which must be effected.

17    Prior to the 2000 amendments to Rule 4, there was
18  substantial disagreement among the Circuit Courts concerning the
19  issue of whether institutional service on the United States (in
20  addition to individual service on the individual defendant)   was
21  required in Bivens actions against individual federal employees.
22  See <u>Vaccaro v. Dobre</u>, 81 F.3d 854 (9th Cir. 1996)(not required);

23

24    [7]    To state a <u>Bivens</u> claim, a plaintiff must allege
25         facts showing that a person acting under color of
        federal law deprived the plaintiff of a right,
26         privilege, or immunity secured by the U.S.
        Constitution. <u>Bivens v. Six Unknown Named Agents</u>, 403
27         U.S. 388, 397 (1981).

28                              29

1 | <u>Armstrong v. Sears</u>, 33 F.3d 182 (2d Cir. 1994)(not required);
2 | <u>Light v. Wolf</u>, 816 F.2d 746 (D.C.Cir. 1987)(required);
3 | <u>Ecclesiastical Order of Ism of Am v. Chasin</u>, 845 F.2d 113 (6th
4 | Cir. 1988)(required).  The 2000 amendments to Rule 4 put this
5 | issue to rest by adding Rule 4(i)(2)(B), specifically addressing
6 | the service requirement in suits against federal employees sued
7 | in their individual capacities for acts or omissions occurring in
8 | connection with their official duties.  The rule makes plain that
9 | service upon the individual is required (by means specified) and
10 | service upon the United States is required.  <u>See</u> Advisory
11 | Committee Notes, Rule 4 (2000 amendments).

12 | Service upon the United States is effected by (1) delivery
13 | of the summons and complaint to the U.S. Attorney or designated
14 | official in the U.S. Attorney's Office <u>or</u> by mailing a copy of
15 | the summons and complaint by certified/registered mail to the
16 | U.S. Attorney's Office addressed to the "civil process clerk" <u>and</u>
17 | (2) mailing a copy of the summons and complaint by
18 | certified/registered mail to the Attorney General in Washington,
19 | D.C.  <u>See</u> Rule 4(i)(1).

20 | In addition to the delivery of the summons and complaint as
21 | set forth above, service upon the defendants must be <u>timely</u>.  In
22 | this Court's Order (#41) of March 14, 2003, Conlon was directed
23 | to file proof of <u>timely</u> service as required under Rule 4(m),
24 | Fed.R.Civ.P.  Conlon can not do so because the time period for
25 | effective service of the second amended complaint has expired
26 |
27 |
28 | <center>30</center>

1 (and, in fact, expired before any summons was issued on the
2 second amended complaint).

3     In 1983, in view of a host of cases which were sitting
4 unserved and moribund on various court dockets, Rule 4 of the
5 Federal Rules of Civil procedure was amended to motivate
6 plaintiffs to secure timely service of their actions.  Rule 4(m)
7 provides that a complaint must be served, in the absence of good
8 cause otherwise shown, within 120 days of the filing of the
9 complaint.

10     "[Rule 4(m)] sets 120 days as a presumption of unreasonable
11 and dilatory delay in service of the complaint in any civil
12 suit." Amella v. United States, 732 F.2d 711, 713 (9th Cir.
13 1984).  "The rule is intended to force parties and their
14 attorneys to be diligent in prosecuting their causes of action."
15 Wei v. State of Hawaii, 763 F.2d 370, 372 (9th Cir. 1985).  See
16 also Whale v. United States, 792 F.2d 951 (9th Cir. 1986); United
17 States ex. rel. Deloss v. Kenner General, 764 F.2d 707 (9th Cir.
18 1985); Reynolds v. United States, 782 F.2d 837 (9th Cir. 1986).
19 These cases reflect the insistence that Rule 4(m) be utilized to
20 vindicate the interests which the rule was designed to protect.

21     Conlon's second amended complaint was filed on November 19,
22 2002.  The 120-day period of time for effecting timely service
23 expired on March 19, 2003.  No summons was issued on the second
24 amended complaint until March 24, 2003.  It is, therefore,
25 impossible for Conlon to have effected timely and effective
26 service on any of the individual defendants within the time
27
28                  31

1 | provided by Rule 4(m).  Accordingly, this action should be
2 | dismissed as to each of them (as was already done as to some of
3 | them by this Court's Order (#13) entered May 24, 2002).[8]
4 |
5 | $\underline{ix}$. This Court lacks personal jurisdiction over Simpson and Bailey.

