U.S. DISTRICT COURT
DISTRICT OF NEVADA
ENTERED & SERVED

JUN 9 - 2004

FILED
04 JUN -8 PM 4: 02
BY___
LANCE S. WILSON
CLERK
___ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CV-N-01-0700-DWH (VPC)

MICHAEL J. CONLON,  )
　　　　　　Plaintiff,  )　　**ORDER**
　　　　　　　　　　 )
v.　　　　　　　　　 )
　　　　　　　　　　 )
UNITED STATES OF AMERICA,  )
　　　　　　Defendant.  )

Before the court is defendant's renewed **motion to** dismiss or in the alternative for summary judgment (#44/#62).  Plaintiff has opposed (#75)**, and** defendant has replied (#76).

## I. Factual Background[1]

On August 8, 1986, Michael J. Conlon ("**plaintiff**" or "Conlon") was sentenced by the United States District Court for the Western District of **Texas** to 12 years in prison with a special parole term of eight years to run consecutively to **the term of** imprisonment.  (Def.'s Statement of Undisputed Material Facts (#43), Ex. 12 at 1.)  **Conlon** was released on regular parole in May of 1990, with the term to expire on January 28, **1998, at** which time his special parole was to begin.  (*Id.*)  On February 12, 1998, the United States **Parole** Commission issued a warrant for Conlon's

---

[1]The factual background section was **taken in large** part from the two orders of Judge William D. Browning, Senior Judge for the United States District Court for the District of Arizona, dated November 29, 1999 and August 24, 2001, granting plaintiff's habeas **petitions.**  (*See* Def.'s Statement of Undisputed Material Facts (#43), Exs. 12, 23.)

1

arrest based on allegations that he had left his last known residence in Las Vegas and failed to advise his probation officer of his current address. (*Id.* at 1-2.) He was then arrested on the outstanding warrant on February 19, 1998. (*Id.* at 2.) On March 26, 1998, a special parole revocation hearing was held at which Conlon admitted having failed to report his change of residence. (*Id.*) As a result, the Parole Commission revoked his parole and converted his eight year special parole term to a regular term of imprisonment of 24 months. (*Id.*)

In July of 1998, Conlon appealed the revocation of his special parole term to the National Appeals Board, arguing that the Parole Commission lacked the authority to issue a warrant for violations of his special parole during his regular parole term. (*Id.*) The National Appeals Board affirmed the Commission's decision on October 15, 1998, stating that Conlon's failure to report to his probation officer was a violation of his special parole. (*Id.*) After exhausting his administrative remedies, Conlon filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 with the United States District Court for the District of Arizona on July 27, 1998. (*Id.*) On February 19, 1999, he filed an amended petition alleging that he was being illegally held in violation of his right to due process because his parole violation, which occurred prior to the January 28, 1998 commencement of his special parole term, tolled the running of the regular parole term from the time he absconded until the time of his arrest on February 19, 1998, meaning his special parole term never commenced and the Parole Commission never had jurisdiction to revoke his special parole term. (*Id.*)

Agreeing with Conlon that the Parole Commission never had jurisdiction to issue the warrant to revoke his special parole, the court granted his petition for writ of habeas corpus on November 29, 1999 and ordered the Bureau of Prisons to release him on or before December 15, 1999. (*Id.* at 3.) The order did not contain instructions concerning Conlon's duty to contact the Parole Commission upon his release. (Def.'s Statement of Undisputed Material Facts (#43), Ex. 23 at 2.) At some point in the spring of 2000, plaintiff again was arrested, this time by local police in Minnesota. (*Id.*) He was transferred to the U.S. Marshals for violating parole, although no parole violation warrant had been issued and no probable cause hearing was held. (*Id.*) Conlon then requested that his habeas petition be reopened. (*Id.*) Following an evidentiary hearing, the court determined that because its

1  original order had not required Conlon to establish contact with the Parole Commission, nor had it

2  specified whether he still had a term of probation to complete, Conlon's failure to report to the

3  Parole Commission could not be deemed improper. (*Id.* at 4.) By order dated August 24, 2001, the

4  court vacated Conlon's special parole term and ordered he be released no later than August 31, 2001.

5  (*Id.*)

6         In July of 2001,[2] Conlon submitted an administrative claim to the United States Department

7  of Justice. (Second Am. Compl. (#42), 5 at ¶ 28, and Exs. A, B.) He then commenced the current

8  action by filing his complaint in *pro per* on December 14, 2001 with the United States District Court

9  for the District of Nevada. (Compl. (#2).) On March 19, 2002, Conlon, through counsel, filed an

10  amended complaint. (First Am. Compl. (#3/#4).) Conlon then sought leave to file a second

11  amended complaint (#32), which was granted (#35). Conlon's second amended complaint (#42) was

12  filed November 19, 2002. In response to the second amended complaint the defendants jointly filed

13  for dismissal of the action, or in the alternative for summary judgment (#44). Before an opposition

14  was filed, however, the parties stipulated (#53) to the dismissal of all defendants except the United

15  States, and all claims except those arising under the Federal Tort Claims Act ("FTCA"). In

16  approving the stipulation, the court disposed of defendants' motion to dismiss (#44). The United

17  States now renews that motion (#62), arguing that Conlon's FTCA claims "are barred by the

18  applicable statute of limitations, and even if not so barred, lack sufficient evidentiary support." (#62

19  at 3.)

20                                      **II. Analysis**

21  **A.**     **Subject Matter Jurisdiction**

22         Federal courts are courts of limited jurisdiction. Dismissal is appropriate when the district

23  court lacks subject matter jurisdiction over the claim. *See* Fed. R. Civ. P. 12(b)(1). Accordingly,

24  subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.

