**ORIGINAL**



J. ANDRÉ BOLES, ESQ.
Nevada Bar No. 003368
18 Stewart Street
Reno, Nevada 89501
Tel: (775) 329-1544

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL J. CONLON,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>UNITED STATES OF AMERICA;<br>*et al.*,<br><br>　　　　Defendants. | Case No. **CV-N-01-700-DWH-VPC**<br><br>**PLAINTIFF'S OPPOSITION TO UNITED STATES' MOTION FOR SUMMARY JUDGMENT** |

COMES NOW the Plaintiff herein, by and through counsel, and files his opposition to the Defendants United States' motion for summary judgment. This opposition is based on the attached Memorandum of Points and Authorities, and all pleadings, papers, and documents on file herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

The Plaintiff, Michael J. Conlon (hereinafter "Conlon"), filed this action for having been wrongfully imprisoned in one instance by the United States and its employees, this notwithstanding the fact that he had been lawfully imprisoned on other occasions. Initially acting *pro se*, he filed several claims and named both the United States and numerous of its employees. As pretrial proceedings were had herein, and as Conlon employed first one attorney and then a second attorney,

1

the case was pared to one sounding in negligence and only against the United States. The instant motion for summary judgment is founded entirely on certain misstatements of fact which the United States contends are deemed admitted due to untimely denials of requests for admission. The United States makes its contention in the face of the fact that the pivotal facts already had been established by earlier court order and stand as the law of the case.

## Case Posture

At this juncture, Conlon's only remaining claim for relief is one for negligence against the United States "arising out of the February 19, 1998 arrest and [his] subsequent imprisonment." From Order of this court, June 4, 2004, 20:16-22 (# 77). The facts underlying this claim have been adjudicated as follows and are not in dispute. The summary of those facts is from the June 4 order of this court (*Id.* 1:20-3:5), said court having relied, quoting from the footnote, "in large part on the two orders of Judge William D. Browning, Senior Judge for the United States District Court for the District of Arizona, dated November 29, 1999, and August 24, 2001, granting plaintiff's habeas petitions. (See Def.'s Statement of Undisputed Material Facts (#43), Exs. 12, 23.)"

On August 8, 1986, Michael J. Conlon ("plaintiff" or "Conlon") was sentenced by the United States District Court for the Western District of Texas to 12 years in prison with a special parole term of eight years to run consecutively to the term of imprisonment. (Def.'s Statement of Undisputed Material Facts (#43), Ex. 12 at 1.) Conlon was released on regular parole in May of 1990, with the term to expire on January 28, 1998, at which time his special parole was to begin. (*Id.*) On February 12, 1998, the United States Parole Commission issued a warrant for Conlon's arrest based on allegations that he had left his last known residence in Las Vegas and failed to advise his probation officer of his current address. (*Id.* at 1-2.) He was then arrested on the outstanding warrant on February 19, 1998. (*Id.* at 2.) On March 26, 1998, a special parole revocation hearing was held at which Conlon admitted having failed to report his change of residence. (*Id.*) As a result, the Parole Commission revoked his parole and converted his eight year special parole term to a regular term of imprisonment of 24 months. (*Id.*)

In July of 1998, Conlon appealed the revocation of his special parole term to the National Appeals Board, arguing that the Parole Commission lacked the authority to "issue a warrant for violations of his special parole during his regular parole term. (*Id.*)The National Appeals Board affirmed the Commission's decision on October 15, 1998, stating that Conlon's failure to report to his probation officer was a violation of his special parole. (*Id.*) After exhausting his administrative remedies, Conlon filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 with the United States District Court for the District of Arizona on July 27, 1998. (*Id.*) On February 19, 1999, he filed an amended petition alleging that he was being illegally held in violation of his right to due process because his parole violation, which occurred prior to the January 28, 1998 commencement of his special parole term, tolled the running of the regular parole term from the time he absconded until the time of his arrest on

2

February 19, 1998, meaning his special parole term never commenced and the Parole Commission never had jurisdiction to revoke his special parole term. (*Id.*)