6 | Defendant U.S. Parole Commissioner John R. Simpson resides
7 | in the State of Maryland. The Court lacks personal jurisdiction
8 | over him, insofar as he is sued in his individual capacity.  He
9 | is not a resident of the State of Nevada, he performs no work in
10 | the State of Nevada, and the Court does not have jurisdiction
11 | over him just because he is a U.S. government employee. See
12 | Stafford v. Briggs, 444 U.S. 527, 544-45 (1980). Therefore,
13 | defendant Simpson should be dismissed from this action in his
14 | individual capacity.

15 | Likewise, the Court lacks personal jurisdiction over
16 | defendant Nancy Bailey. She resides in the State of New Jersey,
17 | performs no work in Nevada, and did not commit any act which
18 | would create jurisdiction in the state of Nevada.

19 | As to defendants Simpson and Bailey, the second amended
20 | complaint should be dismissed for lack of personal jurisdiction.
21 |
22 | $\underline{x}$. Conlon has failed to state a claim under 42 U.S.C. § 1985.
23 | Conlon has also failed to state a claim under 42 U.S.C. §
24 |

25 | ⁸      It would seem unlikely that Conlon would be able to
26 | show "good cause" for his failure to timely serve the second
      amended complaint when he has previously suffered a Rule 4(m)
27 | dismissal with respect to his first amended complaint.

28 |                                   32

1  1985(3) (as he alleges), because he has not shown invidious
2  class-based discrimination by any of the named defendants.  In
3  enacting section 1985, which prohibits conspiracies to deprive
4  individuals of their civil rights, Congress did not intend to
5  create a general federal tort law, i.e., an all-purpose cause of
6  action to sue for any conspiracy to violate Conlon's legal
7  rights.  To state a claim under this section, Conlon must show
8  some racial, or otherwise class-based invidiously discriminatory
9  animus.  See Burns v. County of King, 883 F.2d 819 (9th Cir.
10  1989); Bretz v. Kelman, 773 F.2d 1026, 1028-30 (9th Cir. 1985);
11  Harrison v. Springdale Water and Sewer Com'n, 780 F.2d 1422,
12  1429-30 (8th Cir. 1986).  Consequently, Conlon's claim under 42
13  U.S.C. § 1985 must be dismissed, pursuant to Rule 12(b)(6), for
14  failure to state a claim.

15

16      B. Summary Judgment Should Be Entered in Favor of the
   Defendants.
17
   Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper
18
   where the "pleadings, depositions, answers to interrogatories,
19
   and admissions on file, together with the affidavits, if any,
20
   show that there is no genuine issue as to any material fact and
21
   that the moving party is entitled to a judgment as a matter of
22
   law."  The moving party has the burden of demonstrating the
23
   absence of a genuine issue of fact for trial. Anderson v. Liberty
24
   Lobby, Inc., 477 U.S. 242, 256 (1986).  If the moving party
25
   satisfies the burden, the party opposing the motion must set
26

27

28                              33

1  forth specific facts showing that there remains a genuine issue
2  for trial. Rule 56(e), Fed.R.Civ.P.

3      A non-moving party who bears the burden of proof at trial to
4  an element essential to his case (such as plaintiff herein) must
5  make a showing sufficient to establish a genuine dispute of fact
6  with respect to the existence of that element of the case or be
7  subject to summary judgment. Celotex Corp. v. Catrett, 477 U.S.
8  317, 322 (1986). Such an issue of fact is a genuine issue if it
9  reasonably can be resolved in favor of either party. Anderson,
10 477 U.S. at 250-51. Mere disagreement or the bald assertion that
11 a genuine issue of material fact exists does not preclude the
12 entry of summary judgment. Harper v. Wallingford, 877 F.2d 728
13 (9th Cir. 1989); Famous Brands v. David Sherman Corp., 814 F.2d
14 517, 522 (8th Cir. 1987).

15     The undisputed material facts of this case are that Conlon's
16 incarceration was the result of decisions by the U.S. Parole
17 Commission and a legitimate good-faith legal dispute concerning
18 the computation of his release date. There is no basis for
19 imposition of damages against any these named defendants because
20 the allegations of negligence, discriminatory intent, intentional
21 denial of civil rights, and conspiracy to deny Conlon's civil
22 rights can not be sustained.

23     Accordingly, to the extent any claims survive the motion to
24 dismiss analyses above, summary judgment should be entered in
25 favor of the defendants and against plaintiff.

26
27
28                              34

V.   CONCLUSION

Based on the foregoing, this action should be dismissed with prejudice or, in the alternative, summary judgment should be entered in favor of the defendants and against plaintiff.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

GREG ADDINGTON
Assistant United States Attorney

35

CERTIFICATE OF SERVICE

    I certify that a copy of the foregoing MOTION TO DISMISS SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT was mailed by first-class mail, postage pre-paid, on April _____, 2003:

Wm. Patterson Cashill
410 California Avenue
Reno, NV 89509