25  Lack of subject matter jurisdiction may be raised at any time and by any party. Additionally, the

26

27      [2]The complaint states that the administrative claim was filed on July 10, 1998. However, it is clear from

28  the supporting documents that this is an error and that the administrative claim was actually filed in July of 2001.
    (*See* Second Am. Compl. (#42), Exs. A, B.)

3

1  court may *sua sponte* raise the issue of lack of subject matter jurisdiction and dismiss a case if no

2  subject matter jurisdiction exists.  Fed. R. Civ. P. 12(h).

3       By stipulation of the parties (#53), the only claims remaining in this action are those arising

4  under the FTCA.  As such, this court has jurisdiction over plaintiff's claims, if at all, pursuant to 28

5  U.S.C. § 1346(b), which provides that federal district courts have exclusive jurisdiction over civil

6  actions on claims against the United States, and the FTCA, 28 U.S.C. § 2671, *et seq.*, which sets

7  forth the procedures for suing the United States.  Accordingly, unless this court finds both that

8  plaintiff's claims are cognizable under the FTCA, and that the procedural requirements of the FTCA

9  have been satisfied as to those claims, the claims must be dismissed for lack of subject matter

10  jurisdiction.

11      **1.**    **The Federal Tort Claims Act ("FTCA")**

12       The FTCA provides a limited waiver of the United States's sovereign immunity, and allows

13  private individuals to sue for money damages

14          for injury or loss of property, or personal injury or death caused by the negligent
        or wrongful act or omission of any employee of the Government while acting

15          within the scope of his office or employment, under circumstances where the
        United States, if a private person, would be liable to the claimant in accordance

16          with the law of the place where the act or omission occurred.

17  28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the

18  provisions of this title relating to tort claims, in the same manner and to the same extent as a private

19  individual under like circumstances, but shall not be liable for interest prior to judgment or for

20  punitive damages.")  In a FTCA action, "a court must apply the law the state courts would apply in

21  the analogous tort action, including federal law." *Rhoden v. U.S.*, 55 F.3d 428, 431 (9th Cir. 1995)

22  (holding that state court "would apply federal law to determine whether an arrest by a federal officer

23  was legally justified and hence privileged.").  The FTCA, however, does not provide a remedy

24  against the United States for constitutional tort claims.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78

25  (1994) (rejecting due process claim asserted against federal agency under FTCA); *see also Delta*

26  *Sav. Bank v. U.S.*, 265 F.3d 1017, 1024 (9th Cir. 2001) (holding that FTCA action must be premised

27  on liability under state rather than federal law).

28       Moreover, the FTCA also contains a list of exceptions further narrowing the availability of

claims that may be asserted against the United States. 28 U.S.C. § 2680. "When a claim falls within a statutory exception to the FTCA's waiver of sovereign immunity, the court is without subject matter jurisdiction to hear the case." *Mundy v. U.S.*, 983 F.2d 950, 952 (9th Cir. 1993). One of these exceptions, commonly referred to as the intentional tort exception, bars "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights." 28 U.S.C. § 2680(h). By its terms, however, the exception does not apply to the "acts or omissions of investigative or law enforcement officers." *Id.* The § 2680 exceptions "are interpreted according to federal law in order to avoid any dependence of federal subject matter jurisdiction upon state law." *Santiago-Ramirez v. Secretary of the Department of Defense*, 984 F.2d 16, 20 (1st Cir. 1993) (citing *U.S. v. Neustadt*, 366 U.S. 696 (1961)). Moreover, "[i]n determining the applicability of the § 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Low v. F.D.I.C.*, No. C 96-1958, 1996 WL 660613, at *3 (N.D. Cal. Nov. 7, 1996) (quoting *Lambertson v. U. S.*, 528 U.S. 441, 443 (2d Cir. 1976)).

Lastly, unless administrative exhaustion was first timely accomplished, subject matter jurisdiction will be found lacking over an otherwise viable FTCA claim. The FTCA provides, in relevant part, that

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). Moreover, unless the claim is presented in writing to the appropriate Federal agency within two years after the claim accrues "or unless action is begun within six months after . . . notice of final denial of the claim by the agency to which it was presented," it "shall be forever barred." 28 U.S.C. § 2401(b). The date on which a claim accrues is determined by federal law. *Washington v. U.S.*, 769 F.2d 1436, 1438 (9th Cir. 1985) (citing *Pittman v. U. S.*, 341 F.2d 739 (9th Cir.), *cert. denied*, 382 U.S. 941 (1965)).

2.     **Application to Plaintiff's Claims for Relief**

5

1    The United States has moved for dismissal of the remaining FTCA claims on the ground that

2 plaintiff "did not file a timely administrative tort claim, a jurisdictional prerequisite under the

3 FTCA." (Mot. to Dismiss (#44) at 17.)  However, neither party has identified which of plaintiff's six

4 causes of action constitute the remaining FTCA claims, nor, apparently, have they taken into

5 consideration any of the exceptions to the FTCA's waiver of sovereign immunity.  As such, the court

6 will (1) identify which of plaintiff's claims are cognizable under the FTCA, (2) examine whether any

7 of those claims fall into one of the exceptions to the FTCA's waiver of sovereign immunity, and

8 finally, if any claims remain, (3) determine whether plaintiff timely filed an administrative claim

9 with the appropriate federal agency.