Agreeing with Conlon that the Parole Commission never had jurisdiction to issue the warrant to revoke his special parole, the court granted his petition for writ of habeas corpus on November 29, 1999 and ordered the Bureau of Prisons to release him on or before December 15, 1999. (*Id.* at 3.) The order did not contain instructions concerning Conlon's duty to contact the Parole Commission upon his release. (Def.'s Statement of Undisputed Material Facts (#43), Ex. 23 at 2.) At some point in the spring of 2000, plaintiff again was arrested, this time by local police in Minnesota. (*Id.*) He was transferred to the U.S. Marshals for violating parole, although no parole violation warrant had been issued and no probable cause hearing was held. (*Id.*) Conlon then requested that his habeas petition be reopened. (*Id.*) Following an evidentiary hearing, the court determined that because its original order had not required Conlon to establish contact with the Parole Commission, nor had it specified whether he still had a term of probation to complete, Conlon's failure to report to the Parole Commission could not be deemed improper. (*Id.* at 4.) By order dated August 24, 2001, the court vacated Conlon's special parole term and ordered he be released no later than August 31, 2001. (*Id.*)

As the Defendant United States points out in the instant motion, this court's scheduling order (#79) made October 15, 2004, the deadline date for completing discovery and made December 15, 2004, the deadline date for submission of a joint pretrial order. Further, in the words of the moving party: "[T]he United States immediately propounded requests for admission and interrogatories to plaintiff. Responses to the discovery were due September 21, 2004. Plaintiff failed to respond by the due date." (Motion 5:15-19) And further, counsel for the United States in a letter of September 28, 2004, "specifically informed plaintiff that the matters set forth in the requests for admissions were deemed admitted by operation of Rule 36, Fed.R.Civ.P." (*Id.* 5:19-6:1). "On November 5, 2004, proposed responses to the request for admissions and interrogatories were delivered by plaintiff to United States' counsel." (*Id.* 6:6-8)

The requests for admission, as strung together by defense counsel in the instant motion, loosely track the adjudicated facts set forth hereinabove–but with exceptions that are significant for this motion. The deviations–which are the life of the instant case for money damages–are noted in the following table, showing the language of the court and, side by side, the language of the United States' departure therefrom, together with comment on Conlon's behalf.

/ / / / /

/ / / / /

/ / / / /

3

| Language of Court Adjudication | Defense Asserts Admitted | Comment |
|---|---|---|
| "On August 8, 1986, Conlon was sentenced in a U. S. District Court to 12 years in prison with a special parole term of eight years to run consecutively." | 1. "... Conlon was sentenced to a 12-year term of imprisonment and an 8-year special parole term ...." | Not in dispute |
| "Conlon was released on regular parole in May of 1990, with the term to expire on January 28, 1998, at which time his special parole *was to begin*." (Emphasis added.) | 4. "Following release ... [Conlon was] subject to supervision ... by a U.S. Parole Officer until January 28, 1998. (¶) 5. "The 8-year special parole term ... *commenced* on January 28, 1998." (Emphasis added.) | As is indicated below, the special parole term did not commence. |
| "On February 12, 1998, the United States Parole Commission issued a warrant for Conlon's arrest based on allegations that he had left his last known residence in Las Vegas and failed to advise his probation officer of his current address." | 6. "On February 12, 1998, the U.S. Parole Commission issued a violator warrant regarding an alleged violation of the conditions of [Conlon's] special parole." 8. "The stated factual basis ... was [Conlon's] alleged failure to inform a U.S. Parole Officer of a change in [his] residence address." 10. "Prior to ... issuance of the ... violator warrant and *after the commencement of [his] 8-year special parole term*, [Conlon] had changed [his] residence address." (Emphasis added.) | As is indicated below, the special parole term did not commence. |
| He was then arrested on the outstanding warrant on February 19, 1998. (*Id.* at 2.) On March 26, 1998, a special parole revocation hearing was held at which Conlon admitted having failed to report his change of residence. (*Id.*) As a result, the Parole Commission revoked his parole and converted his eight year special parole term to a regular term of imprisonment of 24 months. | 12. "[Conlon was] arrested on the U.S. Parole Commission's February 12, 1998 violator warrant on February 20, 1988." 14. "On February 25, 1998, [Conlon] admitted to the violation ... during a preliminary interview ...." | Not disputed. |
| In July of 1998, Conlon appealed ... to the National Appeals Board, arguing that the Parole Commission lacked the authority to "issue a warrant for violations of his special parole during his regular parole term. (*Id.*)The National Appeals Board affirmed the Commission's decision on October 15, 1998, stating that Conlon's failure to report to his probation officer was a violation of his special parole. | | Not at issue herein. |