10                  a.    Characterization of Plaintiff's Claims for Relief

11       Plaintiff's amended complaint alleges six claims for relief.  The first claim, which does not

12 specify a legal basis, encompasses several different allegations of wrongdoing.  In relevant part, it

13 alleges (1) that U. S. Probation Officer John Lawhead, "by and through the U.S. Probation Office

14 made fraudulent and false allegations of special parole violations that were originally filed by the

15 U.S. Parole Commission's case analyst" (Second Am. Compl. (#42), 8 at ¶ 56); (2) that the case

16 analyst "elected to forward his/her stamp of approval to the Commissioner to issue a warrant for the

17 Plaintiff's arrest even though the allegations were without jurisdiction" (id. at ¶ 57); (3) that plaintiff

18 was then arrested on February 19, 1998 and "subjected to what was to be a preliminary hearing with

19 an 'independent probation officer' to determine probable cause," but that "[t]he probation officer was

20 predisposed to find the Plaintiff's guilt and ruled accordingly" (id. at ¶ 58); (4) that despite plaintiff's

21 argument at the revocation hearing that the Commission lacked jurisdiction to violate the special

22 parole term,[3] "[t]he Examiner rejected the argument as 'weak,' and assessed the Plaintiff 24 months

23 in prison" (id. at ¶¶ 60-63); and (5) that these acts were arbitrary and capricious, "so as to deny

24 Plaintiff's liberty and property interests and rights without due process in violation of the First,

25 Fourth, Fifth, Sixth and Eighth Amendments to the United States Constitution" (id. at ¶ 64).

26

27       [3]This argument was later sustained by the United States District Court for the District of Arizona in
granting plaintiff's petition for habeas corpus. (November 29, 1999 order of Judge Browning, Def.'s Statement

28 of Undisputed Material Facts (#45), Ex. 12.)

6

1  Plaintiff claims to have suffered personal injury, **wrongful** and false imprisonment, embarrassment,

2  humiliation, and severe and extreme mental **anguish as a** result.  Although not so titled, the court

3  finds that this claim for relief alleges negligence **arising** out of the events resulting in plaintiff's

4  February 19, 1998 arrest and subsequent **imprisonment.**  To the extent that plaintiff also is alleging

5  constitutional violations, this claim is not **cognizable under** the FTCA, *see F.D.I.C. v. Meyer*, 510

6  U.S. 471, 477-78 (1994), and has been **dismissed by stipulation** of the parties (#53).  To the extent

7  this claim can be construed as alleging state law **causes** of action for negligence, false arrest, and

8  false imprisonment arising out of plaintiff's **February** 19, 1998 arrest, it will be dealt with below.[4]

9  Plaintiff's second and third claims for **relief are** labeled "intentional infliction of emotional

10 harm" and "negligence."  (Second Am. Compl. **(#42)**, 9-10.)  Both are actionable claims under

11 Nevada law and are therefore potentially viable **FTCA** claims against the United States.  These

12 claims, however, still are subject to the other **requirements** of the FTCA, including the exceptions to

13 waiver of sovereign immunity and the **administrative exhaustion** requirement, which will be

14 discussed below.

15 Plaintiff's fourth claim for relief is for **"false arrest."**  (*Id.* at 10.)  While a cause of action for

16 false arrest exists under Nevada law, plaintiff **appears** to be alleging only constitutional violations in

17 this claim.  Plaintiff asserts, in relevant part, **that U.S.** Probation Officers Patrick Foy, John

18 Lawhead, and Thomas Collins "conspired to **violate the** Plaintiff's First, Fourth, Fifth, Sixth and

19 Eighth Amendment rights."  (*Id.* at ¶ 79.)  **The underlying** factual allegations of this claim revolve

20 around plaintiff's arrest following his release **from custody** pursuant to the granting of his first

21 habeas corpus petition.  Plaintiff claims that **"Foy submitted** a letter to the Commission with

22 complete approval of Defendants Collins **and Lawhead** for the arrest of the Plaintiff for failure to

23 report for supervision even though there was **no requirement** for supervision of plaintiff in Nevada."[5]

24 (*Id.* at ¶ 81.)  This false arrest "resulted in **an additional** two months of illegal incarceration" and

25

26 [4]"All pleadings shall be so construed **as to do substantial** justice."  Fed. R. Civ. P. 8(f).

27 [5]Following his arrest on this warrant, **plaintiff petitioned** the United States District Court for the District of Arizona to re-open his habeas case.  Judge **Browning** granted the petition and ordered plaintiff's immediate

28 release on the grounds that his prior order had **not required** that plaintiff report for supervision.  (*See* Def.'s Statement of Undisputed Material Facts (#45), **Ex. 23.)**

7

1  "was based upon the acts of false information, misrepresentation, negligence, as well as deliberate

2  indifference to the Plaintiff." (*Id.* at ¶¶ 82-83.)  To the extent this claim for relief seeks redress for

3  constitutional violations, it cannot be brought under the FTCA, *see Meyer*, 510 U.S. at 477-78, and is

4  no longer at issue in this action pursuant to stipulation of the parties (#53).  However, to the extent it

5  can be characterized as a state law claim for false arrest or negligence arising out of his second

6  unlawful incarceration, it will be dealt with below.

7       Plaintiff's fifth claim for relief, entitled "false imprisonment," also appears to allege only

8  constitutional violations. (Second Am. Compl. (#42) at 11.) Plaintiff claims that "Warden Nancy

9  Bailey acted individually and conspired with Defendant's Inmate Systems Manager (name unknown)

10  and Inmate Systems Manager (name unknown) to violate the Plaintiff's First, Fourth, Fifth, Sixth

11  and Eighth Amendment rights." (*Id.* at ¶ 86.) He further asserts that he filed an "administrative

12  remedy" with Warden Bailey, that Bailey passed the action to the Inmate Systems Manager who

13  stated that the Commission could violate the special parole term, that Bailey approved the decision

14  of the institution to not act upon the request, and that when plaintiff approached the "new" Inmate

15  Systems Manager with the same information, he received the same negative response from Bailey.

16  (*Id.* at ¶¶ 87-90.) Plaintiff claims he then appealed to the Regional Office, which affirmed the

17  Warden's actions, as well as to the Central Office, which also affirmed the Warden's actions without

18  investigation. (*Id.* at ¶¶ 91-92.) Although the complaint is unclear, it appears that these alleged

19  incidents took place during plaintiff's 24 month incarceration (of which he served 22 months) for the

20  violation of his special parole term over which the Commission lacked jurisdiction. Again, to the

21  extent that plaintiff is asserting constitutional violations, this claim is not cognizable under the

22  FTCA, and was previously dismissed by stipulation of the parties (#53). However, to the extent

23  plaintiff can be deemed to be asserting a state law cause of action for false imprisonment, it will be

24  dealt with below.