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89501
Tel. (775) 329-1544

4

| | | |
|---|---|---|
| "After exhausting his administrative remedies, Conlon filed a (later amended) petition for writ of habeas corpus . . . ." | 16. "[Conlon] filed a petition for writ of habeas corpus in the U.S. District Court for the District of Arizona on July 27, 1998." | Not disputed. |
| Conlon alleged in the petition that *"he was being illegally held in violation of his right to due process because his parole violation, which occurred prior to the January 28, 1998 commencement of his special parole term, tolled the running of the regular parole term from the time he absconded until the time of his arrest on February 19, 1998, meaning his special parole term never commenced and the Parole Commission never had jurisdiction to revoke his special parole term."* "Agreeing with Conlon that *the Parole Commission never had jurisdiction to issue the warrant to revoke his special parole,* the court granted his petition for writ of *habeas corpus* on November 29, 1999 and ordered the Bureau of Prisons to release him on or before December 15, 1999. (*Id.* at 3.) The order did not contain instructions concerning Conlon's duty to contact the Parole Commission upon his release." (Emphasis added.) | 7. "The U.S. Parole Commission's issuance of the February 12, 1998 violator warrant was not caused by any negligent or wrongful act or omission of any employee of the United States." 13. "[Conlon's] February 20, 1998 arrest was not caused by any negligent or wrongful act or omission of any employee of the United States." 15. "The U.S. Parole Commission had jurisdiction to issue a warrant on February 12, 1998, for [Conlon's] arrest on account of [his] failure to inform a U.S. Parole Officer of a change in [his] address." 26. "No portion of [Conlon's] incarceration from February 20, 1998 to December 15, 1999 was caused by any negligent or wrongful act or omission of any employee of the United States." | The disparities shown here frame the issues: (1) Is acting without jurisdiction a form of actionable negligence(?) and (2) can a litigant reverse an adjudicated fact via an admission? |
| ///// | ///// | ///// |

The somewhat awkward table above shows what is at issue for the purposes of the instant motion. What is clear from the table is this: (1) The court has already determined that the challenged acts of the United States were without jurisdiction, and (2) The Defendant United States claims that it has established a lack of negligence via plaintiff's failure to timely object to the requests for admission. Conlon urges herein that such a contention by the defendant cannot stand–for three reasons.

I

**THE NEGLIGENCE OF THE UNITED STATES IS ESTABLISHED AS THE RULE OF THE CASE IN THAT THE U.S. PAROLE COMMISSION AND OTHERS CAUSED THE ARREST AND INCARCERATION OF THE PLAINTIFF WITHOUT JURISDICTION TO SO DO; AND PURSUANT TO THE PRINCIPLE OF RES JUDICATA, THAT ADJUDICATED NEGLIGENCE CANNOT BE CHANGED VIA DISCOVERY**

5

The United States urges that pursuant to Rule 36, Fed R.Civ.P., Conlon has admitted that no negligent acts were committed by the United States and its agents by failing to timely object to requests for admission stating that the Parole Commission had the necessary jurisdiction to act as it did and that no negligence was involved in Conlon's arrest and subsequent incarceration. Among authorities cited by the United States is *An-Port v. MBR Ind.*, 772 F.Supp. 1301, 1305 (D. Puerto Rico 1991), which holds that: "The facts admitted by either the Court or by the parties themselves constitute the law of the case." The case dealt with the failure of a party to respond to discovery requests after having been granted an enlargement of time. In the matter at bar, as a minor distinction, there has been no enlargement of time for the discovery requests at issue.

More importantly, there are facts in this matter–especially the established existence of negligence–which (1) have been adjudicated by the court as the law of the case, (2) which are favorable to the plaintiff's negligence case, and (3) which the United States seeks to negate by relying on a failure to object to requests for admission.

The principle of res judicata "bars the relitigation of a claim even if the particular theories of recovery or defenses raised in the second proceeding were not actually litigated in the first action." *Fund for Animals, Inc. v. Lujan*, 794 F.Supp. 1015, 1022 (D.Mont. 1991). In the matter at bar, the fact of government action without jurisdiction which caused incarceration–in other words, negligence–is established and cannot properly be relitigated. Moreover, "Final judgment, when rendered on the merits, is a bar to a subsequent action between the parties . . . upon the same cause of action." *Id.*, 1022, citing *Hooker v. Klein*, 573 F.2d 1360, 1367, (9th Cir. 1978) *cert. den.* 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978). This rendered it improper for the defense in the case at bar to seek to change the law of the case via the use of requests for admission.