25       Plaintiff's sixth and final claim for relief is labeled "cruel and unusual punishment." (Sec.

26  Am. Compl. (#42) at 12.) Here plaintiff re-alleges that Warden Bailey acted individually and

27  conspiratorially to violate plaintiff's constitutional rights. (*Id.* at ¶ 95.) He further states that his

28  false arrest "resulted in two extra months of illegal incarceration," and that this "detention was based

8

1   upon the acts of false imprisonment, misrepresentation, negligence, as well as deliberate

2   indifference." (Id. at ¶¶ 96-97.) As previously stated, to the extent plaintiff is alleging constitutional

3   violations in this claim for relief, they are not viable under the FTCA, and, in any case, were

4   previously dismissed by stipulation of the parties (#53). To the extent this claim asserts state law

5   causes of action for false imprisonment or negligence arising out of his second unlawful

6   incarceration, it will be dealt with below.

7          Accordingly, the potential FTCA claims remaining after the parties' stipulation to dismiss

8   (#53) are for (1) false arrest, (2) false imprisonment, (3) intentional infliction of emotional harm, and

9   (4) negligence. Based on the general factual allegations, it is clear that there are two separate

10  incidents underlying these claims. The first incident encompasses the initial issuance of a warrant,

11  arrest, and subsequent sentencing of plaintiff to 24 months in prison, actions over which the U.S.P.C.

12  was later found not to have jurisdiction. The second incident consists of the issuance of a warrant,

13  arrest, and subsequent two month incarceration following plaintiff's release from prison after having

14  been granted habeas relief from the 24 month sentence. As such, plaintiff has alleged two instances

15  of false arrest, two instances of false imprisonment, two instances of intentional infliction of

16  emotional harm, and two instances of negligence. This is not to say, however, that each of these

17  claims will be actionable under the FTCA. Subject matter jurisdiction may still be lacking

18  depending on the applicability of the FTCA's exceptions to the waiver of sovereign immunity, and

19  also on whether plaintiff timely completed the Act's administrative prerequisites. These issues will

20  be considered in turn.

21          **b.    Applicability of § 2680(h)'s Exceptions**

22          Unless the acts or conduct giving rise to certain enumerated intentional torts, including false

23  arrest and false imprisonment, were committed by investigative or law enforcement officers of the

24  United States Government, those claims are barred by the intentional tort exception to the FTCA's

25  waiver of sovereign immunity. 28 U.S.C. §2680(h). The statute defines "investigative or law

26  enforcement officer" as "any officer of the United States who is empowered by law to execute

27  searches, seize evidence, or make arrests for violations of federal law." Id. In other words, "[t]he

28  FTCA . . . limits the United States' liability to instances where wrongful acts by law enforcement

                                              9

1  officers cause the unjustified imprisonment" or arrest. *Arnsberg v. U.S.*, 757 F.2d 971, 977 (9th Cir.

2  1985).  In deciding whether plaintiff's claims fall within the § 2680(h) exception, the court must

3  focus on the conduct upon which each of plaintiff's claims is based, and not on plaintiff's

4  characterization of the causes of action. *Sheehan v. U.S.*, 896 F.2d 1168, 1171 (9th Cir. 1990).

5  Section 2680(h) "bars suit for claims based on conduct which constitutes one of the excepted torts,

6  and bars suit for no other claims." *Id.*

7        This court has already determined that plaintiff pled causes of action in false arrest and false

8  imprisonment, both of which clearly fall within § 2680(h).  At issue, however, is whether these acts

9  were committed by federal "investigative or law enforcement officers."  Plaintiff has alleged that

10  these violations occurred based on the conduct of the U.S.P.C., various United States probation

11  officers, and a prison warden. While an argument can be made that the U.S.P.C.'s commissioners

12  could be regarded as "investigative or law enforcement" officials because they are empowered to

13  make arrests, a similar argument applied to a federal magistrate judge was rejected by the Ninth

14  Circuit. *See Arnsberg*, 757 F.2d at 978 n.5 (stating that "Congress intended § 2680(h) to apply only

15  when the federal official acts in his or her investigative or law enforcement capacity" and that a

16  judge "when acting adjudicatively does *not* act in an investigative or law enforcement capacity").

17  This court finds that the commissioners, in issuing warrants for plaintiff's arrest and sentencing him

18  to prison for parole violations, were acting not in an investigative or law enforcement capacity for

19  purposes of § 2680(h), but rather in an adjuticative one. As for the warden, this court finds that she

20  also was not acting in the capacity of an investigative or law enforcement officer. *See Puccini v.*

21  *U.S.*, 978 F. Supp. 760, 761 (N.D. Ill. 1997) (finding that FTCA claims failed because "conduct

22  complained of was that of persons acting as prison administrators, not investigative or law

23  enforcement officers.")