This impropriety is spotlighted in *Medina v. I.N.S.*, 1 F.3d 312 (5th Cir. 1993), involving a collateral attack on an adjudication of citizenship. In the words of the court: "Few legal doctrines are more intrinsic or necessary in our system than res judicata. This doctrine, which provides that a valid and final judgment precludes a second suit between the same parties on the same claim or any part thereof, ensures that litigation will come to an end." *Id.*, at 313-4. In elaboration is this: "The doctrine of res judicata, now more commonly called claim preclusion, assures that an original cause

6

1  of action is extinguished by a judgment, regardless of the particular issues raised and litigated in the
2  action." *Ward v. C.I.R.*, 15 F.3d 523, 537 (6th Cir. 1994).

3   The authorities set out here relate to claims, whereas the defense motion addresses purported
4  discovery of facts, but the principle still applies. What is attacked has been adjudicated and made
5  into the law of the case. This becomes a distinction without a difference. The doctrine of res
6  judicata or claim preclusion bars all prior claims which "could have been asserted, whether they were
7  or not, in a prior suit." *Gregory v. Widnall*, 153 F.3d 1071, 1074, (9th Cir. 1998). This case involved
8  an individual's second EEOC complaint which relied on facts from his first complaint. The ruling
9  held that the court was estopped by the doctrine from considering the factual material from the first
10 action in the second action. This applies in the matter at bar: application of the doctrine bars
11 reconsideration of the fact of negligence. It has been judicially established that the United States
12 jailed Conlon when it had no jurisdiction to do so. Correspondingly, admissions by default cannot
13 change that established and judicially established fact pattern. This binds the court as well as the
14 parties.

15   "Under the law of the case doctrine, a court is generally precluded from reconsidering an issue
16 that has already been decided by the same court, or a higher court, in the identical case. *Thomas v.*
17 *Bible*, 983 F.2d 152, 154 (9th Cir. 1993). For the doctrine to apply, the issue in question must have
18 been 'decided either expressly *or by necessary implication* in [the] previous disposition.' [citations
19 omitted.] *Bible*, 983 F.2d at 154." (Emphasis added.) *Bible* involved a Nevada Gaming Commission
20 decision. The significant language, citing the Nevada case, is from *Springfield v. U.S.*, 873 F.Supp.
21 1403, 1408 (S.D.Cal. 1994), later reversed, but not as to the principle referred to herein. See 88 F.3d
22 750 (9th Cir. 1996).

23   Conlon respectfully posits that pursuant to the authorities set forth above, both the parties in
24 the instant matter and the court are precluded from not accepting as fact that the United States issued
25 a warrant for his arrest, arrested him, and imprisoned him–all without jurisdiction. This is the law of the
26 case. It must be followed as a matter of res judicata or claim preclusion. It cannot be altered via
27 unchallenged requests for admission. The elements of United States negligence must be submitted
28 to the trier of fact in resolution of this case. "Under the doctrine of the law of the case,

James André Boles, Esq.
18 Stewart Street
Reno, Nevada 89501
Tel. (775) 329-1544

7

1  findings made at one point in the litigation become the law of the case for subsequent stages of the
2  same litigation. *U.S. v. Moored*, 38 F.2d 1419 (6th Cir. 1994). Acts without jurisdiction are the law of
3  the case. Summary judgment cannot be granted on the contention that Conlon has admitted that the
4  United States committed no negligent acts in issuing a warrant for his arrest, arresting him, and
5  imprisoning him.

## II

### THE PLAINTIFF IS NOT COMPETENT TO FORM A LEGAL CONCLUSION AS TO THE EXISTENCE OF NEGLIGENCE IN HIS HAVING BEEN NAMED IN A WARRANT, ARRESTED, AND IMPRISONED, AND THEREFORE ANY ADMISSION BY HIM, WHETHER OVERTLY OR BY OMISSION, IS OF NO FORCE AND EFFECT.

The question of the existence of negligence in the actions of the United States in naming Conlon in a warrant, arresting him and imprisoning him calls for a conclusion of law for a court to decide. It is not a fact that can be admitted or denied by a layman. Conlon, as plaintiff, is a layman. Correspondingly, it is immaterial whether he admits or denies that the United States acted negligently. It is for the finder of fact to decide whether there are facts that support the elements of the tort of negligence. Conclusions of law are for the court. "Negligence must be found by a jury by the evidence." *H. Wayne Palmer & Assoc. v. Heldor Industries*, 839 F.Supp. 770, 774 (D.Kan. 1993). The elements of negligence which the plaintiff must prove to recover are duty, breach, causation and damages. *Hall v. Arthur*, 141 F.3d 844 (8th Cir. 1998). Conlon, as plaintiff, is not competent, as a matter of law, to make a binding decision on the existence of negligence. He can only present evidence on the facts that support its elements. In this matter, those elements are already adjudicated in his favor. He cannot override the court and negate them by not objecting to requests for admission.