24        It is the alleged actions of the probation officers which raise the closest question. Although

25  the Ninth Circuit has not yet addressed whether probation officers are considered investigative or

26  law enforcement officers for purposes of § 2680(h), the Second Circuit has considered the issue. In

27  *Wilson v. United States*, 959 F.2d 12 (2d Cir. 1992), the plaintiff brought suit alleging that the

28  proceedings leading up to and resulting in the revocation of his parole constituted abuse of process,

1  malicious prosecution, and false imprisonment. *Id.* at 13. In determining whether the government

2  officials involved in these actions were investigative or law enforcement officers, the court

3  distinguished between the roles of probation and parole officers. After examining the statutory

4  authority governing both probation and parole officers, the court concluded that in contrast to

5  probation officers, parole officers are not vested with any of the law enforcement powers identified

6  in § 2680(h) under the U.S.P.C.'s authorizing statute. *Id.* at 15 (*comparing* 18 U.S.C. §§ 4201 *et*

7  *seq.* (probation) *with* 18 U.S.C. §§ 3601, *et seq.* (parole)). However, since the repeal of the parole

8  statutes, Pub. L. No. 98-473, 98 Stat. 2027, 2031 (Oct. 12, 1984), the U.S.P.C. supervises inmates

9  convicted before repeal by enlisting probation officers to perform the functions of parole officers.

10  *Id.* (citing 18 U.S.C. § 4203(b)(4) and 18 U.S.C. §§ 3602, 3655). Accordingly, the court recognized

11  that the powers of the two offices may rest in a single person and decided that "while the same

12  person may be authorized to perform both functions, the officer is constrained by the statutes to

13  differentiate between those powers, depending on the function being performed." *Id.* at 16.

14  Specifically, the court held that "probation officers serving as parole officers cannot be considered

15  investigative or law enforcement officers for purposes of the FTCA." *Id.*

16      This court finds the Second Circuit's analysis in *Wilson* persuasive. Accordingly, it must

17  first be determined whether the officers plaintiff claims were responsible for his alleged false arrest

18  and imprisonment were acting as probation officers or as parole officers. At first glance, it would

19  appear that these officers in fact are probation officers. Not only does plaintiff refer to them in his

20  pleadings as probation officers (*see generally* Second Am. Compl. (#42)), but the United States, in

21  its Statement of Undisputed Material Facts (#45), actually includes affidavits from each officer

22  stating that he is a United States probation officer, explaining his duties as such, and asserting that

23  the allegations of the complaint arise entirely out of his official conduct as a probation officer. (*See*

24  Def.'s Statement of Undisputed Material Facts (#45), Decls. of Kevin Lowry, Patrick Foy, and

25  Thomas Collins.) However, in accordance with *Wilson*, the court must consider which hat the

26  officers were wearing in their supervision of plaintiff, instead of relying on their titles alone. During

27  the events giving rise to this action, plaintiff was not on probation, but rather on parole from a

28  conviction entered prior to the repeal of the parole statutes. Because it was the U.S.P.C. attempting

1   to exercise jurisdiction over plaintiff, a parolee, **the officers** were not functioning as probation

2   officers in this instance, but instead as parole **officers.** As such, these officers cannot be considered

3   investigative or law enforcement officers for **purposes** of the FTCA. Because the conduct underlying

4   plaintiff's false arrest and false imprisonment **was not** committed by investigative or law

5   enforcement officers, these claims fall into § 2680(h)'s exception to the waiver of sovereign

6   immunity. Accordingly, this court lacks subject **matter** jurisdiction over plaintiff's false arrest and

7   false imprisonment claims, and they therefore **are dismissed.**

8        Plaintiff's intentional infliction of **emotional harm** and negligence claims may also be barred

9   under § 2680(h) if they are found to "arise **out of"** plaintiff's false arrest and false imprisonment

10   claims. The Ninth Circuit, in *Sheehan v. United States,* 896 F.2d 1168, 1172 (9th Cir. 1990), held

11   that "a claim based on conduct constituting **the tort of** intentional infliction of emotional distress is

12   not excluded as a matter of law from FTCA **by § 2680(h).**" However, because the court must focus

13   its inquiry on the conduct upon which plaintiff's **claims** are based, and not on plaintiff's

14   characterization of the causes of action, *id.* **at 1171, the** court must still determine whether the

15   conduct underlying plaintiff's intentional **infliction of** emotional distress claim constitutes a false

16   arrest or false imprisonment as those torts **are traditionally** defined. *See id.* The fact that there may

17   be partial overlap with the barred torts "does **not support** the conclusion that if one is excepted under

18   the Tort Claims Act, the other must be as well." *Id.* at1170 (quoting *Block v. Neal,* 460 U.S. 289,

19   298 (1983). In *Sheehan,* the Ninth Circuit **remanded** the case to the district court to determine

20   whether the plaintiff's claims would "permit **proof of** conduct that is not within the definition of any

21   of the excluded torts," and that would "support [plaintiff's] claim she suffered injury from the

22   intentional infliction of emotional distress **independently** of injury suffered from excluded conduct."

23   *Id.* at 1173.

24        Here, plaintiff makes almost no factual **allegations** in support of his intentional infliction of

25   emotional distress claim. Instead he refers **generally** to the "acts of Defendants" and states that they

26   were intentional, malicious, oppressive, **extreme, and** outrageous, among others things, and that they

27   resulted in his suffering various types of **emotional harm,** including diminished reputation,

28   embarrassment, humiliation, and mental **anguish.** (Second Am. Compl. (#42) at 9.) The acts to

which he apparently is referring are those which resulted in his alleged unlawful arrest and imprisonment, and the emotional injury he claims resulted does not appear to have been suffered independently of the underlying false arrest and imprisonment. In fact, the entire claim appears to be designed as a vehicle for seeking punitive damages which, in any case, are not available under the FTCA. 28 U.S.C. § 2674. As such, this court finds that plaintiff's emotional distress claim "arises out of" his false arrest and false imprisonment claims, and is therefore also excluded under § 2680(h).