## III

### THE UNITED STATES SHOULD BE EQUITABLY ESTOPPED FROM ASSERTING THAT BY NOT OBJECTING TO REQUESTS TO ADMIT THE ABSENCE OF NEGLIGENCE, NO EVIDENCE ON IT CAN BE ADMITTED

Since it has been established as the law of the case that the United States issued a warrant for Conlon's arrest, arrested him, and imprisoned him without jurisdiction, the United States should be estopped from asserting that Conlon has admitted there was no negligence because he did not

8

respond timely to requests for admission that there was no negligence. The requests were improperly propounded because they contravened the established law of the case, which was well known to the United States, and because the plaintiff was not competent as a layman to respond to them. Equitable estoppel is a principle or affirmative defense that operates to estop another party from denying a material fact and is "imposed by law in the interest of fairness." *Readco, Inc., v. Marine Midland Bank*, 81 F.3d 295, 301 (2nd Cir. 1996). It is invoked to prevent an unjust result when one party takes a position in one instance which is inconsistent with that party's position in another instance, to the prejudice of another. *Kachler v. Taylor*, 849 F.Supp 1503, 1520 (19\*\*). And further, the doctrine prevents a party from denying facts which were previously asserted to be true, inducing a party to rely detrimentally. *Total Petroleum, Inc., v. Davis*, 822 F.2d 734, 737 (8th Cir. 1987).

In the matter at bar, no party to the action should be allowed to deny a fact already adjudicated to be true and already made part of the law of the case pursuant to Rule 36, Fed.R.Civ.P. No layman should be called upon to admit to a conclusion of law. No party should seek to overturn already established facts, that is, the law of the case.

The United States as defendant correctly notes in its motion that Rule 56, Fed.R.Civ.P., calls for summary judgment when pleadings, discovery materials and affidavits demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Plaintiff concedes that there is a valid purpose for the summary judgment mechanism in federal courts to avoid an unnecessary trial when there is no dispute over facts before the Court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir. 1975), *cert. denied*, 423 U.S. 1025 (1975). However, the United States relies only on a procedural discovery mechanism–plaintiff's failure to timely object to requests to admit that there was no negligence–to seek summary judgment on his negligence claim. That mechanism should not apply in this matter for the reasons set forth hereinabove. The plaintiff could not properly either admit or deny the operative requests for admission.

## CONCLUSION

WHEREFORE, it is respectfully asserted that the United States is not entitled to summary judgment at this juncture based on the contention that the plaintiff has made a procedural admission

9

1  that no acts of actionable negligence were committed against him. The reasons are (1) that it was
2  improper for the United States to seek such admissions in that they contravened the already
3  adjudicated and settled law of the case, (2) that the parties are bound by the already adjudicated and
4  settled law of the case as to the existence of facts from which negligence can be found as a matter of
5  law, and that (3) the plaintiff as a layman is not competent to admit or deny the germane requests for
6  admission that were propounded to him. The motion of the United States for summary judgment
7  should be denied.

8  DATED this 20th day of December, 2004.

10  JAMES ANDRE BOLES, ESQ.
   Nevada Bar No.003368
11  18 Stewart Street
   Reno, Nevada 89501
12  Tel: 1-775-329-1544

13  Attorney for Plaintiff

10

## CERTIFICATE OF SERVICE

Pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, I hereby certify under penalty of perjury that I am an employee of the law offices of JAMES ANDRÉ BOLES, and that on this date, I caused to be serviced via regular mail, postage prepaid, a true and correct copy of the foregoing attached **PLAINTIFF'S OPPOSITION TO UNITED STATES' MOTION FOR SUMMARY JUDGMENT** addressed to the following at their last known business address:

Daniel G. Bogden, U.S. Atty.
Greg Addington, Asst. U.S. Atty.
100 W. Liberty St., Suite 600
Reno, NV 89501

DATED this 20 day of DEC, 2004

_____
Joe Boles

11