Although plaintiff only has one claim for relief actually titled "negligence,"and despite the fact that he failed to provide much in the way of factual allegations specifically supporting it, the remainder of his complaint contains sufficient factual allegations to support the existence of two separate negligence claims. For ease of analysis, the court will refer to them either collectively as plaintiff's negligence claims, or individually as plaintiff's first and second negligence claims. The first negligence claim arises out of the events resulting in plaintiff's February 19, 1998 arrest and subsequent imprisonment, while the second claim encompasses the conduct resulting in plaintiff's arrest and imprisonment following his release pursuant to the initial granting of his habeas petition. Although the result of these alleged acts of negligence was plaintiff's subsequent arrest and imprisonment on two separate occasions, those arrests and imprisonments were consequences of the acts underlying the negligence claim and not the conduct out of which the claim arose. *See Sheehan*, 896 F.2d at 1170.[6] Section 2680(h) excludes only claims based on conduct constituting one of the excepted torts and "bars suit for no other claims." *Id.* at 1171. Accordingly, plaintiff's negligence claim is not barred by § 2680(h)'s exceptions to the waiver of sovereign immunity.

c.     **Timeliness of Plaintiff's Administrative Claim**

The United States has moved for dismissal of plaintiff's remaining FTCA claims on the ground that "Conlon did not file a timely administrative tort claim, a jurisdictional prerequisite under

---

[6]Moreover, a recent Ninth Circuit case discussed in detail below, while not addressing the issue of subject matter jurisdiction, does appear to support the exercise of jurisdiction over a claim for the negligent miscalculation of a prisoner's release date. *See Erlin v. U.S.*, 364 F.3d 1127 (9th Cir. 2004) (reversing lower court's dismissal as time-barred of former prisoner's FTCA action alleging Parole Commission's negligence in the miscalculation of his release date.).

1  the FTCA." (Def.'s Mot. to Dismiss (#44) at 17.)  The United States argues that Conlon's FTCA

2  claims accrued at the time of his false arrest on February 19, 1998, making his administrative claim,

3  which was not filed until July of 2001, untimely by more than a year and a half.  Furthermore, in

4  anticipation of a continuing violation argument, the United States also contends that the allegedly

5  tortious act was completed at the time of the arrest, and plaintiff's wrongful imprisonment therefore

6  was a continuing ill effect, and not a continuing tort.  (*Id.* at 18.)  In support, the United States cites

7  to a Third Circuit case rejecting the notion that a continuing incarceration is a continuing tort.  (*Id.*,

8  citing *Sandutch v. Muroski*, 684 F.2d 252 (3rd Cir. 1982).)

9       Plaintiff's opposition to the motion to dismiss is somewhat perplexing.  After acknowledging

10  that "[c]laims against the United States brought under the Federal Tort Claims Act must be presented

11  to the appropriate Federal agency within two years after the claim <u>accrues</u>," (Pl.'s Opp'n (#75) at 2)

12  it goes on to set forth the standard for determining the accrual of claims brought under 42 U.S.C. §

13  1983. (*Id.* at 2-3.)  Plaintiff, apparently operating under the mistaken assumption that his claims are

14  based on § 1983,[7] argues that under *Heck v. Humphrey*, 512 U.S. 477, 490 (1994), a cause of action

15  for damages attributable to an unconstitutional conviction or sentence does not accrue until the

16  conviction or sentence has been invalidated.  (*Id.*)  Plaintiff therefore contends that because the order

17  releasing him and vacating the parole sentence was dated August 27, 2001,[8] his administrative claim,

18  filed in July of 2001, was in fact timely.  (*Id.* at 3.)

19       In response, the United States points out that "this is not an action under § 1983, has never

20  been an action under § 1983, and can not be construed as an action under § 1983."  (Def.'s Reply

21  (#76) at 2.)  The United States further contends that "there is no basis to evaluate the accrual of

22  plaintiff's FTCA cause of action using principles applicable to § 1983 actions."  (*Id.*)  Finally, it

23

24       [7]In the "Overview" section of the opposition (#75), counsel states that plaintiff filed his complaint based

25  on 42 U.S.C. §§ 1983 and 1985. (#75 at 2.)  While the Second Amended Complaint (#42) does allege a violation
    of 42 U.S.C. § 1985(3), there is no mention of a § 1983 claim.  Moreover, all defendants other than the United

26  States and all claims other than the FTCA claims have since been dismissed by stipulation of the parties (#53).

27       [8]The court order granting plaintiff's petition for writ of habeas corpus and releasing him from
    imprisonment was not the August 2001 Order, but the Order dated November 29, 1999. The August 2001 Order

28  vacated plaintiff's special parole term. However, an administrative claim filed in July 2001 would still be timely
    based on an accrual date of November 29, 1999, since it falls within the two year limitations period.

1  argues that even if § 1983 analysis were to apply by analogy to plaintiff's FTCA claims, it would be

2  inapplicable in this case because the Supreme Court in *Heck* explicitly distinguished claims for false

3  arrest and false imprisonment. (*Id.* at 3.) According to the government, the plaintiff's FTCA claims,

4  arising "out of an alleged error in the computation of a parole period," are not "for acts whose

5  unlawfulness would render the imprisonment invalid," and therefore would not require that he first

6  establish entitlement to release from custody. (*Id.*)

7          While it is true that plaintiff's cause of action does not arise under § 1983, and also true that

8  plaintiff's counsel does not argue for the application of § 1983 case law by analogy, a very recent

9  Ninth Circuit opinion does provide a basis for evaluating plaintiff's FTCA claims under § 1983

10  principles. In *Erlin v. United States*, 364 F.3d 1127 (9th Cir. 2004), a case strikingly similar

11  factually to the one at bar, the sole issue before the court was "when a cause of action accrue[s] for

12  purposes of the statute of limitations under the Federal Tort Claims Act." *Id.* at 1129. *Erlin*

13  involved a FTCA action brought by a former prisoner for the negligent miscalculation of his release

14  date. *Id.* The court determined that the interests identified by the Supreme Court in *Heck* require

15  that the same restriction imposed on § 1983 claims also be imposed on FTCA claims "that impugn[]

16  the validity of a conviction or imprisonment." *Id.* at 1132. Accordingly, it held that "a civil action

17  under the Federal Tort Claims Act for negligently calculating a prisoner's release date, or otherwise

18  wrongfully imprisoning the prisoner, does not accrue until the prisoner has established, in a direct or

19  collateral attack on his imprisonment, that he is entitled to release from custody." *Id.* As such,

20  plaintiff's counsel has supplied the appropriate standard to be applied to the statute of limitations in

21  this case, even if wholly unintentionally.

22          *Erlin* establishes that in an FTCA action impugning the validity of the underlying conviction

23  or sentence, the accrual date of the claim is delayed until that conviction or sentence has been

24  successfully challenged. *Id.* Accordingly, the question then becomes, whether, in this particular

25  case, plaintiff is seeking recovery which if granted would "render a sentence or conviction invalid."

26  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The United States argues that he is not because (1)

27

28

1  plaintiff's claims arise out of an error in the computation of his parole period[9] and not acts whose

2  unlawfulness would render the imprisonment invalid, and (2) because the Supreme Court in *Heck*

3  explicitly distinguished claims for false arrest and false imprisonment. (Def.'s Reply (#76) at 3.)[10]

4  A review of *Erlin* is instructive as to both arguments, especially in light of the strikingly similar

5  factual underpinnings.

6      In *Erlin*, like in this case, the underlying habeas petition was granted because the Parole

7  Commission did not have jurisdiction over Erlin when it revoked his parole and sentenced him to an

8  additional 20 months of imprisonment. *Erlin*, 364 F.3d at 1130. Moreover, Erlin's FTCA claim was

9  for the negligent miscalculation of his release date, which is exactly how plaintiff's remaining claims

10  in this case can be characterized. The Ninth Circuit determined that "[s]o long as [Erlin] was

11  incarcerated, a judgment for damages for the miscalculation would necessarily imply that he was

12  wrongfully imprisoned," and that accordingly his cause of action did not accrue when the Parole

13  Commission made the miscalculation, but rather, when he "prevail[ed] in a habeas case establishing

14  that he was entitled to release." *Id.* at 1130. As such, the United States' contention that plaintiff's

15  FTCA claims arise out of "an error in the computation of his parole period" (Def.'s Reply (#76) at

16  3), is of no avail. In fact, when so characterized, the act at issue is precisely the type of act whose

17  unlawfulness would render the imprisonment invalid, thereby implicating *Heck* and delaying the

18  accrual of the claim.

19      The United States' second argument, that *Heck* expressly distinguished false arrest and false

20  imprisonment claims, also is unavailing. This court has already determined that it lacks subject

21  matter jurisdiction over plaintiff's false arrest and false imprisonment claims and therefore need not

22

23  [9]The Government repeatedly refers to an "alleged error" in the computation of plaintiff's parole term.
    However, given that plaintiff's petition for writ of habeas corpus was granted by the District of Arizona, (Def.'s
24  Statement of Undisputed Material Facts (#45), Ex. 12), and the order was not appealed, this will be deemed fact
    rather than allegation.

25  [10]The United States does not make any arguments regarding what is essentially plaintiff's second
26  negligence claim arising out of his arrest and incarceration following the granting of his initial habeas petition.
    In fact, the government appears to be under the impression that the only remaining claim is for false arrest. For
27  ease of analysis, the court first will deal with the government's arguments regarding the allegedly tortious
    conduct resulting in plaintiff's 24 month imprisonment, and then will examine whether the procedural
28  requirements were satisfied with regard to plaintiff's second negligence claim arising out of his two month long
    incarceration.

consider the import of this distinction to the **case at bar**. The claims remaining in this action are plaintiff's two negligence claims, and both **involve alleged** negligence in the calculation and application of his parole term. Accordingly, **in light of** *Erlin*, plaintiff's first negligence claim arising out of the issuance of a warrant for his **arrest, his** February 19, 1998 arrest, and his 24 month prison sentence, all later determined to have **been without** jurisdiction, accrued on the date his habeas petition was granted—November 29, 1999. **As such,** plaintiff's administrative claim filed in July of 2001 was timely, and the government's **motion to dismiss** on statute of limitations grounds is denied as to this claim.

Plaintiff's second negligence claim, **arising out** of his arrest for violating the terms of his supervised release following the granting of **his habeas** petition, presents another problem. In a footnote in its reply, the United States notes **that even** were *Heck* to be applied in this instance (as is now required by the Ninth Circuit), it would **produce an** inconsistent result because plaintiff filed his administrative claim in July of 2001, prior **to the accrual** of his claim in August of the same year. While this argument is based on the **government's use** of the incorrect date as applied to plaintiff's first negligence claim, which accrued on **November 29,** 1999, it does signal several difficulties with plaintiff's second negligence claim, which **accrued in** August of 2001—a month after plaintiff filed his administrative claim with the Department **of Justice.** However, it appears from plaintiff's complaint that his administrative claim **encompassed** only the alleged negligence resulting in his 22 months of unlawful incarceration. The **complaint alleges** that plaintiff filed an administrative claim accompanied by "a memorandum outlining **that the** U.S. Parole Commission violated its own rules." (Second Am. Compl. (#42) at 5, ¶ 28.) This **appears** to refer to the U.S.P.C.'s rule stating that it cannot find a special parole violation by a **parolee during** his regular parole term, which it violated when it sentenced plaintiff to 24 months—**the incident** underlying plaintiff's first negligence claim. Because plaintiff did not provide the court **with a copy** of his administrative claim, and because it appears from his complaint that it only **encompasses** his first negligence claim, his second negligence claim must be dismissed for lack **of subject** matter jurisdiction due to plaintiff's failure to exhaust administrative remedies. As such, **this court** need not consider the implications of filing an administrative claim too early.

1    Accordingly, this court has subject matter jurisdiction over only plaintiff's first negligence

2  claim arising out of the events surrounding his February 19, 1998 arrest and subsequent

3  imprisonment.

4  **B.      Summary Judgment**

5      **1.      Standard on Motion for Summary Judgment**

6      Summary judgment is appropriate when there is no genuine issue of material fact and the

7  moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material issue of

8  fact is one that affects the outcome of the litigation and requires a trial to resolve the differing

9  versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986);

10  *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). "[T]here is no issue for trial unless

11  there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.

12  If the evidence is merely colorable, or is not significantly probative, summary judgment may be

13  granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986) (citations omitted).

14  Because the burden of demonstrating the absence of a genuine issue of material fact lies with the

15  moving party, the material lodged by the moving party must be viewed in the light most favorable to

16  the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of*

17  *Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).

18      The party seeking summary judgment "always bears the initial responsibility of informing

19  the district court of the basis for its motion, and identifying those portions of 'the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

21  which it believes demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett*,

22  477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "A moving party without the ultimate

23  burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of

24  production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire*

25  *& Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry the initial burden of

26  production, the moving party must either produce evidence negating an essential element of the

27  nonmoving party's claim or defense or show that the nonmoving party does not have enough

28  evidence of an essential element to carry its ultimate burden of persuasion at trial. *Id.* However, the

18

1    moving party may not simply aver in its legal memoranda that the opposing party "has no evidence

2    to prove his case" or that there are no genuine issues of material fact. *See Celotex*, 477 U.S. at 328

3    (White, J., concurring). To the extent the moving party fails to satisfy this initial burden of

4    production, summary judgment must be denied. *See Henry v. Gill Industries, Inc.*, 983 F.2d 943,

5    949-50 (9th Cir.1993). When a moving party fails to carry its initial burden of production, the

6    nonmoving party has no obligation to produce anything to survive a motion for summary judgment,

7    even if it would bear the ultimate burden of persuasion at trial. *Nissan Fire & Marine*, 210 F.3d at

8    1102-03.

9        "If, however, a moving party carries its burden of production, the nonmoving party must

10   produce evidence to support its claim or defense." *Id.* at 1103. This requires that the nonmoving

11   party "do more than simply show that there is some metaphysical doubt as to the material facts."

12   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

13   The nonmoving party may not rely on mere allegations in the pleadings and instead must set forth

14   "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec.*

15   *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (quotation omitted). At least some

16   "'significant probative evidence tending to support the complaint'" must be produced. *Id.* (quoting

17   *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)); *Addisu v. Fred Meyer, Inc.*, 198 F.3d

18   1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not

19   significantly probative does not present a genuine issue of material fact"). "If the nonmoving party

20   fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the

21   motion for summary judgment." *Nissan Fire & Marine*, 210 F.3d at 1103.

22                **2.    Application to Defendant's Motion**

23       The United States's Motion for Summary Judgment in its entirety consists of a two paragraph

24   recitation of the standard to be applied to motions for summary judgment followed by a single

25   paragraph of "analysis." That paragraph is as follows:

26           The undisputed material facts of this case are that Conlon's incarceration was the

27           result of decisions by the U.S. Parole Commission and a legitimate good-faith
             legal dispute concerning the computation of his release date. There is no basis for

28           imposition of damages against any these [*sic*] named defendants because the

                                                    19

allegations of negligence, discriminatory intent, intentional denial of civil rights, and conspiracy to deny Conlon's civil rights can not be sustained.

(Mot. for Summ. J. (#44) at 34.)  While the government also filed a separate Statement of Undisputed Material Facts (#45) supported by affidavits and other evidence, it does not even attempt to demonstrate to the court how this evidence either negates an essential element of plaintiff's claim, or shows that plaintiff lacks sufficient evidence for his claim.  As such, defendant has not satisfied its initial burden as the moving party to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact."  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Because the government failed to meet this initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, plaintiff was not required to come forward with any additional evidence.  *See T.W. Electrical. Serv.*, 809 F.2d, 626 630 (9th Cir. 1987); *see also Abordo v. State of Hawai'i*, 902 F. Supp. 1220, 1225-26 (D. Haw. 1995).  Defendant's motion for summary judgment therefore is denied.

### III. Conclusion

Accordingly, **IT IS ORDERED** that defendant's motion to dismiss, or in the alternative for summary judgment (#44/#62) be **GRANTED IN PART** and **DENIED IN PART**.  It is GRANTED as to plaintiff's negligence claim arising out his second false arrest and two months unlawful imprisonment, and is otherwise DENIED.

**IT IS FURTHER ORDERED** that all of plaintiff's claims except his first negligence claim arising out of the February 19, 1998 arrest and subsequent imprisonment be DISMISSED for lack of subject matter jurisdiction.

DATED: This _8 TH_ day of June, 2004.

UNITED STATES DISTRICT JUDGE

20